UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| KAPTAN DEMIR ÇELIK ENDÜSTRISI VE TICARET A.Ş.,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES,<br><br>Defendant. | Court No. 23-cv-00131 |

## COMPLAINT

Plaintiff Kaptan Demir Çelik Endüstrisi ve Ticaret A.Ş. ("Kaptan"), by and through its undersigned counsel, hereby brings this action against the United States ("Defendant"), and alleges and states as detailed below.

## INTRODUCTION

1. This action challenges two decisions by the Department of Commerce ("Commerce") in the final results of the 2020 administrative review of the countervailing duty (CVD) order on steel concrete reinforcing bar from Turkey.

2. Kaptan first challenges Commerce's decision that exemptions from Turkey's Bank and Insurance Transactions Tax (BITT) are countervailable as *de jure* specific. The record shows that the BITT exemption is available to all establishments that have industrial registration certificates, and Turkish law requires that nearly every company in nearly every sector of the Turkish economy obtain an industrial registration certificate before starting production activities. Thus, nearly every company in Turkey is eligible for BITT exemptions.

This makes BITT exemptions not countervailable, as they are generally available throughout Turkey's economy.

3.  Kaptan also challenges Commerce's decision concerning the benchmark for valuing unimproved industrial land outside a small village about 1,000 km from Istanbul.  Commerce selected petitioner's benchmark allegedly from improved industrial leases in a major industrial and transportation hub in the Istanbul area and rejected Kaptan's benchmark based on more similar land in region where the small village is located.  Commerce rejected Kaptan's benchmark, in part, because it was prepared for purposes of the review, applying a *per se* rejection based upon the partial reading of an inapposite decision by the Court of Appeals for the Federal Circuit.

4.  Both decisions were made without the support of substantial evidence and are otherwise not in harmony with law.  Kaptan seeks a remand with instructions that Commerce find that BITT exemptions not countervailable because they lack specificity, and also that Commerce accept Kaptan's benchmark.

**ADMINISTRATIVE DECISION TO BE REVIEWED**

5.  Paragraphs 1 to 4 are realleged and incorporated herein by reference.

6.  Kaptan contests certain aspects of the final results of the countervailing duty administrative review on steel concrete reinforcing bar from the Republic of Turkey, published as, *Steel Concrete Reinforcing Bar From the Republic of Turkey: Final Results of Countervailing Duty Administrative Review and Rescission, in Part; 2020*, 88 Fed. Reg. 34,129 (Dep't of Commerce May 26, 2023) ("*Final Results*"), and accompanying Issues and Decisions Memorandum ("*Dec. Mem.*").

**JURISDICTION**

7.  Paragraphs 1 to 6 are realleged and incorporated herein by reference.

8. Kaptan brings this action pursuant to 19 U.S.C. § 1516a(a)(2)(A)(i)(I) and (B)(iii) to contest Commerce's *Final Results* under 19 U.S.C. § 1675. *See Final Results*, 88 Fed. Reg. 34,129, and accompanying *Dec. Mem*. Accordingly, this Court possesses jurisdiction over this action pursuant to 28 U.S.C. § 1581(c).

## STANDING

9. Paragraphs 1 to 8 are realleged and incorporated herein by reference.

10. Kaptan is a Turkish producer and exporter of subject merchandise that participated in the review resulting in the contested determination by submitting factual information and legal argument. Accordingly, Kaptan is an interested party within the meaning of 28 U.S.C. § 2631(k)(1), 19 U.S.C. §§ 1516a(f)(3) and 1677(9)(A), and is a party to the proceeding within the meaning of 28 U.S.C. § 2631(c).

## TIMELINESS

11. Paragraphs 1 to 10 are realleged and incorporated herein by reference.

12. Commerce published the Final Results on May 26, 2023. See *Final Results*, 88 Fed. Reg. 34,129. This action was commenced by the filing of a Summons, on June 21, 2023, within 30 days after the May 26, 2023, publication of the *Final Results*; and by the filing of this Complaint within 30 days after the filing of the Summons. Thus, this action was timely commenced pursuant to 19 U.S.C. § 1516a(a)(2)(A), 28 U.S.C. § 2636(c), and Rule 3 of the Rules of this Court.

## STATEMENT OF FACTS

13. Plaintiff incorporates by reference paragraphs 1 through 12 of this Complaint.

14. Commerce calculated a 0.89% benefit rate for Exemptions from Bank and Insurance Transactions Tax (BITT) on Foreign Exchange Transactions received by Kaptan on the basis of Commerce's determination that BITT exemptions are *de jure* specific.

15. *De jure* specific means that the number of industries or enterprises eligible to benefit from the subsidy is limited by law.

