# IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE GARY S. KATZMANN, JUDGE

|  |  |  |
|---|---|---|
| KAPTAN DEMIR CELIK ENDUSTRISI VE TICARET A.S., | ) ) ) | |
| Plaintiff, | ) ) | |
| and | ) ) | |
| ICDAS CELIK ENERJI TERSANE VE ULASIM SANAYI, A.S., | ) ) ) | |
| Plaintiff Intervenor, | ) ) | |
| v. | ) | Court No. 23-00131 |
| UNITED STATES, | ) ) | |
| Defendant, | ) ) | |
| and | ) ) | |
| REBAR TRADE ACTION COALITION, | ) ) | |
| Defendant-Intervenor. | ) ) ) | |

## DEFENDANT'S RESPONSE TO PLAINTIFF'S
## MOTION FOR JUDGMENT ON THE AGENCY RECORD

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA MCCARTHY
Director

L. MISHA PREHEIM
Assistant Director

OF COUNSEL:
W. MITCH PURDY
Attorney
U.S. Department of Commerce
Office of the Chief Counsel for Trade
    Enforcement and Compliance
1401 Constitution Avenue, NW
Washington, DC  20230
Tel: (240) 482-5214
Email: william.purdy@trade.gov

Kelly M. Geddes
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
PO Box 480
Ben Franklin Station
Washington, DC  20044
Tel: (202) 307-2867
Email: kelly.geddes2@usdoj.gov

January 29, 2024

Attorneys for Defendant

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

<u>BEFORE: THE HONORABLE GARY S. KATZMANN, JUDGE</u>

|  |  |  |
|---|---|---|
| KAPTAN DEMIR CELIK ENDUSTRISI VE TICARET A.S., | ) ) ) | |
| Plaintiff, | ) ) | |
| and | ) ) | |
| ICDAS CELIK ENERJI TERSANE VE ULASIM SANAYI, A.S., | ) ) ) | |
| Plaintiff Intervenor, | ) ) | |
| v. | ) ) | Court No. 23-00131 |
| UNITED STATES, | ) ) | |
| Defendant, | ) ) | |
| and | ) ) | |
| REBAR TRADE ACTION COALITION, | ) ) | |
| Defendant-Intervenor. | ) ) | |

**ORDER**

Upon consideration of the plaintiff's Rule 56.2 motion for judgment on the agency record, defendant's opposition, and all other pertinent papers, it is hereby

ORDERED that the plaintiff's Rule 56.2 motion for judgment on the agency record is denied; and it is further

ORDERED that judgment shall issue for the United States.

Dated: _____

      New York, New York

_____

               JUDGE

# TABLE OF CONTENTS

STATEMENT PURSUANT TO RULE 56.2 ................................................................................. 2

    I.    Administrative Determination Under Review ............................................................... 2

    II.    Issues Presented For Review ....................................................................................... 2

STATEMENT OF FACTS ......................................................................................................... 2

SUMMARY OF ARGUMENT .................................................................................................. 5

ARGUMENT ............................................................................................................................. 6

    I.    Standard Of Review ..................................................................................................... 6

    II.    Commerce's Determination That Exemptions From The Bank And Insurance Transactions Tax Are Specific Is Supported By Substantial Evidence And Is In Accordance With Law ............................................................................................... 7

        A.    Kaptan Fails To Show That The BITT Exemption Was Generally Available ....... 8

        B.    Kaptan Failed To Exhaust Its Remedies Concerning The Application Of 19 U.S.C. § 1677(5A)(D)(ii), And In Any Case Fails To Show That The BITT Exemption Program Satisfies The Criteria Of That Provision .............................. 9

    III.    Commerce's Benchmark Selection for Valuing Nur's Land Was Supported By Substantial Evidence And In Accordance With Law ................................................... 12

        A.    Commerce's Determination That The Cushman & Wakefield Benchmark Rate Was Unusable Is Supported By Substantial Evidence And In Accordance With Law ...................................................................................................................... 13

        B.    Commerce's Determination To Rely On The Colliers Benchmark Rate Was Supported By Substantial Evidence And In Accordance With Law .................... 17

    IV.    We Do Not Contest ICDAS' Claim To A Rate Adjustment Should Kaptan's Rate Change As A Result Of This Litigation ........................................................................ 19

CONCLUSION .......................................................................................................................... 20

# TABLE OF AUTHORITIES

## Cases

*Ad Hoc Shrimp Trade Action Comm. v. United States*, 33 C.I.T. 533 (2009) ............................. 11

*BGH Edelstahl Seigen GmbH. v. United States* (*BGH II*), 639 F. Supp. 3d 1237 (Ct. Int'l Trade 2023)........................................................................................................................ 10, 12

*Boomerang Tube LLC v. United States*, 856 F.3d 908 (Fed. Cir. 2017)...................................... 10

*Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984) ............................ 7

*Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607 (1966)................................................................... 6

*Corus Staal BV v. United States*, 502 F.3d 1370 (Fed. Cir. 2007 ............................................... 10

*Fujitsu Gen. Ltd. v. United States*, 88 F.3d 1034 (Fed. Cir. 1996)............................................... 6

*Maverick Tube Corp. v. United States*, No. 14-00229, 2015 Ct. Intl. Trade LEXIS 60 (Ct. Int'l Trade June 15, 2015)................................................................................................... 11

*Nippon Steel Corp. v. United States*, 458 F. 3d 1345 (Fed. Cir. 2006)......................................... 6

*Oy v. United States*, No. 97-05-00864, 1999 WL 270028 (Ct. Int'l Trade Apr. 27, 1999).......... 16

