# UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE THE HONORABLE GARY S. KATZMANN, JUDGE

| | |
|---|---|
| KAPTAN DEMIR ÇELIK ENDÜSTRISI VE TICARET A.Ş., <br><br> Plaintiff, <br><br> and <br><br> ICDAS CELIK ENERJI TERSANE VE ULASIM SANAYI, A.S., <br><br> Plaintiff-Intervenor, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant, <br><br> and <br><br> REBAR TRADE ACTION COALITION, <br><br> Defendant-Intervenor. | **Court No. 23-cv-00131** |

## REPLY IN SUPPORT OF
## THE RULE 56.2 MOTION FOR JUDGMENT ON THE AGENCY RECORD OF
## KAPTAN DEMIR ÇELIK ENDÜSTRISI VE TICARET A.Ş.

 

David L. Simon, Esq.
Mark B. Lehnardt, Esq.

LAW OFFICES OF DAVID L. SIMON, PLLC
1025 Connecticut Ave., N.W., Ste. 1000
Washington, D.C. 20036
Tel.: (202)481-9000
Email: DLSimon@DLSimon.com

Date: February 19, 2024     *Counsel to Kaptan Demir Çelik Endüstrisi ve Ticaret A.Ş.*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... i

ARGUMENT ........................................................................................................................ 1

    I.   Kaptan Provided Complete Information On The Record Establishing That BITT Exemptions Are Widely Available Throughout The Turkish Economy And Thus Cannot Be *De Jure* Specific ............................................................ 1

    II.  Kaptan Did Not Fail To Exhaust Administrative Remedies For Arguments Related To 19 U.S.C. § 1677(5A)(D)(ii) ........................................................................ 5

    III. Commerce Improperly Rejected The Cushman &Wakefield Benchmark As Unusable ........................................................................................................................ 9

    IV. Commerce Fails To Support Its Selection Of The Colliers Benchmark ......................... 13

CONCLUSION .................................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**

*Agro Dutch Indus., Ltd. v. United States*, 508 F.3d 1024 (Fed. Cir. 2007) ................................5

*Corus Staal BV v. United States*, 502 F.3d 1370, 2007 WL 2741470 (Fed. Cir. 2007) ........................................................................................................................................5

*Dep't of Homeland Sec. v. Regents of the Univ. of California*, 140 S. Ct. 1891, 207 L. Ed. 2d 353 (2020) ..............................................................................................................14

*Edelstahl Seigen GmbH. v. United States*, 639 F. Supp. 3d 1237 (Ct. Int'l Trade 2023) ........................................................................................................................................8

*LTV Steel Co. v. United States*, 21 CIT 838, 985 F. Supp. 95 (1997) .........................................7

*Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301 (Fed. Cir. 2009) ...................................4, 14

*Nucor Corp. v. United States*, 927 F.3d 1243 (Ct. Int'l Trade 2019) ..........................................8

*Qingdao Taifa Grp. Co. v. United States*, 33 CIT 1090, 637 F. Supp. 2d 1231 (2009) ..........................................................................................................................................7

*Rautaruukki Oy v. United States*, 23 CIT 257 (1999) ................................................................11

**Statutes**

19 U.S.C. § 1677(5A)(D)(i) ......................................................................................................3, 4

19 U.S.C. § 1677(5A)(D)(ii) ................................................................................................ passim

19 U.S.C. § 1677(5A)(D)(iii) .........................................................................................................4

19 U.S.C. § 3511(a) .......................................................................................................................3

19 U.S.C. § 3512(d) ......................................................................................................................3

28 U.S.C. § 2637(d) ......................................................................................................................5

**Other Authorities**

*Statement of Administrative Action accompanying the Uruguay Round Agreements Act*, H. Doc. 103-316, *reprinted in* 1994 U.S.C.C.A.N. 4040 ..............................3

**Administrative Determinations**

*Certain Carbon and Alloy Steel Cut-to Length Plate From the Republic of Korea: Final Results and Partial Rescission of Countervailing Duty Administrative Review, 2018*, 86 Fed. Reg. 15,184 (Dep't of Commerce Mar. 22, 2021) ..............................10

