IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE GARY S. KATZMANN, JUDGE

|  |  |
|---|---|
| KAPTAN DEMIR CELIK ENDUSTRISI VE TICARET A.S., <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant, <br><br> and <br><br> REBAR TRADE ACTION COALITION, *et al.*, <br><br> Defendant-Intervenors. | Court No. 23-00131 |

**DEFENDANT'S RESPONSE TO THE COURT'S
QUESTIONS FOR ORAL ARGUMENT**

Defendant, the United States, respectfully submits these written answers to the Court's questions for oral argument in accordance with the Court's May 8, 2024 letter. *See* ECF No. 43.

1. **What is an "enterprise or industry"? 19 U.S.C. § 1677(5A)(D)(i).**

Commerce has not adopted and does not apply a particular definition for enterprise, industry, or groups of enterprises or industries in effectuating 19 U.S.C. § 1677(5A)(D)(i). Instead, it determines whether a particular enterprise or industry, or group thereof, qualifies as such for the purposes of 19 U.S.C. § 1677(5A)(D)(i) on a case-by-case basis. Similarly, Commerce's analysis regarding whether a program is expressly limited to certain enterprises or industries, and therefore *de jure* specific, is carried out on a case-by-case basis and involves an

exercise of Commerce's discretion. This discretion is broad. SAA at 930 ("As under existing law, clause (i) does not attempt to provide a precise mathematical formula for determining when the number of enterprises or industries eligible for a subsidy is sufficiently small so as to properly be considered specific."). Accordingly, the analysis in this case focused on the language of the law at issue here, rather than attempting to establish broad definitions or rules for applying section 1677(5A)(D)(i).

> a. **Please provide an example of a category of subsidy recipients that would be too broad to qualify for this descriptor.**

Comparison to other cases is difficult because the different eligibility criteria of different subsidy programs are often unique and incapable of apples-to-apples comparison. Nonetheless, we will give several examples of instances when Commerce has concluded that subsidies examined in other proceedings were not *de jure* specific.

In its preliminary results in the administrative review of the countervailing duty order on common alloy aluminum sheet from the Government of Türkiye (GOT)[1], Commerce found not to be *de jure* specific a program that provides assistance for an employer's share in unemployment insurance premiums to businesses which are among the most dangerous workplaces and have more than ten employees. *Common Alloy Aluminum Sheet from Türkiye*, 89 Fed. Reg. 36,754 (Dep't of Commerce May 3, 2024) and accompanying Issues and Decision Memorandum at 17. Similarly, in a prior review of the same countervailing duty order, Commerce found not to be *de jure* specific a social security insurance incentive that is given to all public and private sector establishments and is therefore not limited to a particular industry, sector, or enterprise. *Common Alloy Aluminum Sheet from Türkiye*, 88 Fed. Reg. 30,092 (Dep't

---

[1] Here, Türkiye refers to the same country referred to as the Republic of Turkey in the briefs and underlying administrative proceeding.

of Commerce May 10, 2023) and accompanying Issues and Decision Memorandum at 25-26 (unchanged in *Common Alloy Aluminum Sheet from Türkiye*, 88 Fed. Reg. 75,274 (Dep't of Commerce Nov. 2, 2023)).

Finally, in Heavy Walled Rectangular Welded Carbon Steel Pipes and Tubes from the Republic of Türkiye, Commerce considered a program establishing that entities paying income tax due to commercial, agricultural, or professional activities, as well as corporate taxpayers excluding institutions engaged in the finance and banking business, insurance and reassurance firms, pension firms, and pension investment funds, may be granted a discount of five percent of the income or corporate tax. *See Heavy Walled Rectangular Welded Carbon Steel Pipes and Tubes from the Republic of Turkey: Preliminary Results and Rescission in Part of Countervailing Duty Administrative Review, 2019*, 86 Fed. Reg. 54926 (Dep't of Commerce Oct. 5, 2021), and accompanying Preliminary Decision Memorandum at 14-15 (unchanged in final results). Commerce found this program not to be limited to specific enterprises or industries within the meaning of 19 U.S.C. § 771(5A)(D)(i). *Id.*

