## UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE THE HONORABLE GARY S. KATZMANN, JUDGE

| | |
|---|---|
| KAPTAN DEMIR ÇELIK ENDÜSTRISI VE TICARET A.Ş., <br><br>    Plaintiff, <br> and <br>ICDAS CELIK ENERJI TERSANE VE ULASIM SANAYI, A.Ş., <br><br>    Plaintiff-Intervenor, <br> v. <br>UNITED STATES, <br><br>    Defendant, <br> and <br>REBAR TRADE ACTION COALITION, <br><br>    Defendant-Intervenor. | **Court No. 23-cv-00131** |

## POST-ARGUMENT SUBMISSION OF PLAINTIFF

## KAPTAN DEMIR ÇELIK END. VE TIC. A.Ş.

 

David L. Simon, Esq.
LAW OFFICES OF DAVID L. SIMON, PLLC
1025 Connecticut Avenue, NW, Suite 1000
Washington, DC 20036 USA
Tel. (202)481-9000
Fax (202)481-9010
e-mail: DLSimon@DLSimon.com

Counsel to Kaptan Demir Çelik Endüstrisi
ve Ticaret A.Ş.

June 20, 2024

This is the post-argument submission of Plaintiff Kaptan.

I.  **BITT EXEMPTION**

Turkey imposes a tax on banking and insurance transactions. Gov't of Turkey questionnaire response, Public Jt.App. ECF#37 at 77.  The rate is 0.1% on foreign exchange ("FX") sales, except that certain FX sales are exempt altogether.  *Id*. Among the tax-exempt FX sales are FX sales "to enterprises with industry registry certificates." *Id*.[1]

Turkey's Industrial Registry ("IR") Law, ECF#37 at 93, requires the following entities to obtain an IR certificate, *id*.:

> {P}laces that produce or obtain a material continuously and in series by changing the characteristics, shape, precision or composition of a substance or by processing these substances with the help of machinery, equipment, looms, tools or other means and forces or only by manual labor and the places where the mines are extracted and processed, ...

It is *mandatory* for such companies to obtain an IR certificate; they cannot obtain a business license or undertake operations without it.  *Id*.

Commerce found this program *de jure* specific under 19 U.S.C. § 1677(5A)(D)(i). ID Memo, ECF#37 at 304.  This subparagraph provides:

> Where the authority providing the subsidy, or the legislation pursuant to which the authority operates, expressly limits access to the subsidy to an enterprise or industry, the subsidy is specific as a matter of law.

This provision is unambiguous:

> Under the plain meaning of enterprise, to be *de jure* specific, a subsidy must be limited to a specific business organization or a

---

[1] Also exempt are FX sales to "exporters who are members of Exporters Unions." *Id.* ¶5. Kaptan holds an IR Certificate and is also a member of an exporters union. Kaptan QR at 52, ECF#37 at 39.

>limited group of businesses. … See 19 U.S.C. §1677(5A)(D)(i).
>There is <u>no ambiguity</u> in this provision.

*Risen Energy Co. v. United States*, 658 F. Supp. 3d 1364 (Ct. Int'l Trade 2023) (emphasis added).

The defendants make three arguments regarding *de jure* specificity; see Defendant's Response to Questions, ECF#48 at 4.

The government begins by misrepresenting Kaptan's argument, claiming that "Kaptan's primary argument … was that an industry registry certificate … *could be obtained* by any industrial establishment." *Id*. at 3 (emphasis added).  In fact, an IR certificate *must be* obtained by any industrial establishment; this is mandatory.  ECF#37 at 93, *supra*.

Then the government asserts that "there is no information on the record … defining what an 'industrial establishment' constitutes." ECF#48 at 4. Again, the government errs.  The text of the IR law clearly defines the entities required to obtain a certificate.  ECF#37 at 93, *supra*.

Finally, the government asserts that the program is *de jure* specific because "only those {registered industrial establishments} that *also* engage in foreign exchange transactions would *qualify* for the exemption." ECF#48 at 4 (emphasis added).  This is not so; all entities with an IR certificate *qualify* for the exemption.  If they do not have FX transactions, they nevertheless *qualify* for the exemption if they wish to take advantage of it.  Similarly, while all drivers of automobiles *must* have a license, the fact that some licensed persons choose not to drive does not make then *ineligible* to drive; they are still *qualified* to drive, they just choose not to.

