## UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE THE HONORABLE GARY S. KATZMANN, JUDGE

| | |
|---|---|
| KAPTAN DEMIR ÇELIK ENDÜSTRISI VE TICARET A.Ş., <br><br>            Plaintiff, <br>     and <br><br> ICDAS ÇELIK ENERJI TERSANE VE ULASIM SANAYI, A.Ş., <br><br>            Plaintiff-Intervenor, <br><br>    v. <br><br> UNITED STATES, <br><br>            Defendant, <br>     and <br><br> REBAR TRADE ACTION COALITION, <br><br>            Defendant-Intervenor. | **Court No. 23-cv-00131** |

## <u>KAPTAN'S REPLY COMMENTS ON COMMERCE'S FINAL REDETERMINATION ON REMAND</u>

David L. Simon, Esq.

LAW OFFICES OF DAVID L. SIMON, PLLC
1025 Connecticut Ave., N.W., Ste. 1000
Washington, D.C. 20036
Tel.:  (202) 481-9000
Email:  DLSimon@DLSimon.com

Date:  April 5, 2025

*Counsel to Kaptan Demir Çelik Endüstrisi ve Ticaret A.Ş.*

**Table of Contents**

INTRODUCTION ............................................................................................................1

ARGUMENT ................................................................................................................1

    1.  The Government Of Turkey Properly Explained The Criteria By Which It
        Categorizes Entities As "Industrial Establishments" .........................................1

    2.  The Response Of The Government Of Turkey To Commerce's
        Supplemental Questionnaire Was Adequate and Complete...............................2

CONCLUSIONS ...........................................................................................................7

## TABLE OF AUTHORITIES

**Cases**

*Kaptan Demir Celik Endustrisi ve Ticaret A.S. v. United States*, 736 F. Supp. 3d 1318, Slip Op. 24-116 (Ct. Int'l Trade 2024) ...............................................................2

*Nucor Corp. v. United States*, 32 C.I.T. 1380, 594 F. Supp. 2d 1320  (2008) ...............................3

*Timkin U.S. Corp. v. United States*, 421 F.3d 1350 (Fed. Cir. 2005)...............................................3

## INTRODUCTION

Plaintiff Kaptan Demir Çelik Endüstrisi ve Ticaret A.Ş. ("Kaptan")  files these reply comments with respect to the comments of Defendant-Intervenor Rebar Trade Action Committee ("RTAC") ("RTAC Comments") concerning the Commerce Department's Final Results Of Redetermination Pursuant To Court Remand, ECF-53 (the "Redetermination").  For the reasons set forth below, Kaptan urges the Court to find that RTAC's arguments are unsupported by the record and by the law, and requests that this Court sustain Commerce's redetermination as to the non-countervailability of the exemption from the Banking Insurance and Transaction Tax ("BITT").

## ARGUMENT

In the Redetermination, Commerce found that "the BITT program does not constitute a countervailable subsidy." Redetermination at 12.  RTAC advances several arguments against Commerce's determination, each of which is erroneous.

1. **The Government Of Turkey Properly Explained The Criteria By Which It Categorizes Entities As "Industrial Establishments"**

RTAC claims that the failure of the Government of Türkiye ("GOT") to explain the definition of "industrial establishments" requires Commerce to apply facts available to find the BITT exemption to be *de jure* specific, stating:

> On remand, RTAC argued that because of the GOT's failure to specify the parameters of how it defines an "industrial establishment" or identify or explain the criteria under which it granted or denied IRCs to applicants, Commerce should rely on the facts available to determine that BITT exemptions are de jure specific.

RTAC comments at 8.

RTAC is mistaken.  This issue has been litigated and determined in *Kaptan Demir Celik Endustrisi ve Ticaret A.S. v. United States*, 736 F. Supp. 3d 1318, Slip Op. 24-116 (Ct. Int'l Trade 2024) where the Court explains (at 13-14):

> Turkish law further requires a broad range of Turkish companies to obtain an industrial registry certificate. The law subjects to this requirement "places that produce or obtain a material continuously and in series by changing the characteristics, shape, precision or composition of a substance or by processing these substances with the help of machinery, equipment, looms, tools or other means and forces or only by manual labor . . ." Turkish Law 6948 at Art. 1. It also enumerates "[e]stablishments that carry out continuous and serial repairs and plants that produce electricity or other energy, large construction sites such as shipbuilding and enterprises that produce information technology and software . . ." as entities that must obtain a certificate. *Id.* The sole exceptions the provision explicitly carves out are "[h]andicrafts and domestic crafts and small repair shops." *Id.*

It is much too late for RTAC to relitigate this issue; the definition of "industrial establishments" is clear, and this Court has so held.

