**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE: THE HONORABLE GARY S. KATZMANN, JUDGE

|  |  |  |
|---|---|---|
| KAPTAN DEMIR CELIK ENDUSTRISI VE TICARET A.S., | ) | |
| Plaintiff, | ) | |
| and | ) | |
| ICDAS CELIK ENERJI TERSANE VE ULASIM SANAYI, A.S., | ) | |
| Plaintiff-Intervenor, | ) | |
| v. | ) | Court No. 23-00131 |
| UNITED STATES, | ) | |
| Defendant, | ) | |
| and | ) | |
| REBAR TRADE ACTION COALITION, | ) | |
| Defendant-Intervenor. | ) | |

## <u>ORDER</u>

Upon consideration of plaintiff and defendant-intervenor's comments regarding the Department of Commerce's (Commerce) Final Results of Remand Redetermination Pursuant to Court Remand, dated January 21, 2025, ECF No. 53 (Remand Redetermination), defendant's response thereto, and all other pertinent papers, it is hereby

ORDERED that Commerce's Remand Redetermination is sustained in all respects; and it is further

ORDERED that judgment will enter in favor of the United States.

Dated: _____                    _____
       New York, New York                                                    JUDGE

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE: THE HONORABLE GARY S. KATZMANN, JUDGE

|  |  |  |
|---|---|---|
| KAPTAN DEMIR CELIK ENDUSTRISI VE TICARET A.S., | ) | |
| Plaintiff, | ) | |
| and | ) | |
| ICDAS CELIK ENERJI TERSANE VE ULASIM SANAYI, A.S., | ) | |
| Plaintiff-Intervenor, | ) | |
| v. | ) | Court No. 23-00131 |
| UNITED STATES, | ) | |
| Defendant, | ) | |
| and | ) | |
| REBAR TRADE ACTION COALITION, | ) | |
| Defendant-Intervenor. | ) | |

## DEFENDANT'S RESPONSE TO COMMENTS ON REMAND RESULTS

YAAKOV M. ROTH
Acting Assistant Attorney General

PATRICIA M. McCARTHY
Director

s/ Franklin E. White, Jr.
FRANKLIN E. WHITE, JR.
Assistant Director

OF COUNSEL:
W. MITCH PURDY
Senior Attorney
U.S. Department of Commerce
Office of the Chief Counsel for Trade
    Enforcement and Compliance
1401 Constitution Avenue, NW
Washington, DC  20230
Tel: (240) 482-5214
Email: william.purdy@trade.gov

s/Collin T. Mathias
COLLIN T. MATHIAS
Trial Attorney
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
PO Box 480
Ben Franklin Station
Washington, DC  20044
Tel: (202) 307-0315
Email: collin.t.mathias@usdoj.gov

## TABLE OF CONTENTS

**PAGE**

DEFENDANT'S RESPONSE TO COMMENTS ON REMAND RESULTS ............................ 1

BACKGROUND .................................................................................................... 2

SUMMARY OF ARGUMENT................................................................................. 3

ARGUMENT ......................................................................................................... 4

    I.     Standard Of Review ....................................................................... 4

    II.    Commerce's Determination That Exemptions From Bank and Insurance Transactions Tax On Foreign Transactions Are Not *De Jure* or *De Facto* Specific Is Supported By Substantial Evidence And Is In Accordance With Law ............. 4

        A.    Commerce's Determination That The BITT Program Is Not *De Jure* Specific Is Supported By Substantial Evidence And Is In Accordance With Law ............................................................................... 5

        B.    Commerce's Determination That The BITT Program Is Not *De Facto* Specific Is Supported By Substantial Evidence And Is In Accordance With Law ............................................................................... 8

    III.   Commerce's Benchmark Selection For Valuing Nur's Land Is Supported By Substantial Evidence And In Accordance With Law ...........................................12

        A.    Commerce Considered All Record Evidence And Did Not "Reject" Any Source Outright .....................................................................................13

        B.    Commerce's Determination Regarding The Reliability Of The Benchmark Submissions Was Reasonable ...............................................................14

        C.    Commerce's Determination That The Colliers Report Data Are More Comparable To Nur's Land Is Supported By Substantial Evidence .........19

    CONCLUSION ................................................................................................27

## TABLE OF AUTHORITIES

**PAGE(S)**

**Cases**

*Dongtai Peak Honey Industry Co., Ltd. v. United States,*
  777 F.3d 1343.................................................................................................10

*Emerson Power Transmission Corp. v. United States,*
  903 F. Supp. 48 (Ct. Int'l Trade 1995) ...................................................11

*Fengchi Import & Export Co., Ltd. of Haicheng City v. United States,*
  98 F. Supp. 3d 1309 (Ct. Int'l Trade 2015) ..........................................23

*GPX International Tire Corp. v. United States,*
  942 F. Supp. 2d 1343 (Ct. Int'l Trade 2013).........................................11

*Local 814, Int'l Bhd. of Teamsters v. NLRB,*
  546 F.2d 989 (D.C. Cir. 1976) ...............................................................23

*MacLean-Fogg Co. v. United States,*
  100 F. Supp. 3d 1349 (Ct. Int'l Trade 2015)...........................................4

*Mitsubishi Heavy Indus. v. United States,*
  97 F. Supp. 2d 1203 (Ct. Int'l Trade 2000).............................................23

*Mosaic Company v. United States,*
  589 F. Supp. 3d 1298 (Ct. Int'l Trade 2022).........................................16

*Özdemir Boru San. ve Tic. Ltd. Sti. v. United States,*
  273 F. Supp. 3d 1225 (Ct. Int'l Trade 2017).........................................24

*Özdemir Boru San. ve Tic. Ltd. Sti. v. United States,*
  282 F. Supp. 3d 1352 (Ct. Int'l Trade 2018).........................................24

*Qingdao Sea-Line Trading Co. v. United States,*
  766 F.3d 1378 (Fed. Cir. 2014)......................................................11, 23

*QVD Food Co. v. United States,*
  658 F.3d 1318 (Fed. Cir. 2011)......................................................11, 23

*Risen Energy Co., Ltd., et al. v. United States,*
  658 F. Supp. 3d 1364 (Ct. Int'l Trade 2023).........................................20

*Sandt Tech. v. Resco Metal & Plastics,*
  *Cor.*, 264 F.3d 1344 (Fed. Cir. 2001)....................................................14

*SKF USA Inc. v. United States,*
  675 F. Supp. 2d 1264 (Ct. Int'l Trade 2009).........................................12

*Kaptan Demir Çelik Endüstrisi ve Ticaret A.Ş. v. United States*,
   736 F. Supp. 3d 1318 (Ct. Int'l Trade 2024)...........................................................................1

*Vt. Yankee Nuclear Power Corp. v. Natural Res. Def. Council, Inc.*,
   435 U.S. 519 (1978) .................................................................................................................10

*Wuhu Fenglian Co., Ltd. v. United States*,
   836 F. Supp. 2d 1398 (Ct. Int'l Trade 2012)..........................................................................10

**Statutes**
19 U.S.C. § 1677(5A)(D)(i)......................................................................................................5, 9

19 U.S.C. § 1677e ......................................................................................................... 7, 9, 11, 12

**Regulations**
19 C.F.R. § 351.502(c).................................................................................................................10