16. Commerce found in the prior review that BITT exemptions amounted to a countervailable subsidy as *de jure* specific.  *Steel Concrete Reinforcing Bar From the Republic of Turkey: Final Results of Countervailing Duty Administrative Review and Rescission, in Part; 2019*, 87 Fed. Reg. 21,640 (Dep't of Commerce April 12, 2022), and accompanying Dec. Mem., cmt. 3.  In that review, Kaptan had received exemptions based upon its membership in an exporters' association, but argued that BITT exemptions are not *de jure* specific because anyone with an industrial registry certificate may benefit from the exemptions.  *Id.*

17. Commerce rejected arguments that BITT exemptions are available by law to all industrial companies in Turkey, and thus cannot be *de jure* specific.  *Id*.  Commerce rejected this argument on the ground that the Government of Turkey had stated only that "an industrial registry certificate can be obtained by any industrial establishment," without explaining what is an "industrial establishment."  *Id.*  Commerce further stated that Kaptan reported to Commerce that it was eligible for the benefit under its membership in an exporters' association, not because Kaptan had an industrial registry certificate, and thus found that Kaptan's argument about industrial registry certificates did not even apply to Kaptan because it did not disclose whether it possesses such a certificate.  *Id.*

18. In the 2020 review, which is the subject of this appeal, Kaptan submitted documentation showing its membership in the exporters' association as well as its industrial registry certificates, explaining that Kaptan was eligible for BITT exemptions for both reasons.

19. Kaptan also explained in detail how Turkish law defines "industrial establishment" to include nearly every type of manufacturer, natural resource extractor, repair shop, etc., and that the law makes it obligatory for all industrial establishments to register before beginning operations.

20. Further, in the 2020 review the Government of Turkey explained that, while it does not keep records about the use of this program, eligibility is automatic under the law and "this alleged subsidy program is broadly available and widely used throughout the economy." The Government of Turkey also provided confidential information confirming widespread eligibility "of 140,071 enterprises having an industrial registry certificate," spread out over most sectors of the Turkish economy.

21. Despite the evidence and arguments presented in the 2020 review, Commerce refused to reconsider its earlier decision that the BITT exemptions are *de jure* specific. Commerce cited four reasons why it continued to find BITT exemptions de jure specific: (1) the industrial registry law is not obligatory ("this only establishes that the industrial registry certificate can be obtained by all industrial enterprises"); (2) the Government of Turkey did not demonstrate that all eligible enterprises actually applied for and obtained industrial registry certificates; (3) the number of companies that benefit from BITT exemptions is limited to those that fit under one of the five exemptions and engage in foreign currency transactions; and (4) record evidence does not address whether all companies that make foreign currency transactions receive the benefit under the law.

22. Commerce is wrong on all four points. First, the industrial registry law is obligatory, specifically stating that "{i}t is obligatory for industrial enterprises to be registered in the industrial registry." Further, the law states that any company with an industrial registry certificate is eligible for BITT Exemptions. These laws, by themselves, establish that BITT exemptions are generally available.

23. Second, Commerce's claim that the Government of Turkey did not establish that every industrial enterprise actually obtained an industrial registry certificate is an impossible standard

not required by U.S. trade law.  In a *de jure* specificity analysis, the question is not whether all eligible enterprises actually took advantage of a subsidy, but whether the subsidy was generally available throughout the economy.  Here, Commerce confuses *de jure* with *de facto* requirements, relying on a made-up standard for *de facto* specificity to support its finding on *de jure* specificity.

24. Third, Commerce's rationale that BITT exemptions are limited to those that fit under one of five exemptions relies upon its misunderstanding of the industrial-registry-certificate exemption.  That exemption qualifies nearly every company in almost every sector of the Turkish economy for BITT exemptions.

25. Fourth, Commerce's claim that evidence does not address who actually receives BITT exemptions again confuses the *de jure* with the *de facto* legal standards.  This claim also does not acknowledge the evidence submitted by the Government of Turkey establishing the general availability of BITT exemptions and its explanation that while no records are kept of exemptions actually granted, the law was not intended to burden foreign exchange transactions made in the ordinary course of business, only "speculative and high frequency foreign exchange movements" made by individual persons as opposed to industrial enterprises.

26. Commerce also calculated countervailing duties for Kaptan's alleged receipt of subsidies for a rent-free right to occupy and use certain unimproved industrial land located outside the remote village of Sürmene in the Black Sea province of Trabzon, 1,000 km from Istanbul.  The land was used by Kaptan's ship-building affiliate Nur Gemicilik A.S.  Nur received rights to use the land for 49 years in exchange for investment and employment guarantees.