*PAM, S.p.A. v. United States*, 582 F.3d 1336 (Fed. Cir. 2009)..................................................... 6

*Paul Muller Industrie GmbH & Co. v. United States*, 502 F.Supp.2d 1271 (CIT 2007)............... 11

*Rhone Poulenc, Inc. v. United States*, 899 F.2d 1185 (Fed. Cir. 1990) ....................................... 10

*Sandt Tech. v. Resco Metal & Plastics Cor.*, 264 F.3d 1344 (Fed. Cir. 2001) ............................ 15

*SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312 (Fed. Cir. 2006)............................ 11

*Ta Chen Stainless Steel Pipe v. United States*, 342 F. Supp. 2d 1191 (Ct. Int'l Trade 2004) ...... 10

*Thai Pineapple Pub. Co. v. United States*, 187 F.3d 1362 (Fed. Cir. 1999)................................. 6

*Timken Co. v. United States*, 354 F.3d 1334 (Fed. Cir. 2004)...................................................... 7

*Unemployment Comp. Comm'n. of Ala. v. Aragon*, 329 U.S. 143 (1946).................................... 11

*United States v. Eurodif S.A.*, 555 U.S. 305 (2009).................................................................. 6, 7

## Statutes

19 U.S.C. § 1516a ................................................................................................ 6

19 U.S.C. § 1677 ......................................................................................... passim

28 U.S.C. § 2637 .............................................................................................. 10

5 U.S.C. § 706 .................................................................................................... 6

**Other Authorities**

*Statement of Administrative Action accompanying the Uruguay Round Agreements Act*, H. Doc.
103-316, at 930, reprinted in 1994 U.S.C.C.A.N. 4040 ........................................ 7, 12

**Regulations**

19 C.F.R. § 351.511 .......................................................................................... 19

**Administrative Determinations**

*Certain Softwood Lumber Products from Canada:  Final Affirmative Countervailing Duty
Determination, and Final Negative Determination of Critical Circumstances*, 82 Fed. Reg.
51,814 (Dep't of Commerce Nov. 8, 2017) ............................................................ 14

*Coated Free Sheet Paper from Indonesia:  Final Affirmative Countervailing Duty
Determination*, 72 Fed. Reg. 60,642 (Dep't of Commerce Oct. 25, 2007)............................. 15

*Steel Concrete Reinforcing Bar from the Republic of Turkey:  Final Results of Countervailing
Duty Administrative Review and Rescission, in Part; 2019*, 87 Fed. Reg. 21,640 (Dep't of
Commerce April 12, 2022).................................................................................... 17

*Steel Concrete Reinforcing Bar From the Republic of Turkey: Final Results of Countervailing
Duty Administrative Review and Rescission, in Part; 2018*, 86 Fed. Reg. 53,279 (Dep't of
Commerce Sept. 27, 2021).................................................................................... 13

*Steel Concrete Reinforcing Bar from the Republic of Turkey: Preliminary Results of
Countervailing Duty Administrative Review and Intent To Rescind in Part; 2019*, 86 Fed. Reg
69,009 (Dep't of Commerce Dec. 6, 2021)............................................................... 17

# IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |  |
|---|---|---|
| KAPTAN DEMIR CELIK ENDUSTRISI VE TICARET A.S., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| ICDAS CELIK ENERJI TERSANE VE ULASIM SANAYI, A.S., | ) | |
| | ) | |
| Plaintiff Intervenor, | ) | |
| | ) | |
| v. | ) | Court No. 23-00131 |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| REBAR TRADE ACTION COALITION, | ) | |
| | ) | |
| Defendant-Intervenor. | ) | |

## DEFENDANT'S RESPONSE TO PLAINTIFF'S
## MOTION FOR JUDGMENT ON THE AGENCY RECORD

Pursuant to Rule 56.2 of the Rules of this Court, defendant, the United States, respectfully submits this response to the motions for judgment on the agency record filed by plaintiff, Kaptan Demir Celik Endustrisi ve Ticaret A.S. (Kaptan) and plaintiff-intervenor, ICDAS Celik Enerji Tersane Ve Ulasim Sanayi, A.S. (ICDAS). Kaptan and ICDAS challenge certain aspects of the Department of Commerce's (Commerce) final results in the 2020 administrative review of the countervailing duty order covering steel concrete reinforcing bar (rebar) from Turkey. As demonstrated below, Commerce's final results are supported by

substantial evidence and are in accordance with law. Therefore, we respectfully request that the Court deny both motions and enter judgment for the United States.

## STATEMENT PURSUANT TO RULE 56.2

### I. Administrative Determination Under Review

Kaptan challenges certain aspects of Commerce's final results in the 2020 administrative review of the countervailing duty order on rebar from Turkey. *See Steel Concrete Reinforcing Bar From the Republic of Turkey*, 88 Fed. Reg. 34,129 (Dep't of Commerce May 26, 2023) (Final Results) (P.R. 156)[1], and accompanying Issues and Decision Memorandum (P.R. 152) (IDM). The period of review covered by the final results is January 1, 2020, through December 31, 2020. *Id.*

### II. Issues Presented For Review

1. Whether Commerce's determination that exemptions from the Bank and Insurance Transactions Tax (BITT) on foreign exchange transactions are *de jure* specific is supported by substantial evidence and in accordance with law.