*Polyethylene Terephthalate Resin From the Sultanate of Oman: Final Results of Antidumping Duty Administrative Review; 2020–2021*, 87 Fed. Reg. 75,594 (Dep't of Commerce Dec. 9, 2022) ...................................................................................10

*Steel Concrete Reinforcing Bar From the Republic of Turkey: Final Results of Countervailing Duty Administrative Review and Rescission, in Part; 2019*, 87 Fed. Reg. 21,640 (Dep't of Commerce April 12, 2022)............................................................6

**Other Authorities**

*Statement of Administrative Action accompanying the Uruguay Round Agreements Act*, H. Doc. 103-316, *reprinted in* 1994 U.S.C.C.A.N. 4040 ..............................3

**Administrative Determinations**

*Certain Carbon and Alloy Steel Cut-to Length Plate From the Republic of Korea: Final Results and Partial Rescission of Countervailing Duty Administrative Review, 2018*, 86 Fed. Reg. 15,184 (Dep't of Commerce Mar. 22, 2021) ..............................10

*Polyethylene Terephthalate Resin From the Sultanate of Oman: Final Results of Antidumping Duty Administrative Review; 2020–2021*, 87 Fed. Reg. 75,594 (Dep't of Commerce Dec. 9, 2022) ...................................................................................10

*Steel Concrete Reinforcing Bar From the Republic of Turkey: Final Results of Countervailing Duty Administrative Review and Rescission, in Part; 2019*, 87 Fed. Reg. 21,640 (Dep't of Commerce April 12, 2022)............................................................6

Kaptan Demir Çelik Endüstrisi ve Ticaret A.Ş. ("Kaptan") respectfully submits its reply in support of its motion for judgment on the agency record regarding the final results of the Department of Commerce ("Commerce") in the 2020 administrative review of the countervailing duty ("CVD") order on steel concrete reinforcing bar from the Republic of Turkey and submits this brief in support thereof. For the reasons set forth below, Kaptan respectfully requests that this Court remand this case to Commerce for reconsideration, consistent with the decision of this Court.

## ARGUMENT

Commerce improperly countervailed BITT exemptions that are widely available throughout the Turkish economy. Commerce improperly rejected the benchmark Kaptan submitted to value land used by Kaptan's shipbuilding affiliate, Nur. This Court should remand both decisions as unsupported by substantial evidence on the administrative record and otherwise not in accordance with law.

### I. Kaptan Provided Complete Information On The Record Establishing That BITT Exemptions Are Widely Available Throughout The Turkish Economy And Thus Cannot Be *De Jure* Specific

Commerce mounts precious little defense against Kaptan's argument that BITT exemptions are not *de jure* specific. Commerce acknowledges that Turkish law defines eligibility for BITT exemptions broadly, but argues that Kaptan and the Government of Turkey "did not present evidence showing that all eligible companies actually obtain those certificates," reasoning that "{u}ntil a company obtains such a{n industrial registry} certificate, it is not eligible for the BITT exemption." DOC Br. at 9; P.R.152, *Final Issues & Decisions Memorandum* ("*Final Dec.Mem.*"), at 12 (stating, Turkish law "does not demonstrate that all enterprises eligible actually apply and obtain industrial registry certificates"). Commerce's

1

defense must be rejected because it ignores record evidence and analyzes the issue under an incorrect framework. Kaptan Br. at 19.

BITT exemptions are available, by law, to a broad range of companies in Turkey. These companies include "industrial establishments," defined as any place that changes the characteristics of material or substance "with the help of machinery, equipment, looms, tools or other means and forces or only by manual labor," including mines, repair shops (of any kind), energy producers, large construction sites (including shipbuilders), and information technology and software companies, *See* PR48/CR94, *GOT IQR*, Ex.32 at 2; PR48/CR43, *Kaptan IQR*, Ex.27 at 35. Others eligible by law include banks, "authorized" institutions, corporate borrowers with foreign currency loan payables, transactions involving other groups identified under Presidential Decree 1149, and exporters who are members of exporters' associations. *Id.* The Government of Turkey explained that all industrial establishments "*must* register to the Industrial Registry Certificate System," that BITT exemptions are used throughout the Turkish economy, and that there are 140,071 industrial enterprises on the industrial registry:

> All manufacturers in Türkiye *must* register to the Industrial
> Registry Certificate System according to the Article 2 of the Law
> of the Industrial Registration No. 6948 (See Exhibit 32). Therefore,
> since all manufacturers in Türkiye are required to have an
> industrial registry certificate and the applicable BITT rate is 0% for
> any enterprise having an industrial registry certificate, this alleged
> subsidy program is broadly available and widely used throughout
> the economy. Therefore GOT considers that application of 0%
> BITT rate is non-countervailable. As can be seen from Exhibit 3,
> as of 2020 there are 140.071 enterprises having an industrial
> registry certificate.

*Id.* at 81; *see also, id.,* Exs.32 at Art. 2, 33 (emphasis added). By "throughout the economy," the Government of Turkey means that the 140,071 enterprises are spread over all 81 provinces in Turkey. *See id.*, at 81 & ex. 33.

In the *de jure* specificity analysis, the question Commerce must address is whether the BITT exemptions are limited in the law to "a sufficiently small number of enterprises, industries, or groups thereof," or are "narrowly focused subsidies provided to or used by discrete segments of an economy." *Statement of Administrative Action accompanying the Uruguay Round Agreements Act*, H. Doc. 103-316, at 930, *reprinted in* 1994 U.S.C.C.A.N. 4040, 4242.[1] The opposite is true here, with Turkish law *requiring* all industrial enterprises to register *before* starting production activities, and the Government of Turkey reporting that there are 140,071 registered enterprises throughout the country in nearly every sector of the Turkish economy. *See* PR48/CR94, *GOT IQR*, at 81 & Ex.33. There is no support for finding anything other than that BITT exemptions are not *de jure* specific under 19 U.S.C. 1677(5A)(D)(i).

Before this court, Commerce claims that, "even if the record evidence suggests that Turkish companies are generally eligible for industrial registry certificates, it does not show that they are generally eligible for the BITT exemption." DOC Br. at 9. Commerce's claim before this Court, however, improperly reads the obligatory nature of industrial registration out of the Turkish law. PR48/CR94, *GOT IQR*, at 81 & Ex.32. Commerce does not explain in the *Final I&D* how the language of the law is irrelevant despite plainly stating that "{i}t is obligatory for industrial enterprises to be registered in the industrial registry," and that "Industrial enterprises must pre-register with the industrial registry before starting production activities." *See id.*, at 81 & Ex.32. Commerce's explanation contradicts record evidence and relies upon the speculation that there is widespread evasion of the Industrial Registry Law. Such speculation is not

---

[1] "The statement of administrative action approved by the Congress under {19 U.S.C. § 3511(a)} shall be regarded as an authoritative expression by the United States concerning the interpretation and application of the Uruguay Round Agreements and this Act in any judicial proceeding in which a question arises concerning such interpretation or application." 19 U.S.C. § 3512(d).

3

substantial evidence. *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1327 (Fed. Cir. 2009) ("It is well established that speculation does not constitute substantial evidence.")

Commerce further claims that "{e}vidence on the record does not address whether all companies that make foreign exchange transactions receive the benefit under the law, which would show that the BITT exemptions are generally available." P.R.152, *Final Dec.Mem.*, at 12. Not so for two reasons. First, the Government of Turkey explained that BITT exemptions are "broadly available *and widely used* throughout the economy…. {a}s can be seen from … 140,071 enterprises having an industrial registry certificate." PR48/CR94, *GOT IQR*, at 81 & Ex.33. Second, the question of how much a subsidy is actually used is relevant only to a *de facto* analysis, *see* 19 U.S.C. § 1677(5A)(D)(iii) – which Commerce did not conduct – but irrelevant to the *de jure* analysis, *see* 19 U.S.C. § 1677(5A)(D)(i), upon which Commerce based its decision. *See* P.R.152, *Final Dec.Mem.*, at 12.