2. **If Turkish law provides the benefit of the BITT exemption to all holders of an industrial registry certificate that are engaged in foreign exchange transactions, why is it relevant for the purpose of a specific-as-a-matter-of-law inquiry under 19 U.S.C. § 1677(5A)(D)(i) whether the record contains evidence "showing that all eligible companies actually obtain those [industrial] certificates"? Gov't Br. at 9; *see also* Def.-Inters.' Br. at 10.**

While the question of actual *use* of a subsidy program is properly part of a *de facto* specificity analysis, the question of actual *eligibility* is relevant to the *de jure* specificity analysis. In the underlying administrative review, Kaptan's primary argument as to why the BITT exemption program was not *de jure* specific was that an industry registry certificate, one of the conditions that qualifies a company for the exemption if that company also conducts foreign exchange transactions, could be obtained by any industrial establishment. *See* Kaptan

3

Administrative Case Brief at 18-19 (P.R. 139).  In response to this argument, Commerce explained that eligibility for an industrial registry certificate is not equivalent to actually obtaining a certificate, and thus qualifying for the program.  IDM at 12.  As a result, even if it is true that companies are broadly eligible for an industrial registry certificate, that does not demonstrate that they are broadly eligible for a BITT exemption.  Thus, this analysis goes to the question of eligibility for, rather than actual use of, the BITT exemption program.

Further, this is only one of several reasons that Kaptan's argument fails.  There was no information on the record from Türkiye defining what an "industrial establishment" constitutes, such that Kaptan failed to demonstrate that industrial registry certificates were, in fact, broadly available.  *Id.*  Finally, even with respect to "industrial establishments" that do possess industrial registry certificates, only those that *also* engage in foreign exchange transactions would qualify for the exemption, such that even if industrial registry certificates are broadly possessed, that does not render the BITT exemption program *de jure* specific.  *Id.*

> **a.    Is a lack of such evidence not instead relevant to determining whether a subsidy is "specific as a matter of fact" under the guidelines provided in U.S.C. § 1677(5A)(D)(iii)?**

Commerce agrees that analysis of actual usage of a program is relevant when determining *de facto* specificity under 19 U.S.C. § 1677(5A)(D)(iii).  Here, however, Commerce was considering whether the eligibility requirements for the BITT exemption program were so broad that it is not *de jure* specific.  Kaptan argues that these requirements were sufficiently broad because of the wide availability of industrial registry certificates.  However, as explained in the preceding section, companies that do not actually obtain industrial registry certificates are not eligible for the BITT exemption program in the first place—a separate question from whether eligible companies actually use the BITT exemption program—and therefore the broad

4

availability of industrial registry certificates would not necessarily equate to broad eligibility for the BITT exemption program. Commerce therefore rejected Kaptan's argument.

> **b.  Even if access to the BITT exemption is (hypothetically) limited to an "enterprise or industry" on account of the small number of entities that actually obtain industrial registry certificates, would this necessarily mean that the Turkish government "expressly limits access to the subsidy"?** *Id.* **§ 1677(5A)(D)(i).**

As discussed above, the question of how many entities actually acquire an industrial registry certificate is only one part of Commerce's analysis of whether the Turkish government "expressly limits access to the subsidy" for the purposes of 19 U.S.C. § 1677(5A)(D)(i). Kaptan asserts, without supporting evidence, that Turkish companies are broadly eligible for an industrial registry certificate, and argues that the BITT exemption program is therefore necessarily widely available, rather than expressly limited. The primary reason this argument fails is that the GOT expressly limited subsidies to enterprises that partake in a specific activity, foreign exchange transactions, *and* satisfy one of several conditions, such as possessing an industrial registry certificate. IDM at 12. The program is therefore limited to a specific subset of enterprises or industries even if it is true that Turkish companies are broadly in possession of industrial registry certificates.