Thus, the Turkish law and its operating legislation (the IR law) contains no express limitation on who may obtain the benefit. By the plain meaning of §1677(5A)(D)(i), the program is not *de jure* specific.

This is clearly distinguishable from *Circular Welded Carbon-Quality Steel Pipe From*

*Oman*, 77 Fed. Reg. 64,473 (Dep't Commerce Oct. 22, 2012) (final affirmative CVD determination), ID Memo at 5-6, on which defendant-intervenors rely, ECF#31at 11.  There, the legislation *expressly excluded* companies engaged in mining and resource extraction.  There is no such exclusion here.

Kaptan asks the Court to remand with an instruction that Commerce find the BITT exemption non-countervailable unless Commerce identifies specific language in the Turkish statute that expressly limits the exemption to certain enterprises or industries.

**II.   LAND LTAR PROGRAM**

The core issue is the lawfulness of Commerce's finding that the Cushman and Wakefield report is "not a usable benchmark" (ECF#37 Tab 17, at 9). In the ID Memo, Commerce only cites a single reason why the C&W report is "unreliable" and therefore "unusable" (*id*.), namely, the fact that it was commissioned for this proceeding. *Id*. at 10.

At oral argument, government counsel conceded that a report prepared for litigation is not automatically excluded, notwithstanding Commerce's language in the ID Memo to the contrary.  Taking the government at its word, Kaptan asks for a remand instructing Commerce to make a fact-based judgment as to the reliability of the C&W report based on the methodology described in the report and including an evaluation of the technical and professional standards according to which the report was prepared; *see*, Confid. Jt. App. Tab 7 at Exh. 3.

Kaptan simply asks that Commerce follow its own precedent, *Softwood Lumber Products from Canada,* 82 Fed. Reg. 51,814 (Dep't Commerce Nov. 8, 2017), IDM at 59 (final affirmative CVD determ.) (relying on *Sandt Tech., Ltd. v. Resco Metal & Plastics Corp.,* 264 F.3d 1344, 1350-51 (Fed. Cir. 2001)), stating (emphasis added):

> where parties have presented a self-commissioned study conducted specifically in anticipation of an investigation for the Department's consideration, the Department must *carefully examine* the study to ensure that it is *based on sound methodologies* that *guard against any study bias* {and} is free of data and conclusions that were tailored to generate a desired result.

As for the proprietary status of the C&W report, Commerce has stated a *preference* for public information, but this is not exclusionary; it is simply a factor. If Commerce finds, on remand, that the C&W report is reliable, then the C&W benchmarks must be weighed against petitioner's benchmarks on their respective merits. As government counsel conceded at oral argument, it is not "impossible" for Commerce to rely on a BPI benchmark report.

The government appears still to argue that the C&W report may be colored by the inclusion of government leases in its analysis. Kaptan has explained that this is false, and that public leases were transparently segregated from private leases. Kaptan asks the Court to remand on this finding, directing the agency to provide specific record citations for any such cross-contamination of public and private leases.

Defendant-intervenor continues to rely on the analogy of a three-legged stool, but this is inappropriate. The *sole* reason Commerce found the C&W report unreliable was that it was prepared for litigation purposes. Commerce reached this conclusion without the analysis required by *Sandt* and *Softwood Lumber, supra*.

Here, in fact, we have two reports: One commissioned from C&W and prepared according to professional standards that are of record, and one that petitioners found on the Internet as posted by a real estate firm in Turkey. Why the latter would be *ipso facto* more reliable than the former is seriously questionable; we all know better than to believe everything we find on the Internet.

Kaptan asks that the Court remand with an instruction that Commerce undertake the

*Softwood Lumber* analysis and specifically determine whether the C&W report shows any evidence of study bias and whether it is based on sound methodologies. If there is no evidence of study bias or unsound methodologies, then Commerce must determine which benchmarks are more comparable to the Sürmene land in question, those in the C&W report or those in the Colliers report.

                                                              Respectfully submitted,

                                                              */s/ David L. Simon*

                                                              David L. Simon
                                                              Law Offices of David L. Simon, PLLC
                                                              1025 Connecticut Ave, NW, Ste. 1000
                                                              Washington, DC 20036
                                                              Tel: +1(202)481-9000
                                                              Email: DLSimon@DLSimon.com
June 20, 2024                                           *Counsel to Kaptan*

## CERTIFICATION

I hereby certify that the foregoing contains 1,230 words, exclusive of the cover page, signature block, and this certification.

*/s/ David L. Simon*