2. **The Response Of The Government Of Türkiye To Commerce's Supplemental Questionnaire Was Adequate and Complete**

In responding to a supplemental questionnaire, the Government of Türkiye ("GOT") explained that the taxpayers with respect to the Bank and Insurance Transaction Tax ("BITT") are the banks that effect the transactions; the customers of the banks are *not* the taxpayers.  GOT supplemental questionnaire response ("SQR"), Nov. 15, 2024, RPR 6, at 1, stating,

> Banks, bankers and insurance companies are explicitly determined as the taxpayers with respect to BITT by Article 30 of the Expenditure Tax Law No. 6802.

The GOT is simply stating the plain language of the Turkish statute:

Article 30 – (Amended: 4/6/2008-5766/25 art.)

Taxes on banking and insurance transactions are paid by banks, bankers and insurance companies. In insurance transactions carried out by insurance intermediaries, the taxpayer is the insurance companies.

GOT SQR Exh. 1 at 2.

Commerce properly acknowledged this as "new record information" (Draft Redetermination on Remand, RPR 15 at 8-9, summarizing (*id*. at 10): "{T}he taxpayers of BITT are individual financial institutions and these institutions also receive any BITT exemptions."

In its comments on the Draft Redetermination, Kaptan argued that the BITT exemption is not countervailable because it does not confer a benefit on the respondents. RPR 16 at 3-5. Kaptan argued that since it is the banks that are the beneficiaries of the exemption, and since the banks only pass through the exemption to their customers (*i.e.*, to respondents) as a matter of commercial practice, if at all, the Turkish law therefore does not, and cannot, confer a benefit to the respondents.

Commerce did not respond to this argument in the Final Determination.  The agency has an obligation to articulate its analysis of issues raised by a party that are material to the determination:

> The {agency} need not "make an explicit response to every argument made by a party, but [current law] instead requires that issues material to the agency's determination be discussed so that the 'path of the agency may reasonably be discerned' by a reviewing court." *Timkin {sic, Timken} U.S. Corp. v. United States*, 421 F.3d 1350, 1354 (Fed. Cir. 2005) (quoting Uruguay Round Agreements Act ("URAA"), Statement of Administration Action ("SAA"), accompanying H.R. Rep. No. 103-826, at 892….).

*Nucor Corp. v. United States*, 32 C.I.T. 1380, 594 F. Supp. 2d 1320, 1332 (2008).

As we explain below, Kaptan urges the Court to approve Commerce's Redetermination. However, if the Court decides to remand for further proceedings, Kaptan asks the Court to direct Commerce to reconsider whether the BITT exemption is countervailable at all, insofar as the respondents do not receive any benefit from the government from the exemption provided to the banks.

The fact that the taxpayers for the BITT are the banks rather than the customers of the banks colored the GOT's ability to respond to Commerce's supplemental questions concerning the distribution of benefits.  In its SQR, RPR 1 at 4, Commerce asked the GOT to provide, *inter alia*, the following information:

> a.  The amount of assistance approved for each mandatory respondent company, including all cross-owned companies and trading companies that sell the subject merchandise to the United States.

In response, the GOT explained that the BITT taxpayers are the banks, not the banks' customers, and answered (RPR 5  at 6):

> {T}he GOT has no information of the amount of alleged assistance approved for mandatory respondents under this alleged program.

The GOT explained that, since the BITT taxpayers are the banks, any decision made by the banks to pass through the value of the exemption to the banks' customers is a commercial matter, not a feature of the BITT:

> {I}f any, reflection of this tax can be made upon through a contract signed between parties as a result of private law, in other words it is the preference of the banks to reflect this tax to their customers or not depending on the economic relationship between them.

*Id*.

The fact that the taxpayer under the BITT is the banks rather than the banks' customers colored most of the GOT's response to Commerce's SQR.  To give another example, Commerce asked the GOT to provide (RPR 1 at 4):

> h.  The total amount of assistance approved for the industry in which the mandatory respondent companies operate, as well as the totals for every other industry in which companies were approved for assistance under this program. In identifying the industries, please use whatever resource or classification scheme your government normally relies upon to define industries and to classify companies within an industry. Please provide the relevant classification guidelines, and please ensure the list provided reflects consistent levels of industrial classification. Please clearly identify the industry in which the companies under review are classified.