**Administrative Materials**
*Aluminum Extrusions from the People's Republic of China: Final Affirmative Countervailing
   Duty Determination*,
   76 Fed. Reg. 18,521 (Dep't of Commerce April 4, 2021)........................................................2

*Certain New Pneumatic Off-the-Road Tires from India: Preliminary Affirmative Countervailing
   Duty Determination, Preliminary Affirmative Critical Circumstances Determination, in Part,
   and Alignment of Final Determination with Final Antidumping Determination*,
   81 Fed. Reg. 39,903 (Dep't of Commerce June 20, 2016)......................................................2

*Certain Softwood Lumber Products from Canada: Final Affirmative Countervailing Duty
   Determination, and Final Negative Determination of Critical Circumstances*,
   82 Fed. Reg. 51,814 (Dep't of Commerce Nov. 8, 2017) .....................................................14

*Certain Softwood Lumber Products from Canada: Final Results of the Countervailing Duty
   Administrative Review, 2017-2018*,
   85 Fed. Reg. 77,163 (Dep't of Commerce Dec. 1, 2020).....................................................14

*Coated Free Sheet Paper from Indonesia: Final Affirmative Countervailing Duty Determination*,
   72 Fed. Reg. 60,642 (Dep't of Commerce October 25, 2007)...............................................13

*Steel Concrete Reinforcing Bar from the Republic of Turkey*,
   88 Fed. Reg. 34,129 (Dep't of Commerce May 26, 2023)......................................................2

*Steel Concrete Reinforcing Bar from the Republic of Turkey: Final Results of Countervailing
   Duty Administrative Review and Rescission, in Part; 2020*,
   88 Fed. Reg. 34129 (Dep't of Commerce May 26, 2023)....................................................13

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE: THE HONORABLE GARY S. KATZMANN, JUDGE

| | |
|---|---|
| KAPTAN DEMIR CELIK ENDUSTRISI VE TICARET A.S., | ) ) ) |
| Plaintiff, | ) ) |
| and | ) ) |
| ICDAS CELIK ENERJI TERSANE VE ULASIM SANAYI, A.S., | ) ) ) |
| Plaintiff-Intervenor, | ) ) |
| v. | )    Court No. 23-00131 |
| UNITED STATES, | ) ) |
| Defendant, | ) ) |
| and | ) ) |
| REBAR TRADE ACTION COALITION, | ) ) |
| Defendant-Intervenor. | ) ) |

**<u>DEFENDANT'S RESPONSE TO COMMENTS ON REMAND RESULTS</u>**

Defendant, the United States, respectfully submits this response to the comments filed by plaintiff, Kaptan Demir Çelik Endüstrisi ve Ticaret A.Ş. (Kaptan), ECF No. 58 (Kaptan Br.), and defendant-intervenor, the Rebar Trade Action Coalition (RTAC), ECF No. 59 (RTAC Br.), concerning the U.S. Department of Commerce's (Commerce) remand redetermination filed in accordance with this Court's decision and remand order in *Kaptan Demir Çelik Endüstrisi ve Ticaret A.Ş. v. United States*, 736 F. Supp. 3d 1318 (Ct. Int'l Trade 2024) (Remand Order). *See* Final Results of Remand Redetermination Pursuant to Court Remand, Jan. 21, 2025, ECF No. 53

(Remand Redetermination).[1]  The Court should sustain Commerce's remand redetermination because it complies with the remand order and is supported by substantial evidence and otherwise in accordance with law.

BACKGROUND

This case involves challenges to Commerce's final results in the administrative review of the countervailing duty order on rebar from Turkey, covering the period from January 1, 2020, through December 31, 2020.  *See Steel Concrete Reinforcing Bar from the Republic of Turkey*, 88 Fed. Reg. 34,129 (Dep't of Commerce May 26, 2023) (P.R. 156), and accompanying Issues and Decision Memorandum (IDM) (P.R. 152).  In the final results, Commerce determined that Kaptan received countervailable subsidies (1) from its total exemption from Turkey's Banking Insurance and Transaction Tax (BITT), which Commerce had determined to be *de jure* specific, and (2) from the Turkish government's provision of state-owned land to Nur (Kaptan's affiliate) for less than adequate renumeration, with the amount of the benefit being determined using Colliers International's Real Estate Market Turkey Review (the "Colliers report") as the appropriate benchmark.

On October 21, 2024, the Court remanded the final results of the administrative review as it related to both Commerce's determination of the specificity of BITT program and Commerce's use of the Colliers report as a benchmark to measure the benefit provided by the rent-free lease. In its opinion and order, the Court directed Commerce to (1) reconsider whether BITT program is *de jure* or *de facto* specific; (2) fully address Kaptan's arguments concerning the selection of the Colliers report proffered by RTAC over Kaptan's submission as a benchmark for land; and

---

[1]  Plaintiff-intervenor Icdas Celik Energi Tersane ve Ulasim Sanayi, A.S. also filed comments to the Remand Redetermination.  *See* ECF No. 61.  Icdas does not raise any specific concerns, but only requests that its rate be changed if Kaptan's rate is changed.  *See id.* at 2-3. We do not object to revising Icdas's rate if there are further proceedings.

2

(3) reconsider the rate applied to Icdas should the margin for mandatory respondents change.

In the Remand Redetermination, Commerce (1) found, under respectful protest, that the BITT program was not *de jure* specific, and further determined that the BITT program was not *de facto* specific either, and thus is not countervailable; (2) considered Kaptan's arguments and continued to find the Colliers report appropriate to use as the benchmark; and (3) appropriately revised the rate applied to Icdas.

## SUMMARY OF ARGUMENT

Commerce's determination that the BITT exemptions program is neither *de jure* nor *de facto* specific is supported by substantial evidence and in accordance with law. First, based on the facts on the record and taking into consideration the Court's analysis in the Remand Order, Commerce found, under respectful protest, that the BITT program is not *de jure* specific. Further, Commerce issued questionnaires to the government of Turkey (GOT) requesting additional information, and the GOT provided what information it was able to provide while explaining that other requested information was not available to it, and instead was controlled by non-interested, unaffiliated parties in the form of private financial institutions. Thus, Commerce found there was a gap in the record, and based on facts available, found the program was not *de facto* specific. The Court should reject RTAC's suggestion that Commerce should have applied adverse facts available or otherwise issued additional questionnaires until it found an avenue through which to find the program specific under the statute.

Similarly, Commerce's determination to continue to use the Colliers benchmark in valuing the GOT's provision of rent-free land to Kaptan's subsidiary, Nur, is also supported by substantial evidence and in accordance with law. Commerce reasonably determined that the Colliers benchmark was preferred because it was more contemporaneous with the time period during which Nur received the rent-free land, it was not prepared for the purpose of this

proceeding, and it was based on information gathered by the creator of the benchmark and not unnamed third party sources.

## ARGUMENT

### I.  Standard Of Review

In remand proceedings, the Court will sustain Commerce's countervailing duty determinations if they are "in accordance with the remand order," and are "supported by substantial evidence, and are otherwise in accordance with law." *See MacLean-Fogg Co. v. United States*, 100 F. Supp. 3d 1349, 1355 (Ct. Int'l Trade 2015) (citing 19 U.S.C. § 1516a(b)(1)(B)(i)).