27. The benchmark Commerce used to value the unimproved industrial land outside Sürmene village was a rate listed in a publication prepared by Collier's International reportedly for improved industrial properties in the Istanbul-area municipality of Çerkezköy in the Tekirdağ province.  The record establishes that Çerkezköy "is one of the largest and most established industrial zones in Turkey"; it is "an industrial/transportation hub just outside Istanbul and is the staging area for imports from the rest of Europe into Turkey."  Further, the per-capita GDP of the Tekirdağ province is double the per-capita GDP of Trabzon province where the Nur land is located.  The Collier's publication disclaims its own accuracy; it explains, "no warranty is given as to the accuracy of … the forecasts, figures, or conclusions contained in this report" and warns that the data "must not be relied upon for investment or any other purpose."

28. Commerce found that the Collier's report was a contemporaneous benchmark that had some measure of comparability based on population density.  That measure of comparability is its finding that the population density in the Çerkezköy industrial/transportation hub located in the 17+ million population of the Istanbul area is most like the population density in the 25,000 population Sürmene village, located 1,000 km from Istanbul.  Commerce conceded that it did not evaluate other factors of comparability.  For example, Commerce ignored Turkish government statistics showing that the per-capita GDP for Tekirdağ province is double the per-capita GDP of Trabzon province in which Sürmene lies.

29. Commerce rejected a study proffered by Kaptan and prepared by the global real-estate company Cushman & Wakefield (C&W) of available leases near Sürmene that were similar to the unimproved industrial land used by Nur.  Commerce rejected the C&W report for three reasons:  (1) most of the C&W report was confidential; (2) the C&W report was prepared

specifically for purposes of the review; and (3) some of the benchmark rates in the C&W study may have been based on prices provided by non-private entities.

30. Commerce's reasons for rejecting the benchmark are invalid.  First, Commerce for years has used benchmarks based upon non-public information in some of the most high-profile cases before the agency.  Second, Commerce's citation to "'the risk of litigation-inspired fabrications or exaggerations'" references inapposite caselaw from the Court of Appeals for the Federal Circuit (CAFC) discussing post-invention witness testimony in a patent case.  That case requires an extensive evaluation of credibility factors before rejecting the testimony.  Commerce did not evaluate any credibility factors related to the C&W report.  Instead, Commerce applied a *per se* test to the C&W report, finding it not credible simply because it was prepared for the purposes of the review.  Third, Commerce did not explain the relevance of its statement that some of the benchmark was based on prices provided by non-private parties, or how some such prices would disqualify the entirety of the C&W report.

## STATEMENT OF CLAIMS

### COUNT ONE

**Commerce's Improperly Found BITT Exemptions To Be *De Jure* Specific**

31.  Plaintiff incorporates by reference paragraphs 1 through 30 of this Complaint.

32.  The administrative record contains evidence that virtually every company in Turkey, in almost every sector of the Turkish economy, is required to obtain an industrial registration certificate before beginning operations, and that all these companies are eligible for BITT exemptions.  Commerce's decision that BITT exemptions are *de jure* specific is unsupported by substantial evidence on the administrative record and is otherwise not in harmony with law.

## COUNT TWO

**Commerce Improperly Rejected The C&W Report As A
Potential Land Benchmark**

33.   Plaintiff incorporates by reference paragraphs 1 through 32 of this Complaint.

34.   The land Nur received to use was unimproved industrial land near Sürmene, in a relatively sparsely-populated province about 1,000 km from Istanbul.  Commerce chose a benchmark based upon improved industrial land in the Istanbul area that disclaimed its own reliability, and rejected a benchmark based upon comparable land near Sürmene.  Commerce's decision that the C&W benchmark could not be use is unsupported by substantial evidence on the administrative record and is otherwise not in harmony with law.

**PRAYER FOR JUDGMENT AND RELIEF**

WHEREFORE, for the foregoing reasons, Plaintiff requests that this Court enter judgment as follows:

(A)   Enter judgment in favor of Plaintiff;

(B)   Hold as unlawful Commerce's determination that BITT exemptions are *de jure* specific;

(C)   Hold as unlawful Commerce's rejection of the C&W report;

(D)   Remand for a redetermination in harmony with the Court's decision; and

(E)   Grant Plaintiff such additional relief as the Court deems just and proper.

Respectfully submitted,

David L. Simon
Mark B. Lehnardt

Law Offices of David L. Simon, PLLC
1025 Connecticut Ave., N.W., Ste.1000
Washington, D.C. 20036
(202) 642-4850

Counsel for Plaintiff

Dated: June 23, 2023