2. Whether Commerce's selection of a land benchmark was supported by substantial evidence and in accordance with law.

3. Whether Commerce should recalculate ICDAS's assigned subsidy rate if Kaptan's rate changes pursuant to litigation.

## STATEMENT OF FACTS

On November 6, 2014, Commerce issued a countervailing duty order covering Turkish rebar. *See Steel Concrete Reinforcing Bar from the Republic of Turkey*, 79 Fed. Reg. 65,926 (Dep't of Commerce Nov. 6, 2014). On November 1, 2021, Commerce published a notice of

---

[1] Citations to the public documents (P.R.) and confidential documents (C.R.) refer to the record of the underlying administrative review.

opportunity to request an administrative review of that order for the period January 1, 2020, through December 31, 2020.  *See Antidumping or Countervailing Duty Order, Finding, or Suspended Investigation*: *Opportunity to Request Administrative Review*, 86 Fed. Reg. 60,215 (Dep't of Commerce Nov. 1, 2021).  On December 28, 2021, Commerce published a notice initiating an administrative review of 24 producers and/or exporters of rebar from Turkey, including the two parties Commerce ultimately selected as mandatory respondents:  Kaptan and the cross-owned entities Colakoglu Dis Ticaret A.S. and Colakoglu Metalurji A.S (collectively Colakoglu).  *See Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 86 Fed. Reg. 73,734 (Dep't of Commerce Dec. 28, 2021); Respondent Selection Memo (P.R. 36).

After receiving questionnaire responses from the Turkish government, Kaptan, and Colakoglu, as well as comments, supplemental questionnaire responses, and benchmark and other factual information, Commerce issued its preliminary results on December 1, 2022.  *See Steel Concrete Reinforcing Bar from Turkey*, 87 Fed. Reg. 73,750 (Dep't of Commerce Dec. 1, 2022) (P.R. 130) and accompanying Issues and Decision Memorandum (PDM) (P.R. 131).  Of relevance here, Commerce preliminarily determined that the exemption Kaptan received from Turkey's Bank and Insurance Transactions Tax (BITT) on foreign exchange transactions constituted a countervailable subsidy.  PDM at 11-12.  Commerce explained that the exemption satisfied the requirements for a countervailable subsidy because it constituted a financial contribution by the Turkish government to the recipient, provided a benefit to the recipient in the amount of the tax savings to the company, and was specific because it was limited to firms that conducted certain types of foreign exchange transactions that were exempted by Turkey's Law 6802.  *Id*.

Commerce also preliminarily found that an agreement between the Turkish government and Nur, a cross-owned affiliate of Kaptan, providing Nur with rent-free land pursuant to Law 5084, constituted a countervailable subsidy. *Id.* at 13-14. Commerce explained that the provision of rent-free land constitutes a financial contribution in the form of land provided for less-than-adequate remuneration, and that the rent exemption program was regionally specific because the subsidy was limited to companies in certain designated geographic regions. *Id.* Commerce calculated the amount of the benefit using a benchmark based on Colliers International's *Real Estate Market Turkey Review*, which was submitted by petitioner. *Id.*

On May 26, 2023, Commerce issued final results consistent with the preliminary results. *See Steel Concrete Reinforcing Bar from the Republic of Turkey*, 88 Fed. Reg. 34,129 (Dep't of Commerce May 26, 2023) (P.R. 156), and accompanying Issues and Decision Memorandum (IDM) (P.R. 152). Rejecting arguments raised by Kaptan, Commerce continued to determine that the BITT exemptions program was specific pursuant to 19 U.S.C. § 1677(5A)(D)(i). *Id.* at 19. Commerce explained that the program was *de jure* specific pursuant to 19 U.S.C. § 1677(5A)(D)(i) because it was limited to companies that both obtained an industrial registry certificate and made foreign exchange transactions. *Id.* at 12.

Commerce also continued to rely on Colliers International's *Real Estate Market Turkey Review* to determine a benchmark for valuing Nur's land rent exemption, rejecting arguments from Kaptan that this was unreasonable. Commerce explained that the Colliers International report was the only usable data source on the record, as the only alternative provided by Kaptan was entirely business proprietary, was commissioned by Kaptan for the purposes of the underlying review, and appeared to be based, at least partly, on information provided by nonprivate third parties. IDM at 9-10.

This action ensued.

## **SUMMARY OF ARGUMENT**

Commerce's determination that the BITT exemptions program is *de jure* specific and therefore countervailable is supported by substantial evidence and in accordance with law. Kaptan argues that the program was not specific because it was widely available, but Commerce reasonably concluded that because the BITT exemption only benefits entities that both obtain an industrial registry certificate and conduct foreign exchange transactions, it was limited to a group of entities and therefore specific pursuant to 19 U.S.C. § 1677(5A). Kaptan also suggests that the BITT exemption falls within the scope of 19 U.S.C. § 1677(5A)(D)(ii), which provides that a subsidy is not specific when it is automatically applied to any entity that satisfies particular verifiable criteria, in this case possession of an industrial registry certificate. However, Kaptan failed to raise any argument based on § 1677(5A)(D)(ii) during the administrative review, and thus failed to exhaust its administrative remedies. In any case, Kaptan has failed to show that the criteria for an automatic BITT exemption are economic in nature and horizontal in application as required to fall within the scope of that provision.

Commerce's selection of a benchmark in valuing the government of Turkey's provision of rent-free land to Kaptan's subsidiary, Nur, is also supported by substantial evidence and in accordance with law. Commerce reasonably determined that the benchmark information submitted by Kaptan was not reliable because it was entirely proprietary, was prepared for the purpose of an adjudicative proceeding, and was based on information obtained from third party, nonprivate sources. Having made that determination, Commerce reasonably relied on the only other benchmark information on the record, which did not have similar reliability issues.