Petitioner argues that Commerce's analysis of BITT was correct because it has found BITT exemptions countervailable in others cases. Pet'r Br. at 11. Essentially, this argument is that Commerce is right because Commerce says so. The "Commerce said so" defense provides no support in an analysis of whether the legal texts setting forth the exemptions limit eligibility to a firm or industry or group of firms or industries.

Neither Commerce or Petitioner present any argument that rebuts those provided by Kaptan in its opening brief (Kaptan does not waive any of its arguments). Accordingly, this Court should reject Commerce's and Petitioner's arguments and remand for Commerce to recalculate Kaptan's subsidy margin excluding amounts for BITT exemptions.

## II. Kaptan Did Not Fail To Exhaust Administrative Remedies For Arguments Related To 19 U.S.C. § 1677(5A)(D)(ii)

Kaptan properly raised arguments in its opening brief related to 19 U.S.C. § 1677(5A)(D)(ii) because Commerce did not provide a full explanation of its rationale until for the first time in the final determination it implicated section 1677(5A)(D)(ii). Even if this Court finds that exhaustion is an issue with BITT exemptions, exhaustion should not be required here because the analysis of BITT exemptions is a purely legal issue with a complete factual record.

This Court has the discretion to require exhaustion of administrative remedies. *See* 28 U.S.C. § 2637(d) ("In any civil action not specified in this section, the Court of International Trade shall, where appropriate, require the exhaustion of administrative remedies."); *see also Agro Dutch Indus., Ltd. v. United States*, 508 F.3d 1024, 1029 (Fed. Cir. 2007) ("the application of 'exhaustion principles in trade cases is subject to the discretion of the judge of the Court of International Trade.'") (*citing Corus Staal BV v. United States*, 502 F.3d 1370, 2007 WL 2741470, at *9 (Fed. Cir. 2007)). One exception to the exhaustion requirement is for "a pure question of law that can be addressed without further factual development." *See e.g., Nucor Corp. v. United States*, 927 F.3d 1243, 1262 (Fed. Cir. 2019); *Agro Dutch*, 508 F.3d at 1029. Here, Commerce alleges that Kaptan failed to exhaust administrative remedies without any analysis of the record below or exceptions to exhaustion.

In the *Preliminary Issues & Decisions Memorandum* ("*Prelim. Dec. Mem.*"), Commerce's entire rationale for finding BITT transactions specific was a single sentence stating, "We also find this program is specific under section 771(5A)(D)(i) of the Act, because, as discussed above, the program is limited to firms that conduct certain types of foreign exchange transactions that were exempted by Law 6802 (Article 33) (the Expenditure Expenses Law)." P.R.131, *Prelim Dec. Mem.*, at 11.

Although Commerce gave the barest of bones as its rationale in the *Prelim Dec. Mem.*, Kaptan's case-brief arguments focused on the issue as framed by Commerce and drawing on its more fulsome explanation in the prior review. *See Kaptan Case Br.* at 16-19 (*citing Steel Concrete Reinforcing Bar From the Republic of Turkey: Final Results of Countervailing Duty Administrative Review and Rescission, in Part; 2019*, 87 Fed. Reg. 21,640 (Dep't of Commerce April 12, 2022), *and accompanying Dec. Mem.* at 19-20)). That is, Kaptan highlighted the plain language of Turkish legal provisions establishing that what Commerce called "limited to firms that conduct certain types of foreign exchange transactions," actually has an expansive reach into nearly all sectors of the Turkish economy. *Kaptan Case Br.* at 16-19.

Kaptan's arguments before the agency touched upon all elements of 19 U.S.C. § 1677(5A)(D)(ii), including the BITT exemption's objective criteria, automatic eligibility, strictly followed criteria, and criteria clearly set forth in Turkish law. *Id.* Kaptan listed the objective criteria, clearly set forth in Turkish law, by which companies in Turkey are automatically eligible for BITT exemptions, *see Kaptan Case Br.* at 17-18. Further, Kaptan cited the responses of the Government of Turkey establishing that that any eligible company receives the exemption "without any exceptions." *Id.* at 17. Thus, while Kaptan may not have cited section 1677(5A)(D)(ii), Kaptan presented all the relevant arguments, citing facts on the administrative record.