In addition, Kaptan has failed to establish the premise of its argument because it has not demonstrated that companies eligible for industrial registry certificates broadly obtain them. As explained in response to prior questions, the question of actual eligibility for the BITT exemption program is separate from the question of actual usage of the program, and companies that do not actually obtain industrial registry certificates are not eligible for the program at all. Thus, the GOT has expressly limited eligibility of the program to the subset of companies who actually obtain certificates, and Kaptan has failed to show that this is a broad group. But again, this is

5

only one of the flaws in Kaptan's argument. Commerce concluded that the GOT expressly limited access to the subsidy because the record only shows that industrial registry certificates were available to "industrial establishments." It does not show that this undefined category was broadly inclusive of Turkish enterprises, that enterprises within that category broadly obtained certificates, or that those companies that obtained certificates broadly conducted foreign business transactions. Accordingly, Kaptan has not shown that the BITT exemption program was widely available. Rather, Commerce reasonably concluded that the program was expressly limited to those enterprises or industries that both conducted foreign business transactions and satisfied one of the additional conditions established by law.

**3. Do the Government and Defendant-Intervenors agree with Kaptan that the legislative history set forth in the Statement of Administrative Action, H.R. Rep. No. 103-316 (1994), *reprinted in* 1994 U.S.C.C.A.N. 1440 ("SAA") constitutes an "authoritative expression," 19 U.S.C. § 3512(d), for present purposes?  *See* Pl.'s Br. at 13 n.2.**

Yes, the Government agrees that the legislative history set forth in the Statement of Administrative Action, H.R. Rep. No. 103-316 (1994), reprinted in 1994 U.S.C.C.A.N. 1440 (SAA) constitutes an "authoritative expression," 19 U.S.C. § 3512(d), for present purposes.

**a. If so, what is the court to make of the statement in the SAA that "where a foreign government expressly limits access to a subsidy to a sufficiently small number of enterprises, industries or groups thereof, further inquiry into the actual use of the subsidy is unnecessary"? SAA, 1994 U.S.C.C.A.N. at 4242. Does this statement not indicate that considerations of actual use are irrelevant to the specificity-as-a-matter-of-law inquiry?**

Yes, Commerce agrees that an analysis of actual use of a program is irrelevant to a *de jure* analysis, consistent with the legislative history set forth in the SAA.

4.    Under 19 U.S.C. 1516a(b)(1)(B), the court is to hold Commerce's specificity-as-a-matter-of-law finding unlawful if it is found to be "unsupported by substantial evidence on the record."

    a.    Under this standard, where in the record did Commerce support its conclusion that "[t]he cross-section of companies who meet one or more of the five conditions established by the law, and that engage in foreign exchange transactions," Gov't Br. at 9, constitutes a discrete "enterprise or industry"? 19 U.S.C. § 1677(5A)(D)(i). Put otherwise, on what evidentiary basis can the court infer that this "cross-section" represents "a sufficiently small number of enterprises, industries or groups thereof"? SAA, 1994 U.S.C.C.A.N. at 4242.

In its initial questionnaire response, the GOT listed the five types of transactions and sales that are exempt from the BITT tax. *See, e.g.*, GOT Initial Questionnaire Response at 77 (P.R. 49). The record therefore shows that the GOT limits this benefit to companies engaging in specific types of activities, rather than making it broadly available to all companies in Türkiye. The fact that the GOT expressly limits eligibility to five types of transactions, which serve as eligibility criteria for the exemption, is the evidence that supports Commerce's finding that the law expressly limits access to the subsidy. For a *de jure* specificity analysis, the question is whether the law itself expressly limits the program; as the Court noted in its prior questions, actual usage of the program is not relevant. It is therefore the language of the law that is the subject of the Court's analysis in determining whether Commerce's underlying decision is supported by substantial evidence. Here, in instituting the BITT exemption, instead of exempting all enterprises or industries from the tax, the GOT expressly limited eligibility for the exemption to only those enterprises or industries that participate in the five types of foreign exchange transactions or sales. Thus, the language of the law limits eligibility to a "sufficiently small number of enterprises, industries, or groups thereof" to satisfy 19 U.S.C. § 1677(5A)(D)(i). SAA at 930.