Commerce's question makes sense if the recipients of the benefit are the respondents and other companies in the position of the respondents – *i.e.*, the customers of the banks.  However, given the undisputed fact that it is the banks, rather than their customers, that are the taxpayers of the BITT and therefore the recipients of any BITT exemptions, the question is simply unanswerable.  Actually, no "amount of assistance {was} approved for the industry in which the mandatory respondent companies operate," because the "assistance" did not go to the respondents but, rather, to the banks.

In its comments to this Court, at 11, RTAC claims that the GOT *refused* to answer Commerce's supplemental questions:

> Commerce here concluded that adverse inferences were not merited because there was "no reasonable basis to conclude that the GOT withheld information that has been requested by Commerce." Remand Results at 11. But this conclusion makes no sense given the GOT's refusal to answer Commerce's questions regarding the total number of companies and/or taxpayers in Turkey, or to provide a listing of the industries that operate in Turkey, all of which were necessary to determine whether the

> BITT exemptions were broadly used, or whether its use was
> limited to a narrower subset of firms or industries.

In fact, since the BITT taxpayers are the banks, rather than the banks' customers, the lack of sector-specific usage information in the GOT's SQR is the result of the structure of the benefit, itself; it is not that the GOT "refused" to provide the information, but, rather, that the questions were themselves not answerable, because the beneficiaries of the exemption were not the respondents but, rather, the banks.

RTAC further argues that the GOT failed to use its best efforts to obtain the information requested in the SQR:

> Regardless of whether the GOT has the authority to require or
> coerce banks to provide this information, it is clear that the GOT
> did not cooperate to the best of its ability as it refused without
> explanation to provide responses to some of Commerce's
> specificity questions while making no attempt to collect
> information with respect to other questions.

RTAC comments at 9.

RTAC's criticism is ill-founded.  Again, the GOT did not "refuse" to provide responses, and it provided a fulsome explanation of why the questions were not applicable – namely, that the BITT taxpayers were the banks and that, consequently, that the Government did not provide any benefits at all to the respondent producers and exporters.

RTAC further argues (RTAC comments at 4):

> Turkish law explicitly limits exemptions from the BITT to
> companies that satisfy at least one of certain identified conditions.
> See Remand Results at 3. These statutory conditions confirm that
> the exemption is limited to the firms that conduct foreign
> operations requiring legitimate, non- speculative foreign currency
> transactions. By extension, no companies other than those
> conducting a specific subset of foreign exchange transactions are
> allowed to receive benefits under the BITT program. These explicit

> limitations on qualifying for an exemption from payment of the
> BITT make the program specific as a matter of law.

RTAC's argument is inconsistent with the facts.  In the first place, the BITT exemptions are not to "companies that satisfy at least one of certain identified conditions."  Rather, the exemption is to banks, and only in regard to foreign exchange transactions in which the banks' customers either have an Industrial Registry Certificate or are a member of an exporters' union. The banks receive the exemption unconditionally when they conduct forex transactions with IRC holders or exporters' union members. There is no requirement that the banks' customers demonstrate that they are engaged in what RTAC calls "legitimate, non-speculative foreign currency transactions"; if the bank's customer holds an IRC, then the forex transaction is exempt from the BITT.  There is no requirement anywhere in the Turkish statute or elsewhere in the record that the banks are intended to "police" their customers' forex purchases or sales – for example, to differentiate between normal business purchases of forex for currency hedging purposes and what RTAC would call non-legitimate, speculative forex transactions.  Thus, RTAC's effort to create a separate subset of companies that engage in illegitimate forex transactions is unjustified and without support in the record.

## CONCLUSIONS

RTAC's criticisms of Commerce's Redetermination are legally and factually inadequate; they attempt to relitigate issues previously decided by this Court, and they attack the response of the GOT on spurious grounds unsupported by the record.

Kaptan therefore urges this Court to sustain Commerce's Redetermination.

Respectfully submitted,

/s/ *David L. Simon*

David L. Simon
LAW OFFICES OF DAVID L. SIMON, PLLC
1025 Connecticut Ave., N.W., Ste. 1000
Washington, D.C. 20036
Email: dlsimon@dlsimon.com
*Counsel to Kaptan Demir Çelik Endüstrisi
ve Ticaret A.Ş.*

April 5, 2025

8

## **CERTIFICATE OF COMPLIANCE**

This brief complies with the guidelines set forth in the Standard Chambers Procedures. This brief contains **1,962** words on numbered pages (that is, excluding only the Cover Page, the Table of Contents, and the Table of Authorities).

/s/ *David L. Simon*
David L. Simon

Date:  April 5, 2025

*Counsel to Kaptan Demir Çelik Endüstrisi ve Ticaret A.Ş.*

1