### II.  Commerce's Determination That Exemptions From Bank and Insurance Transactions Tax On Foreign Transactions Are Not *De Jure* or *De Facto* Specific Is Supported By Substantial Evidence And Is In Accordance With Law

In the Remand Order, the Court held that Commerce's determination that the BITT program was *de jure* specific was not supported by substantial evidence because it appeared that the subsidy was broadly available under Turkish law.  Remand Order at 13.  The Court remanded for Commerce to reevaluate whether the BITT program was countervailable, either by further explaining why it is *de jure* specific or performing a *de facto* analysis.  *Id.* at 17.  In light of the Remand Order, Commerce reevaluated the record evidence, performed further investigation, and found that the BITT program is neither *de jure*[2] nor *de facto* specific.  Remand Redetermination at 9.  RTAC asserts that Commerce erred, arguing that Commerce did not adequately support its *de jure* specificity finding, *see* RTAC Br. at 4, and that Commerce should have applied facts available with an adverse inference to find the BITT program *de facto* specific, *see id.* at 7-10.  RTAC is wrong.  As demonstrated below, Commerce's remand determination that the BITT

---

[2]  Commerce complied with the Court's Remand Order regarding *de jure* specificity under respectful protest.  Remand Redetermination at 9.

4

program is not specific accords with the Remand Order and is supported by substantial evidence and in accordance with law.

A. **Commerce's Determination That The BITT Program Is Not *De Jure* Specific Is Supported By Substantial Evidence And Is In Accordance With Law**

A subsidy is *de jure* specific pursuant to 19 U.S.C. § 1677(5A)(D)(i) if "the legislation pursuant to which the authority operates{} expressly limits access to the subsidy to an enterprise or industry" or to "a group of {} enterprises or industries." Furthermore, "where a foreign government expressly limits access to a subsidy to a sufficiently small number of enterprises, industries, or groups thereof, further inquiry into actual use of the subsidy is unnecessary." *Statement of Administrative Action accompanying the Uruguay Round Agreements Act*, H. Doc. 103-316, at 930, *reprinted in* 1994 U.S.C.C.A.N. 4040, 4242 (SAA).

The BITT tax is governed by Article 33 of Law 6802 (the Expenditure Expenses Law), which requires Turkish companies to pay a tax on their sales in foreign currencies for spot transactions. Government of Turkey Initial Questionnaire Response (GOT IQR) at Exhibit 31 (P.R. 49-89; C.R. 51-80, 86-95). The GOT reported that the following transactions and sales are exempted from the tax: (1) foreign exchange sales between banks and authorized institutions or among each other; (2) foreign currency sales that are made to the Ministry of Treasury and Finance; (3) foreign currency sales made to corporate borrowers having foreign currency loan payables; (4) foreign exchange sales to enterprises having an industrial registry certificate; and, (5) foreign exchange sales to exporters which are members of Exporters' Associations. GOT's IQR at 77, Exhibit 31 (P.R. 49-89, C.R. 51-80). A company need only meet one of these five criteria to be eligible for BITT exemptions.

In its Remand Order, the Court observed that the list of eligible companies is "not a narrow list." *See* Remand Order at 13-14. In reviewing Commerce's finding based on the list of

5

factors through which companies can apply for the BITT exemption, the Court found that "virtually every company of a certain size must possess an industrial registry certificate." Remand Order at 14. The Court further found that because every company that complies with this legal requirement is eligible for the BITT Exemption, "legal eligibility for the BITT Exemption appears to be broad and non-enterprise- or industry-specific." *Id.*

On remand, Commerce found that the Court had reviewed Commerce's analysis of all five of the criteria by which companies can qualify for the program by law, and had found a *de jure* finding was not supported by substantial evidence. Remand Redetermination at 25. In addition to this, on remand Commerce discovered a *sixth* criteria to qualify for the BITT exemptions, increasing the pool of potential qualifying entities. *Id.* at 25-26. Thus, Commerce found that the program was not *de jure* specific under respectful protest. *Id.* at 26.

RTAC continues to argue that Commerce should have found the program to be *de jure* specific based in large part on the missing details surrounding what companies qualify for an industrial registry certificate and because "no companies other than those conducting a specific subset of foreign exchange transactions" qualify for the BITT Exemptions. *See* RTAC Br. at 4-6. The Court, however, has already rejected this reasoning as insufficient to establish *de jure* specificity. *Compare* Remand Order at 13-15 *with* RTAC Br. at 4-6. In fact, RTAC's argument consists of the same reasoning Commerce relied on in the underlying Final Results, and RTAC has not presented any new arguments for finding the program to be *de jure* specific that was not already addressed in the Court's Remand Order. Further, as noted, Commerce discovered that a *sixth* criteria was in effect during the POR that qualifies a company for a BITT exemption. That criterion covers "{f}oreign exchange sales to institutions which make at least one of the activities that are deemed as financial institution activities pursuant to Banking Law," which

further broadens the potential scope of qualifying entities. *See* Remand Redetermination at 26 (citing GOT's IQR at Exhibit 31, 15).

RTAC suggests that Commerce could have relied on facts available pursuant to 19 U.S.C. § 1677e to find that the program was *de jure* specific, citing the absence of any definition of "industrial establishments," or the companies that can apply for industrial registry certificates, as the gap in the record that would allow Commerce to rely on facts available. *See* RTAC Br. at 5. But that path does not work. Again, regarding the industrial registry certificates, the Court has already held that "industrial enterprises" cannot be seen as a limitation for specificity purposes because a category of industrial enterprises would be "implausibly far-reaching" and further that it would be "hard to discern what, if anything, they would exclude." *See* Remand Order at 15. The Court explained that such an analysis is more appropriate in a *de facto* specificity finding, stating that whether a limited number of enterprises actually apply and obtain industrial registry certificates is "out of place in a determination of whether a subsidy is specific as a matter of law." *See* Remand Order at 16. The question in a *de jure* analysis is "not whether implementation of that law results in the subsidy's distribution to a limited number of recipients." *Id.* In the Remand Redetermination, Commerce explained that it agreed with the Court's opinion on this point, and thus did not rely on such information in its *de jure* specificity analysis in the Remand Redetermination. Remand Redetermination at 26.

Contrary to RTAC's argument that the industrial registry certificate criteria may limit eligibility sufficient for a *de jure* specificity finding, the record indicates a wide variety of industries possess industrial registry certificates. GOT *De Facto* Response at Ex. 3 (P.R.R. 5-8, C.R.R. 1-4) (Nov. 15, 2024). Thus, Commerce found that it was not appropriate to base a *de jure* finding on facts otherwise available because there was no gap in the record with respect to

Commerce's *de jure* specificity analysis that would ultimately support a finding of *de jure* specificity in light of the Court's findings in the Remand Order.  *See* Remand Redetermination at 26; Remand Order at 15-17.  RTAC's argument that Commerce "has not adequately explained or supported" its determination that the BITT program is not *de jure* specific is inaccurate.

**B.    Commerce's Determination That The BITT Program Is Not *De Facto* Specific Is Supported By Substantial Evidence And Is In Accordance With Law**

Where a program is not found to be *de jure* specific, the program may still be *de facto* specific in accordance with 19 U.S.C. § 1677(5A)(D)(iii).  Pursuant to 19 U.S.C. § 1677(5A)(D)(iii), where there are reasons to believe that a subsidy may be specific as a matter of fact, the subsidy is specific if one or more of the following factors exist:

> (I) The actual recipients of the subsidy, whether considered on an enterprise or industry basis, are limited in number;
> (II) An enterprise or industry is a predominant user of the subsidy;
> (III) An enterprise or industry receives a disproportionately large amount of the subsidy; and
> (IV) The manner in which the authority providing the subsidy has exercised discretion in the decision to grant the subsidy indicates that an enterprise or industry is favored over others.