Finally, we do not object to ICDAS' claim of a change in rate as a non-selected rate company (should plaintiffs otherwise succeed in this action).

5

# ARGUMENT

## I.    Standard Of Review

In reviewing Commerce's final results of an administrative review of a countervailing duty order, "the Court of International Trade must sustain 'any determination, finding, or conclusion found' by Commerce unless it is 'unsupported by substantial evidence upon the record, or otherwise not in accordance with law.'" *Fujitsu Gen. Ltd. v. United States*, 88 F.3d 1034, 1038 (Fed. Cir. 1996) (quoting 19 U.S.C. § 1516a(b)(1)(B)). Furthermore, "{t}he specific factual findings on which {Commerce} relies in applying its interpretation are conclusive unless unsupported by substantial evidence." *United States v. Eurodif S.A.*, 555 U.S. 305, 316 n.6 (2009) (citing 5 U.S.C. § 706(2)(E)). "Substantial evidence" amounts to "more than a mere scintilla" of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *PAM, S.p.A. v. United States*, 582 F.3d 1336, 1339 (Fed. Cir. 2009). The requisite proof may be "less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent {Commerce's} finding from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966) (citation omitted). A party challenging a determination pursuant to the substantial evidence standard "has chosen a course with a high barrier to reversal." *Nippon Steel Corp. v. United States*, 458 F. 3d 1345, 1352 (Fed. Cir. 2006) (citation omitted).

This Court defers to Commerce's "selection and development of proper methodologies." *Thai Pineapple Pub. Co. v. United States*, 187 F.3d 1362, 1365 (Fed. Cir. 1999) (citation omitted). Moreover, Commerce is accorded particular deference in antidumping and countervailing duty determinations. *See, e.g.*, *Fujitsu*, 88 F.3d at 1039 ("Antidumping and countervailing duty determinations involve complex economic and accounting decisions of a technical nature, for which agencies possess far greater expertise than courts.").

Finally, pursuant to the *Chevron* doctrine, the Court must defer to Commerce's reasonable interpretation of the regulatory and statutory framework. *See Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984); *United States v. Eurodif S.A.*, 555 U.S. 305, 316 (2009); *Timken Co. v. United States*, 354 F.3d 1334, 1342 (Fed. Cir. 2004). Contrary to the Kaptan's assertions, *see* Pl. Br. at 15, there has been no decision from the Supreme Court overturning the deference afforded to administrative agencies pursuant to *Chevron*, which therefore continues to govern this Court's decisions.

## II.  Commerce's Determination That Exemptions From The Bank And Insurance Transactions Tax Are Specific Is Supported By Substantial Evidence And Is In Accordance With Law

Commerce's determination that the Bank and Insurance Transactions Tax (BITT) exemptions program is *de jure* specific pursuant to 19 U.S.C. § 1677(5A)(D)(i) is supported by substantial evidence and in accordance with law. To find that a foreign government's program is a countervailable subsidy, Commerce must find that the foreign government "provide{d} a financial contribution," that a "benefit {was} thereby conferred," and that the subsidy was "specific." 19 U.S.C. § 1677(5)(A)-(B). A subsidy is *de jure* specific pursuant to § 1677(5A)(D)(i) if "the legislation pursuant to which the authority operates{} expressly limits access to the subsidy to an enterprise or industry" or to "a group of {} enterprises or industries." Furthermore, "where a foreign government expressly limits access to a subsidy to a sufficiently small number of enterprises, industries, or groups thereof, further inquiry into actual use of the subsidy is unnecessary." *Statement of Administrative Action accompanying the Uruguay Round Agreements Act*, H. Doc. 103-316, at 930, reprinted in 1994 U.S.C.C.A.N. 4040, 4242 (SAA).

The BITT tax is governed by Article 33 of Law 6802 (the Expenditure Expenses Law), which requires Turkish companies to pay a tax on their sales in foreign currencies for spot transactions. PDM at 11 (citing Government of Turkey Initial Questionnaire Response at Exhibit

20 (P.R. 73; C.R. 77)). The government of Turkey reported that the following transactions and sales are exempted from the tax: (1) foreign exchange transactions among and between banks and authorized institutions; (2) foreign currency sales to the Ministry of Treasury and Finance; (3) foreign currency sales, by the lending local bank or the local bank that intermediates the loan, to corporate borrowers for repayment of their foreign currency-denominated loans; (4) foreign exchange sales to enterprises having an industrial registry certificate; and (5) foreign currency sales to export companies which are members of exporters' associations. *Id.* Kaptan reported that it was eligible to receive this tax exemption because it either possesses an industrial registry certificate or is part of an exporters' association. Kaptan Initial Questionnaire Response at 52, Exhibit 27 (P.R. 48; C.R. 26, 43).

Commerce found that the BITT exemptions program provided Kaptan a financial contribution in the form of revenue forgone and that Kaptan received a benefit in the form of tax savings to the company. PDM at 11. Commerce further found that the program is *de jure* specific because it is expressly limited to a group of enterprises, namely, enterprises that conduct certain types of foreign exchange transactions as outlined by Law 6802. *Id.*; IDM at 18-20. Thus, Commerce reasonably determined that the BITT exemptions program met all the requirements of countervailability pursuant to 19 U.S.C. § 1677(5)(A)-(B).