Further, Commerce fully clarified its rationale for the first time in the *Final Results*. In response to Kaptan's arguments in its case brief, Commerce greatly expanded its rationale from the *Prelim Dec.Mem.* to include the Government of Turkey's definition of the "parameters under which it defines industrial registry certificates," and the "criteria under which it grants or denies industrial registry certificates," as follows:

6

> However, even if the GOT did define the parameters under which it defines "industrial establishments" and explain the criteria under which it grants or denies industrial registry certificates, this only establishes that the industrial registry certificate can be obtained by all industrial enterprises.{} This does not demonstrate that all enterprises eligible actually apply and obtain industrial registry certificates. Further, the universe of companies that may benefit from the program is necessarily limited to companies that make foreign exchange transactions, which inevitably limits the universe of companies that may benefit from it. When combined with the fact that the law further limits the universe by adding conditions to apply for BITT exemptions, the cross-section of companies who meet one or more of the five conditions established by the law, and that engage in foreign exchange transactions, are the only ones who can benefit from BITT exemptions. Evidence on the record does not address whether all companies that make foreign exchange transactions receive the benefit under the law, which would show that the BITT exemptions are generally available.
>
> Without evidence that the program is generally available as outlined above, Commerce continues to find that the BITT exemption is de jure specific under section 771(5A)(D)(i) of the Act, as the BITT exemption necessarily only applies to a cross-section of the companies which fulfill one of the five requirements and make foreign exchange transactions. As such, and without any evidence of changes to the law, we continue to find that the BITT exemptions are specific and countervailable.

*Final Dec. Mem.*, at 11-12. Despite pinning its analysis to 19 U.S.C. § 1677(5A)(D)(i), the new concepts introduced for the first time in Commerce's rationale in the *Final Dec. Mem.* are directly related to an analysis under 19 U.S.C. § 1677(5A)(D)(ii). Section 1677(5A)(D)(ii) requires an analysis of whether there are "objective criteria or other conditions," whether "eligibility is automatic," whether "criteria or conditions for eligibility are strictly followed," and whether "the criteria or conditions are clearly set forth in the relevant" law. *See* 19 U.S.C. § 1677(5A)(D)(ii).

When Commerce introduces new rationales in its final results, parties do not have a "full and fair" opportunity to raise the issue at the administrative level." *Qingdao Taifa Grp. Co. v. United States*, 33 CIT 1090, 1093, 637 F. Supp. 2d 1231, 1236 (2009) (*citing LTV Steel Co. v. United States*, 21 CIT 838, 868-69, 985 F. Supp. 95, 120 (1997)). In such circumstances, as here, applying an exhaustion requirement is not appropriate.

Further, the record is complete for an analysis under 19 U.S.C. § 1677(5A)(D)(ii). The relevant legal provisions are explained and on the record. *See* PR48/CR94, *GOT IQR*, at 77, 88, Exs.32, 33; PR48/CR43, *Kaptan IQR*, at 50-54, Ex.27. The Government of Turkey explained the purpose of the law was "to restrict speculative and high frequency foreign exchange movements" but it provides extensive exemptions so as not to burden economic activity. *Id.* at 76-87. Further, the Government of Turkey explained

- If the conditions as listed in the law are met, an applicant is subject to 0 % BITT rate automatically.

- With this regard, foreign exchange sales that are made to any enterprise having an industrial registry certificate are subject to 0% BITT rate without any exceptions.

- Applicable BITT rate is 0% for any enterprise having an industrial registry certificate regardless of its industry.

- No government agency or authority has discretion that can go beyond the criteria laid out in the law.

PR48/CR94, *GOT IQR*, at 76-87. Thus, the criteria are neutral because they relate to the production of all goods and most services and apply to similar enterprises uniformly. *Edelstahl Seigen GmbH. v. United States*, 639 F. Supp. 3d 1237, 1243 (Ct. Int'l Trade 2023). The record is clear that BITT exemptions should be found not *de jure* countervailable also under 19 U.S.C. § 1677(5A)(D)(ii); *Nucor Corp. v. United States*, 927 F.3d 1243, 1262 (Ct. Int'l Trade 2019) ("Commerce should not be permitted to ignore its own record on the basis that a party 'mentioned . . . only in passing' what the record loudly proclaims.").