6. **Putting aside Kaptan's assertion of unlawfulness, does the Government agree that Commerce has adopted a "rule excluding from consideration in CVD LTAR analysis any and all reports prepared by independent third parties as the request of an interested party"?  Pl.'s Br. at 33.**

No, Commerce does not agree that it has adopted a rule or established a practice excluding "any and all reports prepared by independent third parties at the request of an interested party."  Instead, Commerce has a preference, where applicable, for using an independent report not prepared as part of a proceeding over using a report that was conducted at the request of an interested party for the purposes of that proceeding.  Commerce has explained that this preference is justified because a report prepared at the request of an interested party "carries only limited weight given its potential for bias, with data and conclusions that may be tailored to generate a desired result."  *Certain Softwood Lumber Products from Canada:  Final Affirmative Countervailing Duty Determination, and Final Negative Determination of Critical Circumstances*, 82 Fed. Reg. 51,814 (Dep't of Commerce Nov. 8, 2017), and accompanying IDM at Comment 16.  But this preference is only one factor in the analysis; Commerce determines the weight of a particular report, including a report prepared by independent third parties at the request of an interested party, on a case-by-case basis in view of all available evidence on the record.

7. **What authorities best support your overall argument?**

While the questions for oral argument do not address the issue, as explained in the Government's opening brief, Kaptan failed to exhaust administrative remedies regarding the BITT exemption program as they relate to 19 U.S.C. § 1677(5A)(D)(ii), which constitute the majority of Kaptan's arguments before this Court concerning the BITT exemption program.  As a result, the best authorities for rejecting Kaptan's arguments are the Federal Circuit and Court of International Trade decisions addressing exhaustion of administrative remedies, in particular the

following cases: *Boomerang Tube LLC v. United States*, 856 F.3d 908, 910 (Fed. Cir. 2017); *Corus Staal BV v. United States*, 502 F.3d 1370, 1379 (Fed. Cir. 2007); *Dillinger France S.A. v. United States*, 350 F. Supp. 3d 1349, 1371 (Ct. Int'l Trade 2018); *Essar Steel, Ltd. v. United States*, 753 F.3d 1368, 1374 (Fed. Cir. 2014), *aff'd in part, vacated in part on other grounds*, 981 F.3d 1318 (Fed. Cir. 2020); *Rhone Poulenc, Inc. v. United States*, 899 F.2d 1185, 1191 (Fed. Cir. 1990); *Ad Hoc Shrimp Trade Action Comm. v. United States*, 33 C.I.T. 533, 545–46 (2009), *aff'd in part*, 596 F.3d 1365 (Fed. Cir. 2010); *Paul Muller Industrie GmbH & Co. v. United States*, 31 C.I.T. 1084, 1087 (2007), *aff'd*, 283 F. App'x 789 (Fed. Cir. 2008).

**8.    Are there any recent or pending Federal Circuit or CIT cases that may affect the court's analysis?**

We are unaware of any other recent or pending Federal Circuit or Court of International Trade cases that may affect the Court's analysis.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. MCCARTHY
Director

/s/ L. Misha Preheim
L. MISHA PREHEIM
Assistant Director

/s/ Kelly Geddes

| | |
|---|---|
| W. MITCH PURDY | KELLY GEDDES |
| Senior Attorney | U.S. Department of Justice |
| Office of the Chief Counsel | Commercial Litigation Branch |
| for Trade Enforcement & Compliance | P.O. Box 480, Ben Franklin Station |
| U.S. Department of Commerce | Washington, DC 20044 |
| | (202) 307-2867 |
| | Fax: (202) 305-2062 |
| | Email: kelly.geddes2@usdoj.gov |
| May 29, 2024 | Attorneys for Defendant |

**CERTIFICATE OF COMPLIANCE**

Defendant's counsel certifies that this filing complies with the Court's instructions, in its May 8, 2024 letter (ECF No. 43), that the parties' answers not exceed 2,500 words. According to the word count calculated by the word processing system with which the brief was prepared, the brief contains a total of 2,058 words, not including the Court's questions, and not including the portions excluded pursuant to Rule 2(B)(b) of this Court's Chambers Procedures.