On remand, Commerce issued a supplemental questionnaire regarding *de facto* specificity to the GOT and received a timely questionnaire response.  *See* GOT *De Facto* Questionnaire (Nov. 1, 2024) (P.R.R. 1); GOT *De Facto* Response (Nov. 15, 2024) (P.R.R. 5-8, C.R. 1-4).  The GOT explained that the taxpayers of BITT are individual financial institutions, and these institutions also receive any BITT exemptions.  *See* GOT's *De Facto* Response at 1-2 and 5. The GOT explained that it did not possess certain information regarding this program (*e.g.,* the total amount of approved assistance, the total number of companies approved for assistance, etc.) because this information is possessed by the individual private financial institutions.  *Id.* at 1-2. The GOT was, however, able to provide figures concerning the total amount of foreign exchange

transactions in Turkey during the period of review and the total amount of taxes collected under BITT.  *Id.* at 2-4.  Although the figures provided by the GOT are proprietary in nature, this information indicated that, during the period of review, exemptions from BITT were widely available.  *Id.* at 5.  However, Commerce did not have information categorizing or providing details on the distribution of BITT exemptions on an enterprise or industry basis or the number of enterprises or industries which actually received the exemptions.  Remand Redetermination at 10-11.  Thus, Commerce found the record was devoid of information (*e.g.*, evidence that enterprises or industries that received the BITT exemptions were limited in number) revealing whether the program is *de facto* specific pursuant to 19 U.S.C. § 1677(5A)(D)(iii)(I).  *Id.* at 11. Accordingly, Commerce found that necessary information is not available on the record, consistent with 19 U.S.C. § 1677e(a)(1).  *Id.*  The gap in the record, however, did not result from the actions of an "interested party or any other person" pursuant to 19 U.S.C. § 1677e(a)(2).  *Id.*

Although information to conduct a full *de facto* analysis is missing from the record, given the nature of the operation of the BITT program, Commerce found no reasonable basis to conclude that the GOT withheld information that was requested by Commerce.  *Id.*  Instead, based on an analysis of the record, Commerce determined that it was appropriate to rely on facts otherwise available under 19 U.S.C. § 1677e(a)(1).  *Id.*  Thus, Commerce found, based on partial facts available, that the BITT program is not *de facto* specific based on the GOT's provided figures concerning the total amount of foreign exchange transactions in Turkey during the period of review and the total amount of taxes collected under BITT.  *Id.* at 10.  Based on this comparison, Commerce found that BITT exemptions were widely available.  *Id.*

RTAC claims that Commerce failed to conduct a full analysis of the program, and argues that Commerce incorrectly cited "insufficient time" as a justification for doing so.  RTAC Br. at

7.  RTAC, however, misconstrues Commerce's statements in the underlying Remand Redetermination.  In analyzing whether the program was *de facto* specific, Commerce stated that it intended to further examine whether this program is specific in subsequent proceedings, including, for example, whether the traded goods sector is a predominant or disproportionate user of the program pursuant to 19 C.F.R. § 351.502(c), when Commerce has additional time to issue questionnaires and review subsequent responses on a more extensive record.  Remand Redetermination at 24.  This is not a refusal to conduct a fulsome analysis of the facts on the record.  Instead, it is a reasonable acknowledgement that there are other potential questions Commerce could ask parties in the future regarding the nature of the program.  These questions would involve fundamentally different issues, and different analysis, from the facts currently present on the record of this proceeding.  Instead, after issuing a supplemental questionnaire and reviewing the response, Commerce determined that there was insufficient evidence that the program was *de facto* specific based on what facts Commerce *did* have at its disposal based on facts otherwise available.  Remand Redetermination at 10.  Commerce is free "to pursue methods of inquiry capable of permitting [it] to discharge [its] multitudinous duties." *Dongtai Peak Honey Industry Co., Ltd. v. United States*, 777 F.3d 1343, 1351 (quoting *Vt. Yankee Nuclear Power Corp. v. Natural Res. Def. Council, Inc.*, 435 U.S. 519, 543 (1978)).

Commerce's statement that there may be other avenues it could pursue in determining whether the program is specific in the future does not support RTAC's claim that Commerce "declined to conduct the analysis required by the statute." *See* RTAC Br. at 7.  Commerce has discretion in determining what information to collect during an administrative proceeding, and RTAC does not cite any supporting case law to suggest that Commerce must exhaust every possible avenue of inquiry before reaching a determination. *See Wuhu Fenglian Co., Ltd. v.*

10

*United States*, 836 F. Supp. 2d 1398, 1405 (Ct. Int'l Trade 2012) ("Plaintiffs identify no legal authority for their contention that Commerce acted unlawfully in declining to issue additional post-preliminary questionnaires, and the Court sees no reason why the agency may have abused its discretion." (citing *Emerson Power Transmission Corp. v. United States*, 903 F. Supp. 48, 54 (Ct. Int'l Trade 1995) (explaining that Commerce is not required to request additional information when such information may be available)). Further, each administrative proceeding stands on its own record, and ultimately Commerce must make a determination based on the record available to it in the relevant administrative proceeding. The Court's "review is limited to the record before Commerce," *Qingdao Sea-Line Trading Co. v. United States*, 766 F.3d 1378, 1385 (Fed. Cir. 2014), and "the burden of creating an adequate record lies with interested parties and not with Commerce." *QVD Food Co. v. United States*, 658 F.3d 1318, 1324 (Fed. Cir. 2011) (citation, quotation marks, brackets omitted).

RTAC also argues that Commerce should have applied an adverse inference, pursuant to 19 U.S.C. § 1677e(b), to conclude that the BITT program was *de facto* specific. RTAC Br. at 8-10. Contrary to RTAC's arguments, Commerce appropriately found that an adverse inference pursuant to 19 U.S.C. § 1677e(b) was not warranted. The GOT explained that it was unable to collect this information because non-interested third parties (*i.e.*, private financial institutions) oversee the program. *See* GOT *De Facto* Response at 2-4. Therefore, Commerce found no basis to conclude that the GOT failed to cooperate because it could not compel non-interested and otherwise unaffiliated parties (i.e., private financial institutions) from providing information. *See GPX International Tire Corp. v. United States*, 942 F. Supp. 2d 1343, 1359 (Ct. Int'l Trade 2013) ("{Commerce} cannot rely on an unaffiliated party's failure to cooperate to justify the application of an AFA rate unless the exporter under investigation also is found responsible for

the behavior in some way.")); *SKF USA Inc. v. United States*, 675 F. Supp. 2d 1264, 1275–77

(Ct. Int'l Trade 2009) (remanding the application of an AFA rate to a cooperative respondent in

order to encourage the compliance of an unaffiliated supplier). The gap in the record did not

result from the actions of an "interested party" such that neither 19 U.S.C. § 1677e(a)(2) nor

(b)(1) is triggered (*e.g.*., the GOT did not withhold information or fail to act to the best of its

ability). *See* Remand Redetermination at 11-12, 26-27. Thus, this record does not support

applying an adverse inference to the GOT to find *de facto* specificity, and Commerce's

determination that the BITT program is not specific is supported by substantial evidence and in

accordance with law.