A.     **Kaptan Fails To Show That The BITT Exemption Was Generally Available**

Kaptan contends that the BITT exemptions program is not *de jure* specific because "BITT exemptions are widely available" to all companies with industrial registry certificates. Pl. Br. at 18. However, as Commerce explained in the IDM, the record does not contain sufficient evidence to show that the BITT program was generally available rather than limited to certain companies. IDM at 11-12. Commerce explained that, even though Kaptan presented evidence of the Government of Turkey's broad definition of "industrial establishments" that are eligible

for industrial registry certificates, it did not present evidence showing that all eligible companies actually obtain those certificates. IDM at 12. Until a company obtains such a certificate, it is not eligible for the BITT exemption (unless it happens to fall into one of the other specific exempt categories). Accordingly, even if the record evidence suggests that Turkish companies are generally eligible for industrial registry certificates, it does not show that they are generally eligible for the BITT exemption.

Further, the universe of companies that may benefit from the program is necessarily limited to companies that make foreign exchange transactions, further limiting the group of enterprises that may benefit from it. IDM at 12. The cross-section of companies who meet one or more of the five conditions established by the law, and that engage in foreign exchange transactions, are the only ones who can benefit from BITT exemptions. *Id.* It was reasonable for Commerce to conclude that the BITT exemption is therefore limited to the "group of {} enterprises or industries" that satisfies both criteria and that the program is therefore specific pursuant to 19 U.S.C. § 1677(5A).

### B. Kaptan Failed To Exhaust Its Remedies Concerning The Application Of 19 U.S.C. § 1677(5A)(D)(ii), And In Any Case Fails To Show That The BITT Exemption Program Satisfies The Criteria Of That Provision

Kaptan further argues that Turkish law "clearly defines industrial establishments and the automatic qualifications such establishments have for BITT exemption." *Id.* at 19. Kaptan appears to be arguing that the BITT program is therefore not specific pursuant to 19 U.S.C. § 1677(5A)(D)(ii). *See id.* at 21-22. That provision provides that "{s}ubsidies are not specific as a matter of law where the subsidy program provides: (1) 'objective criteria or conditions governing the eligibility for, and the amount of,' the subsidy; (2) 'eligibility is automatic;' (3) 'the criteria or conditions for eligibility are strictly followed;' and (4) 'the criteria or conditions are clearly set forth in the relevant statute, regulation, or other official document.'" *BGH*

*Edelstahl Seigen GmbH. v. United States* (*BGH II*), 639 F. Supp. 3d 1237 (Ct. Int'l Trade 2023) (quoting statutory language).

However, Kaptan has not exhausted its administrative remedies with respect to this argument. Congress has mandated that this Court "shall, where appropriate, require the exhaustion of administrative remedies" in civil actions arising from Commerce's antidumping duty determinations. 28 U.S.C. § 2637(d). This statute indicates that the Court should insist that parties exhaust their remedies before the pertinent administrative agency. *Boomerang Tube LLC v. United States*, 856 F.3d 908, 910 (Fed. Cir. 2017) (citing *Corus Staal BV v. United States*, 502 F.3d 1370, 1379 (Fed. Cir. 2007)). The purpose of the exhaustion requirement—to promote judicial efficiency and preserve administrative autonomy by allowing the agency to consider the party's argument and potentially rectify any mistake—is vitiated when the Court considers arguments raised for the first time in judicial proceedings. *Id.*; *see also Corus Staal*, 502 F.3d at 1379 (explaining that the exhaustion requirement protects administrative agency authority and promotes judicial efficiency). For this reason, this Court "generally takes a 'strict view' of the requirement that parties exhaust their administrative remedies before {Commerce} in trade cases." *Corus Staal*, 502 F.3d at 1379; *see also Ta Chen Stainless Steel Pipe v. United States*, 342 F. Supp. 2d 1191, 1205 (Ct. Int'l Trade 2004).

Both the Federal Circuit and this Court have held that failure to raise a specific argument in a case brief, even if the general issue is addressed, constitutes a failure to exhaust administrative remedies. *See e.g., Rhone Poulenc, Inc. v. United States*, 899 F.2d 1185, 1191 (Fed. Cir. 1990) (holding that plaintiff's failure to raise a particular argument before Commerce precluded judicial review even though plaintiff characterized that argument as "simply another angle to an issue" that it did raise in the administrative proceeding). "Failure to raise a specific

argument in a case brief is a failure to exhaust administrative remedies with respect to that argument because it 'deprives {Commerce} of an opportunity to consider the matter, make its ruling, and state the reasons for its action.'" *Ad Hoc Shrimp Trade Action Comm. v. United States*, 33 C.I.T. 533, 545–46 (2009), *aff'd in part*, 596 F.3d 1365 (Fed. Cir. 2010) (citing *Unemployment Comp. Comm'n. of Ala. v. Aragon*, 329 U.S. 143, 155 (1946); *Paul Muller Industrie GmbH & Co. v. United States*, 502 F.Supp.2d 1271, 1274–75 (CIT 2007) *aff'd*, (Fed. Cir. 2008) (noting that "rais{ing} general issues regarding inventory carrying costs is not adequate to apprise Commerce of what it would need to specifically respond to regarding {the inclusion of freight, duty, and brokerage fees in the calculation}))."

Further, this Court has found that an issue has not been exhausted where a party raises but fails to flesh out an issue in its rebuttal brief and chooses instead to flesh it out fully in its Court brief. *Maverick Tube Corp. v. United States*, No. 14-00229, 2015 Ct. Intl. Trade LEXIS 60, at *10-12 (Ct. Int'l Trade June 15, 2015) ("The court is not persuaded that Maverick could not 'seek administrative remedy' by fleshing out its argument of the issue in its rebuttal brief before Commerce rather than here, and therefore finds that the issue has not been administratively exhausted"); *Cf. SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1320 (Fed. Cir. 2006) (collecting cases illustrating that where a party failed to include a "developed argument" in its opening brief, the argument was waived).