In sum, no argument is presented to counter the plain language of the Turkish law establishing broad exemptions to BITT transactions that are widely used throughout Turkey and throughout the Turkish economy. Further, there is no argument that record evidence establishes objective criteria for automatic eligibility to benefit from BITT exemptions, and that these

criteria are strictly followed and clearly set forth in Turkish law. Accordingly, this Court should find that BITT exemptions are not *de jure* specific.

### III. Commerce Improperly Rejected The Cushman &Wakefield Benchmark As Unusable

The issue related to the Cushman & Wakefield benchmark before the Court on this appeal is not whether it is better than the Colliers benchmark, but whether Commerce acted lawfully in rejecting the Cushman & Wakefield benchmark as unusable. *See* Kaptan Br. at 24 ("Commerce Improperly Rejected The {Cushman & Wakefield Benchmark}"). Commerce's three arguments justifying its rejection of the Cushman & Wakefield benchmark ignore its own prior decisions or are based upon vague references to analyses that it never conducted. Accordingly, this Court should reject Commerce's arguments and remand this case for Commerce to consider the Cushman & Wakefield benchmark.

Commerce first claims that it was justified rejecting the Cushman & Wakefield benchmark based upon the fact that it was mostly business proprietary information (BPI). DOC Br. at 13-14. Commerce claims that its preference for public information justifies its determination that the Cushman & Wakefield benchmark was "unusable." *Id.*. Commerce does not address the legal authorities Kaptan cites in which Commerce explicitly states that the BPI nature of a benchmark is no impediment, and that there is no formal "preference" for public information. Kaptan Br. at 26-27 (citing cases). By not addressing Commerce's own arguments for using BPI benchmarks and attempting to distinguish them, Commerce effectively concedes that the argument it presents before this court are invalid.

Commerce second claims that because the Cushman & Wakefield benchmark was BPI with some public aspects, "Commerce was not able to publicly discuss the report in its IDM." DOC Br. at 14. Commerce hides, however, the fact that it regularly – even frequently – relies

9

upon analyses in confidential memoranda whenever it is required to discuss confidential information for purposes of any determination. *See e.g.*, *Polyethylene Terephthalate Resin From the Sultanate of Oman: Final Results of Antidumping Duty Administrative Review; 2020–2021*, 87 Fed. Reg. 75,594 (Dep't of Commerce Dec. 9, 2022), and accompanying Dec. Mem. at 6 ("We discuss this evidence in a separate BPI memorandum."); *Certain Carbon and Alloy Steel Cut-to Length Plate From the Republic of Korea: Final Results and Partial Rescission of Countervailing Duty Administrative Review, 2018*, 86 Fed. Reg. 15,184 (Dep't of Commerce Mar. 22, 2021), and accompanying Dec. Mem., at 27 n.10 ("As parts of the argument have been bracketed to protect POSCO's business proprietary information (BPI), the details of the argument are discussed in the Memorandum, "Business Proprietary Information Accompanying the Issues and Decision Memorandum for the Final Results," dated concurrently with this memorandum (BPI Memorandum) at Note 1.")

Commerce next asserts that it properly rejected the Cushman & Wakefield benchmark because "it was apparently commissioned by Kaptan for the purposes of this review." DOC Br. at 14-15. In response to Kaptan's argument that Commerce failed to analyze the Cushman & Wakefield study for reliability as required by the Federal Circuit case Commerce relies upon, Kaptan Br. at 30-33. Commerce falsely asserts that it "found the report unusable only after considering various factors detracting from its credibility." DOC Br. at 15. Indeed, Commerce fails to provide even a summary list of the factors it allegedly considered relative to the credibility of the report – because Commerce did not conduct any such analysis. Commerce cited only the BPI nature of the report, the fact that it was prepared for the review, and states that some information appears to be from non-private entities. These statements are not analyses and do not address whether any part of the report provided grounds to believe there

was "litigation-inspired fabrication or exaggeration," as Commerce claimed as its justification for rejecting the Cushman & Wakefield report. *See Final IDM* at 9-10.