## III.    Commerce's Benchmark Selection For Valuing Nur's Land Is Supported By Substantial Evidence And In Accordance With Law

In the Remand Order, the Court held that Commerce did not properly support its

selection of a benchmark to value state-owned land that Kaptan's affiliate used. *See* Remand

Order at 17-20. The record before Commerce included two reports: (1) the Colliers report from

RTAC, *see* RTAC Benchmark Submission at Ex. 1 (Oct.31, 2022) (P.R. 122); and (2) the

Cushman & Wakefield (C&W) report from Kaptan, *see* Kaptan Benchmark Submission at Ex. 1

(Oct. 31, 2022) (P.R. 121, C.R. 114-17). The Court found that Commerce failed to address

Kaptan's objections regarding possible deficiencies to the Colliers report, and remanded for

Commerce to reconsider its benchmark selection. Remand Order at 24.

In the Remand Redetermination, Commerce reconsidered the benchmarks at issue,

including Kaptan's objections to the Colliers report and Kaptan's furnishing of the C&W report

as a public document. Remand Redetermination at 13-20. Commerce reasonably selected the

Colliers report as a benchmark because it was not created for the purposes of the administrative

proceeding, was more contemporaneous to the provision of land to Nur, and was derived from primary sources of data. *Id.* at 17-19.

Now, Kaptan argues that Commerce has continued to err by rejecting the C&W report and using the Colliers report as the benchmark. Kaptan Br. at 5-6. Commerce's choice of a benchmark rate to value the land that Nur received from the government is supported by substantial evidence and in accordance with law. Kaptan's challenges to the contrary lack merit.

### A.    Commerce Considered All Record Evidence And Did Not "Reject" Any Source Outright

Kaptan asserts that Commerce unlawfully rejected the C&W report "*ab initio*." Kaptan Br. at 6. Kaptan appears be concerned with Commerce describing a "strict" preference for contemporaneous benchmarks or benchmarks that were not prepared for the purposes of a proceeding. *See* Kaptan Br. at 6-7. As an initial matter, Commerce did not reject, or otherwise refuse to consider, the C&W report as a potential benchmark option. As outlined below, Commerce discussed in detail the various factors that led to Commerce selecting the Colliers report over the C&W Report in the Remand Redetermination. *See* Remand Redetermination at 17-20, 29-36. This robust analysis demonstrates that Commerce did not "reject" any source outright.

Commerce gave weight to its *preference* not to use benchmarks commissioned for a proceeding because such information incorporates a "risk of litigation-inspired fabrication or exaggeration." Remand Redetermination at 30 (quoting *Coated Free Sheet Paper from Indonesia: Final Affirmative Countervailing Duty Determination,* 72 Fed. Reg. 60,642 (Dep't of Commerce October 25, 2007) (*Coated Free Sheet Paper from Indonesia*), and accompanying IDM at Comment 12). This preference was articulated in the underlying Final Results, other administrative proceedings, and by the Federal Circuit. *See Steel Concrete Reinforcing Bar from*

13

*the Republic of Turkey: Final Results of Countervailing Duty Administrative Review and*

*Rescission, in Part; 2020*, 88 Fed. Reg. 34129 (Dep't of  Commerce May 26, 2023) (Final

Results) and accompanying IDM at 9-10 (citing *Certain Softwood Lumber Products from*

*Canada: Final Affirmative Countervailing Duty Determination, and Final Negative*

*Determination of Critical Circumstances*, 82 Fed. Reg. 51,814 (Dep't of Commerce Nov. 8,

2017), and accompanying IDM at 82; *Sandt Tech. v. Resco Metal & Plastics Cor.*, 264 F.3d

1344, 1350- 51 (Fed. Cir. 2001); and *Coated Free Sheet Paper from Indonesia* IDM at Comment

12 (citations omitted).  However, as explained in the Remand Redetermination, although

Commerce is concerned that documents prepared for the purposes of an AD or CVD proceeding

may be tailored to reach specific results, Commerce *does not dismiss* such documents outright on

that basis alone.  Remand Redetermination at 30.

Rather, Commerce considers additional factors in determining the weight to accord such

documents prepared for the purposes of a proceeding.  Such factors may include whether the

methodology underlying a particular study or report is clearly articulated, and whether the

assertions in reports and studies are supported by citations to data, other third-party studies, or

otherwise corroborated by additional record evidence.  Remand Redetermination at 30 (citing

*Certain Softwood Lumber Products from Canada: Final Results of the Countervailing Duty*

*Administrative Review, 2017-2018*, 85 Fed. Reg. 77,163 (Dep't of Commerce Dec. 1, 2020), and

accompanying IDM at Comment 2).  That is what Commerce did here:  It examined the

submissions and the record evidence to reasonably select a benchmark.

### B.    Commerce's Determination Regarding The Reliability Of The Benchmark Submissions Was Reasonable

The Court remanded for Commerce to address Kaptan's concerns regarding the Colliers

report.  Remand Order at 18-20.   In compliance with the Court's Remand Order, Commerce

addressed Kaptan's arguments that the Colliers report was not reliable.  Remand

Redetermination at 13-15.  Commerce's determination that the Colliers report is a reliable,

suitable benchmark is supported by substantial evidence and in accordance with law.

With regards to the Colliers report, Commerce reviewed the report and found it contains:

a general discussion and forecast of Turkey's economic outlook; broad economic indicators for

Turkey; narrative descriptions and analysis of the office, industrial, retail, residential, and hotel

real estate markets within the greater Istanbul area; rent, vacancy, and related statistics sourced

by either Colliers International's own work or other identified entities for the greater Istanbul

area in the various types of markets; a title page; and a closing page with a legal disclaimer.

Remand Redetermination at 15 (citing RTAC's Benchmark Submission at Ex. 1 (P.R. 122)).

Kaptan asserts that the Colliers report does not have a clearly articulated methodology or

supported assertions.  *See* Kaptan Br. at 9.  However, Commerce has regularly used Colliers

International reports, noting that the reports are generated by an "independent third {party}."

*See Certain New Pneumatic Off-the-Road Tires from India: Preliminary Affirmative*

*Countervailing Duty Determination, Preliminary Affirmative Critical Circumstances*

*Determination, in Part, and Alignment of Final Determination with Final Antidumping*

*Determination*, 81 Fed. Reg. 39,903 (Dep't of Commerce June 20, 2016), and accompanying

PDM at 32.

In particular, Commerce explained that the disclaimer of liability does not disqualify the

report from consideration, nor does the fact that the Colliers report is based on numbers compiled

by Colliers (rather, this fact "strengthens the case to use the Colliers report as it is not using

secondary sources or compiling sets of data from other sources").  Remand Redetermination at

13 (quoting IDM at 9).  Commerce prefers contemporaneous original research from an

15

independent, third-party source in comparing benchmarks and the fact that the Colliers report relies on primary sources for its data does not draw into question the reliability of the benchmark.  Remand Redetermination at 14, 32.