Here, Kaptan argued during the administrative proceeding that the BITT exemption was "widely available" and therefore not specific pursuant to 19 U.S.C. § 1677(5A)(D)(i). *See* Kaptan's Administrative Case Brief at 16-19 (P.R. 139; C.R. 126). But Kaptan made no mention of § 1677(5A)(D)(ii), and provided no argument as to how the BITT exemption satisfies the criteria set forth in that provision. Kaptan has therefore failed to exhaust any argument based on

that subsection.

Even if it had exhausted its administrative remedies, Kaptan fails to show that the BITT exemption falls within the scope of 19 U.S.C. § 1677(5A)(D)(ii). As explained, that provision applies only to subsidies with "objective criteria or conditions," which mean "criteria or conditions that are neutral and do not favor one enterprise or industry over another." 19 U.S.C. § 1677(5A)(D)(ii). This Court has further explained that "neutral" means "economic in nature and horizontal in application." *BGH II*, 639 F. Supp. 3d at 1243 (quoting SAA at 4243). "Economic" means that a subsidy "relates to the consumption of goods and services" and "horizontal" means "applying to similar enterprises uniformly." *Id.* at 1243. Unlike the subsidy at issue in the *BGH Edelstahl* cases cited by Kaptan, which applied to any enterprise that used at least a certain amount of electricity at a price below a specified threshold, *id.* at 1244 n. 6, the BITT program only applies to companies that obtain an industrial registry certificate and participate in certain foreign exchange transactions. Kaptan never explains in its brief how these criteria are economic in nature or horizontal in application. *See* Pl. Br. at 19-23.

Accordingly, Commerce's finding that the BITT program is specific was supported by substantial evidence or otherwise not in accordance with law.

## III. Commerce's Benchmark Selection for Valuing Nur's Land Was Supported By Substantial Evidence And In Accordance With Law

Kaptan's choice of a benchmark rate to value the land that Nur received from the government is also supported by substantial evidence and in accordance with law.

Nur entered into an agreement with the local government in the Surmene district of Turkey to receive rent-free land pursuant to Law 5084, which allows entities operating in certain provinces to use land for free for 49 years if they make investments on the property. *See* PDM at 13; *see also Steel Concrete Reinforcing Bar From the Republic of Turkey: Final Results of*

*Countervailing Duty Administrative Review and Rescission, in Part; 2018*, 86 Fed. Reg. 53,279

(Dep't of Commerce Sept. 27, 2021), and accompanying IDM (2018 Final Results) at Comment

6. Commerce found that this agreement satisfied the criteria of a countervailable subsidy, which

Kaptan does not challenge. Pl. Br. at 16.

To calculate the value of the benefit that Nur received, Commerce computed the amount

Nur should have paid for its rent-free land during the period of review by multiplying the area of

the land by a benchmark rate. PDM at 13; IDM at 8-9. In determining what benchmark rate to

apply, Commerce considered two benchmark rates from international real estate brokerage firms

that were placed on the record: a Rent Estimation Study by Cushman & Wakefield submitted by

Kaptan, and data from Collliers International's *Real Estate Market Turkey Review* submitted by

petitioner. *See* Kaptan Benchmark Submission (P.R.121; C.R.114-117); Petitioner's Benchmark

Submission (P.R.122) at Exhibit 1. Commerce determined that the Cushman & Wakefield study

submitted by Kaptan was not usable, and that the Colliers report was therefore the best

benchmark information on the record. IDM at 9-10. Kaptan argues that this determination

unsupported by substantial evidence and not in accordance with law. Pl. Br. at 24-41.

**A.**  **Commerce's Determination That The Cushman & Wakefield Benchmark Rate Was Unusable Is Supported By Substantial Evidence And In Accordance With Law**

Kaptan argues that Commerce should use Kaptan's benchmark submission, a Rent

Estimation Study by Cushman & Wakefield, as the land benchmark for valuing Nur's rent-free

land. Pl. Br. at 24-41. However, Commerce reasonably determined that this submission was not

usable. IDM at 9-10.

First, the information provided by Kaptan is business proprietary information in its

entirety. *See* Kaptan Benchmark Submission. While Kaptan argues that it provided "the average

2022 rent" for the properties considered in the Cushman & Wakefield submission as "public

information", Pl. Br. at 10, this does not change the fact that the report itself, including the analysis underlying the proposed benchmark, is business proprietary.  *See* IDM at 9; Kaptan Benchmark Submission.  Kaptan acknowledges that Commerce prefers to use public benchmark information where available.  Pl. Br. at 26; *see also* IDM at 9.  Kaptan argues that a mere preference does not amount to a strict requirement, but Kaptan does not argue that the preference itself is unreasonable or contrary to law.  Nor is it, as using public information allows Commerce to be more transparent in its decision-making, and more thorough in its public documentation. For instance, because the Cushman & Wakefield report is proprietary, Commerce was not able to publicly discuss the report in its IDM, which Kaptan now cites as evidence that Commerce failed to "meaningfully address{}" the substance of the report.  Pl. Br. at 32.  Contrary to Kaptan's characterization, Commerce never relied on any bright-line prohibiting reliance on proprietary information, but rather cited the proprietary nature of the report as one reason among others that it ultimately determined the report to be unusable. IDM at 9-10.  This was a reasonable consideration.