Commerce fails in its attempts to distinguish case law cited by Kaptan. DOC Br. at 16. For example, Kaptan cited *Rautaruukki Oy v. United States*, 23 CIT 257 (1999) for the proposition that Commerce may not disregard submitted information based upon superficial characterizations, but must conduct a reasonable evaluation of the information. Kaptan Br. at 31. Commerce claimed a distinction that Commerce "explained the various factors that let it to conclude the report was unusable," but Commerce conducted no such analysis.

Commerce third asserts the nonsensical argument that the numbers compiled by Cushman & Wakefield are not credible because they "appear to have been partially based upon prices provided by non-private entities," while the Colliers benchmark is credible because it "is based upon numbers compiled by the organization producing the report." DOC Br. at 15-16. Commerce appears not to base this argument on the record of this administrative proceeding, where the Cushman & Wakefield benchmark provided extensive information about the numbers it compiled (where Cushman & Wakefield was the organization producing the report), and the source of the numbers forming the basis for the Colliers report are unknown and not on the record in either public or confidential form. *See* Kaptan Br. at 28-29 ("the record does not contain any information describing Colliers data source: its underlying data and methodology are secret") (*citing* P.R.122, *Petr. Benchmark Submission*, Ex.1 at 11, Ex.2). Moreover, although the numbers and analysis used to produce the Cushman & Wakefield benchmark followed international valuation standards, nothing is known about how the Colliers report was

11

produced. *See* Kaptan Br. at 29-30 (citing the international RICS standards used to produce the Cushman & Wakefield report.

Finally, responding to Kaptan's argument that the Collier's benchmark is distortive, Kaptan Br. at 34-35, Commerce argues that there is no requirement that properties upon which the benchmark valuation is based be "identical" to the property at issue. DOC Br. at 18. Kaptan did not argue that benchmark properties have to be identical, however, Kaptan argued that Commerce must account for factors affecting comparability, Kaptan Br. at 34, which Commerce did not, and does not claim otherwise in its reply brief. Instead, Commerce continues to excuse its failure to adequately evaluate the Colliers benchmark by throwing its hands up and claiming that the Colliers benchmark was the only usable benchmark on the record. DOC Br. at 19. Given Commerce's improper rejection of the Cushman & Wakefield benchmark, Commerce's argument rings hollow.

Petitioner, for its part, attempts to hide the gravitas of the Cushman & Wakefield benchmark by calling it simply, "Rent Estimation Study," Pet'r Br. at 5, divorcing the subject of the study from the internationally-respected real estate brokerage author of the study. Further, Petitioner incorrectly frames the issue as a "challenge{ to} the agency's reliance on the Colliers International data over Kaptan's study to derive the benchmark," Pet'r Br. at 14, when Kaptan challenges not the reliance of one over the other, but Commerce's outright rejection of the Cushman & Wakefield benchmark as unusable and consequent reliance upon the only benchmark Commerce recognized as usable.

Further, Petitioner's arguments are irrelevant because it cites the standard for comparing benchmarks, Pet'r Br. at 18 ("Kaptan muss ho that no reasonable mind could rely on a Colliers International-based benchmark over the study-derived benchmarks that Kaptan proposed"),

when Commerce did not compare benchmarks – it rejected the C&W benchmark and selected the Colliers benchmark as the only available information on the record. P.R.152, *Final Dec.Mem.*, at 9-10. Thus, Petitioner's arguments are largely irrelevant to the issue before the Court.

Commerce defends most of its decision on the basis that, after rejecting the Cushman & Wakefield report, the only available benchmark on the record was the Colliers benchmark. *See* DOC Br. at 18-19. But because Commerce has improperly rejected the Cushman & Wakefield benchmark as unusable, its decision cannot be affirmed until it properly considers all record evidence.