In contrast, Commerce received only a single, self-selected sample of Kaptan's communication with C&W regarding the purpose of the report, and the appendices do not contain the underlying information used by C&W for the "Comparison Method (Based on the Land for Rent Currently Market)" or "Comparison Method (Based on Leasehold Lands by Government)" that serve as the core points of comparison in the report.  Remand Redetermination at 31 (citing Kaptan's Benchmark Resubmission at 3, (P.R.R. 21)).  Despite Kaptan's claims that C&W was an objective entity with no stake in the outcome, Kaptan paid for the creation of the C&W report, which calls into question the objective and independent nature of the report.  Remand Redetermination at 31.  Kaptan provides a bulleted list of details about how the C&W report was generated, but these bullet points do not provide any further detail on the purpose of the report or the terms of its creation.  *See* Kaptan Br. at 9-10.  Thus, Commerce found that it lacked visibility into the actual process or conditions of the C&W report creation, which meant that Commerce could not rule out a potential lack of objectivity and neutrality concerning the benchmark information because it was commissioned by Kaptan specifically for the purposes of the underlying administrative proceeding.  Remand Redetermination at 32; *see also Mosaic Company v. United States*, 589 F. Supp. 3d 1298, 1312-13 (Ct. Int'l Trade 2022) (sustaining Commerce's rejection of a benchmark when it had been prepared for the investigation, among other flaws).

Kaptan asserts that the methodologies used in the Colliers report are not disclosed. Kaptan Br. at 9.  But the same is equally true for the C&W report, which does not clarify its

sources either in the text of the report or the appendices, referring to a "most commonly used website" without identifying the website and a "well recognized real estate advisory in the region" without identifying the advisory. Remand Redetermination at 36 (citing Kaptan's Benchmark Resubmission at Exhibit 1 at 3). By contrast, Colliers International is the source of its own work in the Colliers report, and the Colliers report thus represents original research that is more contemporaneous to Kaptan's acquisition of the land than the C&W report and was not prepared for the purposes of the proceeding. Remand Redetermination at 36.

Further, Kaptan argues that the C&W report is not prepared for the purposes of the proceeding. *See* Kaptan Br. at 11-13. Kaptan originally submitted a benchmark commissioned from C&W in its resubmission in the remand redetermination that did not match the benchmark submission placed on the record in the underlying administrative review. *See* Remand Redetermination at 7-8; *see also* Kaptan's Benchmark Resubmission at 1 ("Regarding Commerce's January 14, 2025, letter: in its submission of November 14, 2024, Kaptan inadvertently provided the C&W report from the 2021 review, rather than that from the 2020 review under appeal here. Kaptan corrects this error with the present submission by submitting, as a public document, the C&W Rent Estimation Report from the 2020 review."). The fact that Kaptan has other commissioned C&W reports that contain distinct factual information separate from the C&W report originally submitted in the underlying administrative proceeding cuts against an argument that the report was not prepared for this proceeding. Further, that same Public Benchmark Report Resubmission indicates that Kaptan paid for the creation of the report, and states that the benchmark was "Prepared for: Kaptan Demir Celik" and was finalized on June 7, 2022. *See* Remand Redetermination at 18; Kaptan's Benchmark Resubmission at Ex 1, at 1. The report further states that the "Special Assumptions Evaluation was carried out for the

year 2020," two years prior to the timeframe of the commission but six years after the start of the

land agreement.  Kaptan's Benchmark Resubmission at Ex 1, at 3-4; Remand Redetermination at

18.  Kaptan appears to have retroactively commissioned a rent estimation for a time period years

after its purchase of the land in 2014 for a period that corresponds to the period of review at issue

in this case.  Remand Redetermination at 18-19.  Commerce, thus, reasonably questioned

Kaptan's claim that the reported was prepared by C&W for "internal purposes."  In sum,

Commerce's findings that the C&W report was commissioned for this proceeding is supported

by the record.

Kaptan continues to argue that Commerce erroneously relied on *Sandt* to support its

position that documents prepared for the purposes of a proceeding pose an increased risk of

unreliability, because *Sandt* involved a different context (oral testimony in a patent case).  *See*

Kaptan Br. at 8, n. 7.  However, the Court's reasoning in *Sandt* supports Commerce's decision in

this context as well:  a report prepared at the request of a party for the purposes of an

adjudicatory administrative proceeding is less credible than a report prepared in the ordinary

course of business.  *See* Final Results IDM at 10.

Finally, Kaptan argues that Commerce's preference for benchmarks that are not prepared

for the purposes of a proceeding has "tainted" the C&W report and therefore "no amount of

objectivity or expertise" could result in Commerce selecting the C&W report as a benchmark.

*See* Kaptan Br. at 12.  Again, there is no support for this argument on the record, and Commerce

itself disavowed this factor alone as disqualifying.  *See* Remand Redetermination at 30.  In sum,

Commerce reasonably discussed why it found the Colliers report more reliable generally than the

C&W report.

**C.**     **Commerce's Determination That The Colliers Report Data Are More Comparable To Nur's Land Is Supported By Substantial Evidence**

On remand, Commerce further reviewed both benchmark selections and determined that the Colliers report was the better suited benchmark for valuing Nur's land.  Remand Redetermination at 18-19.  Commerce explained that contemporaneity is a key factor when evaluating benchmarks, as Commerce's practice is to rely on benchmark data sources that are contemporaneous with the bestowal of the land usage rights in question.  Remand Redetermination at 18 (citing *Jiangsu Zhongji Lamination Materials Co., Ltd. v. United States*, Court No. 21-00133, Slip Op. 24-128 (Ct. Int'l Tr. Nov. 22, 2024); *Aluminum Extrusions from the People's Republic of China: Final Affirmative Countervailing Duty Determination*, 76 Fed. Reg. 18,521 (Dep't of Commerce April 4, 2021), and accompanying IDM at Comment 24).  Nur's land usage rights were bestowed in 2014, *see* PDM at 13, and there are no benchmark sources on the record from 2014.  However, Commerce determined that the information from the Colliers report included comparable rental data from the 2020 period of review that could serve as an appropriate benchmark.  Remand Redetermination at 16 (citing RTAC's Benchmark Submission at 1-21).  In contrast, the C&W report listed less-contemporaneous rental land transactions from 2022, that were then adjusted to calculate estimated average unit prices for the 2020 period of review.  *See* Kaptan's Resubmission at Ex. 1, at 3.  After reviewing both the Colliers report and the C&W report land valuation data, Commerce found that the Colliers report was more contemporaneous to the year in which Kaptan purchased the land use rights.  Remand Redetermination at 19 (citing Kaptan's Benchmark Resubmission at Ex. 1 at Section E. Valuation).  Thus, the contemporaneity factor supported Commerce's selection of the Colliers report for benchmark purposes.

Kaptan argues that Commerce's contemporaneity analysis is flawed because Nur leased, rather than purchased, the land in question. Kaptan Br. at 25. Kaptan argues that the benefit for a lease is received at the time of payment, rather than at the time the lease was approved, and that Commerce's determination otherwise represents a change in practice and exceeds the Court's instructions. *See id.* at 25-26. These claims are misplaced. As an initial matter, Commerce acknowledged that Kaptan leased the land, but found that this did not undermine its conclusion because the Colliers report benchmarks used by Commerce are for rental/leasing values as opposed to a lump-sum purchases. RTAC's Benchmark Submission at Ex. 1, at 11. Further, as explained in Commerce's remand redetermination in *Risen Energy*:

> {I}n identifying a land for LTAR benchmark, Commerce's practice is to look to the year in which the land-use rights were acquired from the government, and the terms of the acquisition (reflecting land values and prices for the year) were set, to determine the appropriate time period for calculating the land benchmark. The Court has acknowledged this practice. Thus, for purposes of identifying a land value for LTAR benchmark in China, under Commerce's regulations and practice, we must determine when the producer/exporter acquired the land-use rights from the GOC and seek benchmark information that is contemporaneous with the year(s) of acquisition. In other words, the appropriate methodology for calculating land benchmark is to index a land price to the date of the purchase of the land-use right (e.g., 2018) rather than to the period of review (e.g., 2019).