Another issue with the Cushman & Wakefield report was that it was apparently commissioned by Kaptan for the purposes of this review.  IDM at 9; Kaptan Benchmark Submission at 1, 5, and 9.  Commerce has previously declined to use benchmarks commissioned for the purposes of countervailing duty proceedings due to "the risk of litigation-inspired fabrication or exaggeration that may come from later-developed evidence, intended to corroborate the party's story."  IDM at 9 (quoting *Certain Softwood Lumber Products from Canada:  Final Affirmative Countervailing Duty Determination, and Final Negative Determination of Critical Circumstances*, 82 Fed. Reg. 51,814 (Dep't of Commerce Nov. 8, 2017), and accompanying IDM at 82); *see also Coated Free Sheet Paper from Indonesia:  Final*

*Affirmative Countervailing Duty Determination*, 72 Fed. Reg. 60,642 (Dep't of Commerce Oct. 25, 2007), and accompanying IDM at Comment 12 (finding a study commissioned specifically for the purposes of an investigation to be unreliable); *but see*. The Federal Circuit, in evaluating whether a party's claim had been sufficiently corroborated with evidence in a patent case, has opined that "contemporaneous documentary evidence provides greater corroborative value" in determining whether a party's litigation "story is credible." *Sandt Tech. v. Resco Metal & Plastics Cor.*, 264 F.3d 1344, 1350-51 (Fed. Cir. 2001).

Kaptan argues that *Sandt* does not support Commerce's conclusion because of the different context (oral testimony at a patent case), *see* Pl. Br. at 31, but the Court's reasoning in *Sandt* supports Commerce's decision in this context as well: a report prepared at the request of a party for the purposes of an adjudicatory administrative proceeding is less credible than a report prepared in the ordinary course of business. *See* IDM at 10. Kaptan argues that *Sandt* does not support a "*per se* rule" that evidence prepared for an adjudicative proceeding is unreliable, but rather suggests the adjudicator should "conduct a reasonable evaluation of credibility factors." Pl. Br. 31. Yet that is precisely what Commerce did here. It did not apply any *per se* rule as asserted by Kaptan, but rather found the report unusable only after considering various factors detracting from its credibility. IDM at 9-10.

The final consideration that Commerce found to weigh against the credibility of the Cushman & Wakefield report was the fact that prices in the study appear to have been partially based on prices provided by non-private entities, which further limits the reliability of the report as a benchmark. IDM at 10 (citing Kaptan Benchmark Submission at 25). As Commerce explained, the fact that a benchmark is based on numbers compiled by the organization producing the report strengthens its reliability, as it indicates that the organization is not relying

on secondary sources or compiling sets of data from other, third-party sources. IDM at 9.

Kaptan cites various authorities in an attempt to show that Commerce's decision not to rely on the Cushman & Wakefield report was unreasonable, but none are persuasive. For instance, Kaptan cites *Oy v. United States*, No. 97-05-00864, 1999 WL 270028 (Ct. Int'l Trade Apr. 27, 1999), in which this Court found that Commerce erred by disregarding expert testimony as "subjective" without further explanation and relying instead on "unsupported claims by interested parties." *Id.* at *2. Here, by contrast, Commerce considered the Cushman & Wakefield report and explained the various factors that led it to conclude the report was unusable. IDM at 9-10. Further, it did not reject the report in favor of unsupported party claims, but rather relied on another report on the record, from another real estate brokerage firm, that did not raise the same credibility concerns. IDM at 8-9.

Similarly, Kaptan's reference to *People Of The State Of New York, By Letitia James, Attorney General Of The State Of New York, v. Donald J. Trump, et al.*, a case from the Supreme Court of New York, is unpersuasive. *See* Pl. Br. at 10 n. 1, Attachment 1. Kaptan argues that this case shows that Cushman & Wakefield is "well-known for the accuracy of its real estate valuations." Pl. Br. at 10 n. 1. However, the Supreme Court of New York did not analyze the reliability of Cushman & Wakefield's valuation in that case, but rather only noted that it was a "independent professional appraisal." *See* Pl. Br. at Attachment 1, page 31. In any event, the Supreme Court of New York's reliance on property appraisals carried out by Cushman & Wakefield—concerning different properties and reviewed under different legal standards and factual circumstances—says nothing about whether it was reasonable, under the particular circumstances of this case, for Commerce to conclude that the Cushman & Wakefield report submitted by Kaptan was unusable due to its proprietary nature, the fact that it was prepared in

the context of an adjudicative proceeding, and the fact that it relied on prices provided by non-private parties. This conclusion was reasonable, supported by evidence in the record, and in accordance with law.

**B.    Commerce's Determination To Rely On The Colliers Benchmark Rate Was Supported By Substantial Evidence And In Accordance With Law**

After determining that the benchmark information submitted by Kaptan was unusable, Commerce reasonably relied on the only other benchmark information on the record, which was the Colliers report submitted by petitioner. IDM at 9. From that report, Commerce determined to rely specifically on the benchmark data from one region in Turkey, Cerkezkoy, Tekirdag, because it had the most similar population density to Suremene, Trabzon, where the land in question is located. PDM at 13-14 (citing Petitioner's Benchmark Rebuttal (P.R.123; C.R.121) at Exhibit 3). This procedure is consistent with Commerce's procedure in prior administrative reviews. *See* PDM at 14 (citing 2018 Final Results at 33-34; *see also Steel Concrete Reinforcing Bar from the Republic of Turkey: Preliminary Results of Countervailing Duty Administrative Review and Intent To Rescind in Part; 2019*, 86 Fed. Reg 69,009 (Dep't of Commerce Dec. 6, 2021) (Rebar from Turkey 2019 Preliminary), and accompanying PDM at 13-14, unchanged in *Steel Concrete Reinforcing Bar from the Republic of Turkey: Final Results of Countervailing Duty Administrative Review and Rescission, in Part; 2019*, 87 Fed. Reg. 21,640 (Dep't of Commerce April 12, 2022), and accompanying IDM at 17).