### IV. Commerce Fails To Support Its Selection Of The Colliers Benchmark

Commerce fails to support it decision that the Colliers report was reliable. In its reply brief Commerce claims that the Colliers report is credible despite disclaiming the accuracy of the report and providing no information about the source of its information, and fails to provide any argument for using prior population density decisions to select the benchmark. For the reasons set forth in Kaptan's opening brief, Kaptan Br. at 24-41, Commerce's benchmark selection cannot be affirmed.

Commerce defends its decision that the Colliers benchmark is reliable despite Colliers itself disclaiming the reliability of the numbers it reports. DOC Br. at 17-18; Kaptan Br. at 28. Commerce relies upon post-hoc rationalizations, stating that "{t}he fact that Colliers chose to protect itself from lawsuits from disappointed investors…hardly means that its data are so unreliable that it was unreasonable for Commerce to rely on the report for land benchmark information." DOC Br. at 18. Commerce made no mention of protection from lawsuits in the final decision memorandum, and cannot now supplement its rationale. *See Dep't of Homeland*

13

*Sec. v. Regents of the Univ. of California*, 140 S. Ct. 1891, 1908, 207 L. Ed. 2d 353 (2020) (explaining that an agency decision cannot be "upheld on the basis of impermissible 'post hoc rationalization.'").

Commerce pushes back on the suggest that Colliers' entire description of the source for its numbers as "Colliers International" undermines its credibility – because it does not provide any information about the numbers or methodologies underlying its reporting. DOC Br. at 18; Kaptan Br. at 28-29 (*citing* P.R.126/C.R.119, *Petr's Pre-Prelim Cmts.*, Ex.2, at 11). Commerce refuses to acknowledge that stating "Collier's International" does not provide any guidance, whatsoever, about the sources or methodologies Colliers used to obtain the numbers it reported. Commerce merely speculates about Collier's sources, stating that by citing "Colliers International," the Colliers benchmark "suggests that Colliers is relying on information it gathered itself rather than data from other sources that it might not have been able to verify." DOC Br. at 18. This "suggestion" is Commerce's speculation, and speculation is insufficient to support a decision. *Lucent*, 580 F.3d at 1327 ("It is well established that speculation does not constitute substantial evidence.").

Commerce adds that "the fact that the report did not include these details {of source and methodology} is no basis for concluding that the report is inaccurate." DOC Br. at 18. This assertion seems nonsensical. Commerce argues that a report without details about its sources or methodologies is still reliable, yet it finds a report with detailed sources and internationally-recognized methodologies unreliable simply because it was commissioned for purposes of determining an appropriate benchmark for a property located outside a small village, 1,000 km from Turkey's economic center.

Neither Commerce or Petitioner present any argument that rebuts those provided by Kaptan in its opening brief (Kaptan does not waive any of its arguments). Accordingly, this Court should reject Commerce's and Petitioner's arguments and remand for Commerce to reconsider the benchmark to use to value any benefits based upon Nur's use of land.

## CONCLUSION

For the reasons stated above, this Court should find that BITT exemptions are not *de jure* specific, and that Commerce improperly rejected the C&W benchmark, and remand for a redetermination by Commerce in harmony with this Court's decision.

Respectfully submitted,

/s/ *Mark B. Lehnardt*

David L. Simon
Mark B. Lehnardt

Law Offices of David L. Simon, PLLC
1025 Connecticut Ave., N.W., Ste. 1000
Washington, D.C. 20036

Email: MarkLehnardt@DLSimon.com

February 19, 2024

*Counsel to Kaptan Demir Çelik Endüstrisi ve Ticaret A.Ş.*

# CERTIFICATE OF COMPLIANCE

1. This brief complies with the guidelines set forth in the Standard Chambers Procedures. The confidential version of this brief contains **4,434** words on numbered pages (that is, excluding only the Cover Page, the Table of Contents, the Table of Authorities, and counsel's signature block).

2. This brief has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 12-point font.

                                                  /s/ Mark B. Lehnardt
                                                  Mark B. Lehnardt

Date: February 19, 2024                    *Counsel to Kaptan Demir Çelik Endüstrisi ve Ticaret A.Ş.*