*See Risen Energy Co., Ltd., et al. v. United States*, 658 F. Supp. 3d 1364 (Ct. Int'l Trade 2023); *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled into Modules, from the People's Republic of China: Final Results Of Redetermination Pursuant To Court Remand*, dated Jan. 9, 2024 (citations omitted) at 8, available at https://access.trade.gov/resources/remands/23-148.pdf. Thus, Kaptan conflates two issues: the allocation of benefit to a particular time period and the selection of an appropriate benchmark. Commerce agreed with Kaptan in the Remand Redetermination that the appropriate time of receipt of the benefit is during the period of review (2020). Remand Redetermination at 19.

20

However, under Commerce's established practice, the appropriate benchmark is the one that is the more contemporaneous to the time Kaptan acquired the land-use rights because that benchmark reflects what Kaptan would have paid on its long-term lease had it signed a comparable commercial lease instead of having received the subsidized land.  And, even if Kaptan is correct and the appropriate point of reference is the period of review, and not the date the land was acquired, the Colliers report would be more contemporaneous as it contains data from the period of review, while the C&W report contains data from 2022.  *See* Remand Redetermination at 18-19.

Kaptan also raises arguments regarding a variety of other potential factors for consideration; however, there is no evidence on the record indicating that any of these additional factors impacted the comparability of the benchmarks.  *See, e.g.,* Kaptan Br. at 20-22.  In the Remand Redetermination, Commerce found that, contrary to Kaptan's claims, there was no information on the record indicating that the Colliers report is not comparable to Kaptan's Trabzon land purchases.  Remand Redetermination at 17.  For example, while Kaptan argues that "the fundamental truism of real estate valuation is that location is everything," there is no record evidence supporting this claim (e.g., a comparison of rent across all provinces with their corresponding GDPs) that Kaptan cites supporting this claim.  *See* Kaptan Br. at 22-23.  Rather, there is only information regarding each province's respective GDPs, without any evidence tying GDP to rental prices.  Kaptan's Benchmark Rebuttal Submission at Exhibit 1 at 1, 3-4 (P.R. 124-125).  Thus, while GDP is a factor that can affect comparability when evidence supports such a finding, there is nothing on the record indicating that there is an established link between a province's GDP and its industrial rent prices.

21

Likewise, Kaptan argues that Commerce should have taken into account a variety of other factors without requiring evidence supporting these factors, including the level of development of the land, the levels of competition and market size, the value of foreign trade, and the physical distance between Trabzon and Istanbul. *See* Kaptan. Br. at 20-22. But, as Commerce explained on remand, Kaptan provided no record information to quantify the proportional effect of any these alleged factors. Remand Redetermination at 17-18. Again, this evidence is not tied in any way to the rental prices on the record—there is no record evidence demonstrating that any alleged differences between the land reflected in the C&W report and the Colliers report had a specific price effect, such as data showing a consistent increase in land values in more distant provinces, provinces with higher GDPs, provinces with high trade levels, or in areas with more developed land. Information indicating that there *are* internal differences in these factors within the Turkish economy is not, on its own, sufficient to discount or rely on particular land sources over others. Remand Redetermination at 36 (citing Kaptan's Benchmark Resubmission at Exhibit 2). Thus, while each of these factors, if substantiated, are factors Commerce would consider in determining whether to select the C&W report or the Colliers report, neither the report nor Kaptan itself provided any supporting evidence that these factors result in a measurable difference in comparability such that Commerce should favor the C&W report data. Remand Redetermination at 36.

Kaptan argues that Commerce's analysis of these factors, and in particular Commerce's requirement that claims of various factors being relevant to Commerce analysis be backed up by facts on the record, is *post hoc* reasoning. *See* Kaptan Br. at 22. However, in this case, the Court ordered Commerce to either reconsider or provide further explanation on remand, and Commerce properly issued a new decision after conducting a new administrative process and

after reconsidering the remanded issues. *See Local 814, Int'l Bhd. of Teamsters v. NLRB*, 546 F.2d 989, 992 (D.C. Cir. 1976) ("The 'post hoc rationalization' rule is not a time barrier which freezes an agency's exercise of its judgment after an initial decision has been made and bars it from further articulation of its reasoning;" instead, "{i}t is a rule directed at reviewing courts which forbids judges to uphold agency action on the basis of rationales offered by anyone other than the proper decisionmakers."); *see also Fengchi Import & Export Co., Ltd. of Haicheng City v. United States*, 98 F. Supp. 3d 1309, 1315 (Ct. Int'l Trade 2015) ("The remand proceeding is an administrative proceeding, meaning that Commerce's comments are not the *post hoc* rationalization of its counsel.") (citing *Mitsubishi Heavy Indus. v. United States*, 97 F. Supp. 2d 1203, 1209 n. 9 (Ct. Int'l Trade 2000)). Thus, Kaptan's argument that Commerce provided *post hoc* rationalization by providing further explanation and analysis in its Remand Redetermination is without merit.

There is likewise no support for Kaptan's argument that it is unduly burdensome for Commerce to require that parties substantiate their claims that rental prices on the record are affected by particular economic factors. Nowhere did Commerce require "location-specific rent valuations" as suggested by Kaptan. *See* Kaptan Br. at 22. Instead, Commerce determined that there need be some evidence supporting claims that the numerous factors Kaptan claims should be weighed have a proportional impact on rental prices and, specifically, a dispositive impact on comparability relative to other factors such as contemporaneity. Remand Redetermination at 17, 35. The Court's "review is limited to the record before Commerce," *Qingdao Sea-Line Trading*, 766 F.3d at 1385, and "the burden of creating an adequate record lies with interested parties and not with Commerce." *QVD Food Co*, 658 F.3d at 1324 (citation, quotation marks, brackets omitted). Commerce must make its decisions based on the record before it, and Kaptan's

unsupported arguments regarding these various factors do not find any anchor in the facts of the underlying proceeding.

Kaptan's reliance on the *Boru San* cases is also misplaced. *See* Kaptan Br. at 21-22 (citing *Özdemir Boru San. ve Tic. Ltd. Sti. v. United States*, 273 F. Supp. 3d 1225, 1250-53 (Ct. Int'l Trade 2017) (*Boru San I*)). Kaptan wrongly construes *Boru San* to suggest that Commerce should have outright disavowed the Colliers report because it contains higher prices than those found in the C&W report. *See* Kaptan. Br. at 21. However, in *Boru San I*, this Court found that Commerce, in selecting a benchmark, should consider whether certain data within the benchmark under consideration are aberrational such that should be removed from the benchmark. *See, e.g., Boru San I*, 273 F. Supp. 3d at 1250-53. Similarly, in *Boru San II*, the Court found that Commerce determined not to rely on prices from the Istanbul and Yalova land parcels because "(1) the prices of these parcels deviate substantially from the other prices *in the dataset*, and consequently, (2) the average price of the land parcels *in the benchmark* is skewed if the Istanbul and Yalova land parcels *are not removed from the dataset*." *Özdemir Boru San. ve Tic. Ltd. Sti. v. United States*, 282 F. Supp. 3d 1352 (Ct. Int'l Trade 2018) (emphasis added) (*Boru San II*). The premise that Commerce should scrutinize benchmark sources to determine whether any data in those sources is aberrational is fundamentally different from the argument put forth by Kaptan that Commerce should disregard *entire benchmarks* if one potential benchmark contains higher prices than an alternative benchmark. The *Boru San* cases provide no support for such an argument. *Id.* In fact, Commerce applied the principle set forth in the *Boru San* cases when selecting data from the Colliers report to rely upon as a benchmark in valuing Nur's land. *See* Remand Redetermination at 19 ("{T}he benchmark province we selected of Tekirdağ, which contains Çerkezköy, also has the most similar GDP to Trabzon (where the land in question is

located) of the limited options presented").  If Commerce were to disavow a benchmark solely because it contains higher benchmark prices than the only other alternative on the record, Commerce would not adequately consider the record or "factors affecting comparability" under 19 C.F.R. § 351.511(a)(2)(i).