Kaptan argues that Commerce erred in relying on the Colliers report. Kaptan first claims that the Colliers report is not a reliable data source because it includes a disclaimer. Pl. Br. at 28. The disclaimer explains that "no warranty is given as to the accuracy of, and no liability for negligence is accepted in relation to, the forecasts, figures or conclusions contained in this report and they must not be relied on for investment or any other purposes. This report does not

constitute and must not be treated as investment or valuation advice or an offer to buy or sell property." Petitioner's Benchmark Submission (P.R.122) at Exhibit 1 (last page of report). Commerce explained in its IDM that a disclaimer of liability is not a significant factor when selecting benchmarks. IDM at 9. This is reasonable. The fact that Colliers chose to protect itself from lawsuits from disappointed investors—especially when its report includes forecasts concerning the future of the housing market—hardly means that its data are so unreliable that it was unreasonable for Commerce to rely on the report for land benchmark information.

Kaptan also argues that the Colliers report is unreliable because it is based on numbers compiled by Colliers itself. Pl. Br. at 28-29. As Commerce explained, this does not disqualify the data, but rather supports its decision because it suggests that Colliers is relying on information it gathered itself rather than data from other sources that it might not have been able to verify. IDM at 9.

Finally, Kaptan argues that the Colliers report was unreliable because it did not include sufficient information about its underlying data and methodology, or the qualifications of the individuals who prepared the report. Pl. Br. at 29. However, the fact that the report did not include these details is no basis for concluding that the report is inaccurate, and while additional information of this sort might strengthen the credibility of the report, Commerce was not unreasonable in relying on the report when it was the only available benchmark on the record after Commerce determined that the Cushman & Wakefield report was unusable.

Kaptan also argues that the Colliers report provides data that are distortive and not comparable to the land used by Nur, Kaptan's affiliate. Pl. Br. at 17, 24-27. But there is no requirement that the benchmark Commerce uses to value a good provided for less-than-adequate remuneration be identical to the good sold or provided by the foreign government. *See* 19 U.S.C.

§ 1677(5)(E)(iv) and 19 C.F.R. § 351.511. In fact, the imposition of such a requirement would likely disqualify most, if not all, potential benchmarks. Kaptan specifically argues that Commerce unreasonably considered only population density when selecting which regional data to use as a benchmark, without considering other factors such as the proximity of the region to a commercial hub. Pl. Br. at 17, 24-27. This argument assumes there were other available benchmarks on the record that may have been more comparable to the land at issue. But as explained above, Commerce reasonably concluded that the only other available benchmark on the record, the Cushman & Wakefield report, was unusable due to several concerns about its reliability. IDM at 9. Accordingly, Commerce reasonably chose the most comparable data available in the Colliers report, based on population density information that was on the record. *Id.* Kaptan does not argue that any other benchmark from the Colliers report would have been more comparable to Nur's land.

Accordingly, Commerce's decision to rely on the data from the Colliers report to calculate a benchmark price for land was reasonable, supported by substantial evidence, and in accordance with law.

## IV. We Do Not Contest ICDAS' Claim To A Rate Adjustment Should Kaptan's Rate Change As A Result Of This Litigation

ICDAS asserts that to the extent Commerce is remanded to recalculate Kaptan's overall subsidy rate as a result of this litigation, it must also recalculate ICDAS' separate rate. ICDAS Br. at 3-4. ICDAS also incorporates by reference the arguments made by Kaptan in this litigation. *Id.* at 3. We do not contest ICDAS' claim to a potential separate rate adjustment should Kaptan's rate eventually change as a result of this litigation. As a respondent who was not selected for mandatory individual examination, ICDAS is subject to Kaptan's rate as the applicable non-selected rate in the underlying review. Thus, ICDAS' proper intervention and

active participation in this litigation entitles it to a revised non-selected rate should Kaptan's overall subsidy rate change. However, for the reasons expressed above, we oppose ICDAS' motion for judgment on the agency record to the extent it incorporates Kaptan's arguments.

## **<u>CONCLUSION</u>**

For these reasons, we respectfully request that the Court deny Kaptan's motion for judgment on the agency record and sustain Commerce's final results.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA MCCARTHY
Director

<u>s/L. Misha Preheim</u>
L. MISHA PREHEIM
Assistant Director

OF COUNSEL:                              <u>s/Kelly M. Geddes</u>
W. MITCH PURDY                           Kelly M. Geddes
Attorney                                 Trial Attorney
U.S. Department of Commerce              U.S. Department of Justice
Office of the Chief Counsel for Trade    Civil Division
   Enforcement and Compliance        Commercial Litigation Branch
1401 Constitution Avenue, NW             PO Box 480
Washington, DC  20230                    Ben Franklin Station
Tel: (240) 482-5214                      Washington, DC  20044
Email: william.purdy@trade.gov           Tel: (202) 307-2867
                                         Email: kelly.geddes2@usdoj.gov


January 29, 2024                         Attorneys for Defendant

## CERTIFICATE OF COMPLIANCE

I hereby certify, pursuant to section 2(B)(1) of the Standard Chambers Procedures of this Court, that this brief contains 5,780 words, excluding the table of contents, table of authorities, any addendum containing statutes, rules or regulations, any certificates of counsel, and counsel's signature, as calculated by the word processing system used to prepare this brief (Microsoft Word).

<u>/s Kelly M. Geddes</u>
Kelly M. Geddes