Further, Kaptan argues, without any evidentiary support, that the Colliers report is not comparable because it examines specifically government-granted industrial properties, or "Organized Industrial Zones" in its analysis.  *See* Kaptan Br. at 15-19.  Kaptan argues that the Colliers report must be "presumed" to be referencing Organized Industrial Zones when it uses the term "the industrial zones" as a part of its analysis, but this argument is self-defeating.  If this term is a "well-known term of art" like Kaptan argues, Colliers International could have referred to them as Organized Industrial Zones, OIZs, government-granted industrial zones, or noted that it referred to those established under Law 4563 or Law 5084.  Instead, as Commerce explained in the Remand Redetermination, the Colliers report makes no such reference, and moreover states that "the data in the table specifies all leasable, sellable and owner-used industrial property stock," omitting the alleged evidentiary use of the article "the" which serves as the alleged cornerstone of Kaptan's claim that the referenced zones have a particular status or identity. Remand Redetermination at 33 (citing RTAC's Benchmark Submission Exhibit 1 at 9).  Kaptan provides no evidence to demonstrate that "the industrial zones" describe government property, in contrast to simply "industrial zones," which could describe any industrial property regardless of government involvement.  Rather, "the industrial zones" could signify an alternative to non-industrial commercial or retail real estate as covered elsewhere in the Colliers report.  *See* RTAC's Benchmark Submission Exhibit 1 at 5-7, 12-14.  There is simply no evidence for Kaptan's claims that the report only examines OIZs, a term that, it bears repeating, does not

appear in the Colliers report's discussion of industrial land.  *Id.* at Exhibit 1 at 9-12.  Thus, this claim consists of nothing more than mere speculation.

Lastly, Kaptan argues that Commerce relies on a "total fabrication without evidentiary support" in selecting the Çerkezköy rental prices within the Colliers report as the benchmark based on population density and actual prices.  *See* Kaptan Br. at 19-23.  Commerce selected the Colliers report as it meets the standard established in 19 C.F.R. § 351.511(a)(2)(i) because it contains actual prices from the private market in Turkey based upon Colliers International's market research.  Remand Redetermination at 18.  Kaptan's arguments that the benchmark contains averages of actual rental prices, rather than individual rental prices, makes no determinable difference in measuring the reliability of the Colliers report as a benchmark.  *See* Kaptan Br. at 19.  Nor does Kaptan provide any supporting analysis regarding *why* the distinction between individual rental prices and average rental prices should matter for the purposes of selecting a benchmark.  *Id.*  Further, in the underlying review and the Remand Redetermination, Commerce selected the most similar of the possible benchmarks in the Colliers report to account for potential issues of comparability.  Remand Redetermination at 19 (citing Final Results at 9).  In particular, Commerce selected Çerkezköy based off the population density, and the most similar GDP to Trabzon (where the land in question is located), a reasonable choice of the limited options presented.  *See* Remand Redetermination at 19-20.

Kaptan claims that Commerce's finding regarding population density is unsubstantiated.  *See* Kaptan Br. at 14.  While Kaptan is correct that Commerce miscited the specific portion of the RTAC's Rebuttal Benchmark Submission in the Preliminary Results of the underlying review, Kaptan is incorrect that the analysis is completely unsupported by the record.  In the same document, the RTAC's Rebuttal Benchmark Submission, Attachment 2, population

26

densities for Corlu, Tekirdağ; Çerkezköy, Tekirdağ; Dilovasi, Kocaeli; Gebze, Kocaeli; and

Surmene, Trabzon are provided.  *See* RTAC's Rebuttal Benchmark Submission (P.R. 123)

Attachment 2.  And in this data, Surmene, Trabzon has the lowest at 74,719 and Commerce used

the next lowest, Çerkezköy, Tekirdağ at 119,949, as the benchmark as it was the closest in

population density with available prices within the benchmark.  Kaptan's claim that "there is not

a single table showing population densities for Trabzon, Çerkezköy, Instanbul, or anywhere

else," *see* Kaptan Br. at 14, is a meritless, unsupported claim that is actively contradicted by

record evidence.  As explained in the Remand Redetermination, Commerce selected Çerkezköy

based off the population density as the closest comparison point in relation to Surmene, Trabzon

within the Colliers report benchmark.  Remand Redetermination at 19-20.  Commerce further

analyzed the economic indicators listed in the Colliers report and found that there is no record

evidence to support Kaptan's claims that the land Nur acquired in Trabzon is not economically

comparable to the land in Cerkezkoy, Tekirdag from the Colliers report, which Commerce used

as the benchmark.  Remand Redetermination at 29.

Accordingly, Commerce's decision to rely on the data from the Colliers report to

calculate a benchmark price for land was reasonable, supported by substantial evidence, and in

accordance with law.[3]

## CONCLUSION

For these reasons, we respectfully request that the Court sustain Commerce's final results

of redetermination in their entirety.

---

[3] Finally, we do not object to Icdas's request for a separate rate adjustment should Kaptan's rate eventually change as a result of this litigation.  *See* Icdas Br. at 1-2.

27

Respectfully submitted,

YAAKOV M. ROTH
Acting Assistant Attorney General

PATRICIA M. McCARTHY
Director

s/ Franklin E. White, Jr.
FRANKLIN E. WHITE, JR.
Assistant Director

OF COUNSEL:                                    s/Collin T. Mathias
W. MITCH PURDY                                 COLLIN T. MATHIAS
Senior Attorney                                Trial Attorney
U.S. Department of Commerce                    U.S. Department of Justice
Office of the Chief Counsel for Trade          Civil Division
    Enforcement and Compliance                 Commercial Litigation Branch
1401 Constitution Avenue, NW                   PO Box 480
Washington, DC  20230                          Ben Franklin Station
Tel: (240) 482-5214                            Washington, DC 20044
Email: william.purdy@trade.gov                 Tel: (202) 307-0315
                                               Email: collin.t.mathias@usdoj.gov

April 7, 2025                                  Attorneys for Defendant

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that this brief complies with the word limitation in Court of International Trade Standard Chambers Procedures § 2(B)(1), and contains approximately 8,253 words, excluding the parts of the brief exempted from the word limitation.  In preparing this certificate of compliance, I have relied upon the word count function of the word processing system used to prepare the brief.


<u>/s/ Collin T. Mathias</u>