Slip Op. 25 - 130

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **KAPTAN DEMIR CELIK ENDUSTRISI VE TICARET A.S.,**<br><br>  **Plaintiff,**<br>  **and**<br><br>**ICDAS CELIK ENERJI TERSANE VE ULASIM SANAYI, A.S.,**<br><br>  **Plaintiff-Intervenor,**<br><br>  **v.**<br><br>**UNITED STATES,**<br><br>  **Defendant,**<br><br>  **and**<br><br>**REBAR TRADE ACTION COALITION,**<br><br>  **Defendant-Intervenor.** | **Before: Gary S. Katzmann, Judge**<br>**Court No. 23-00131** |

## <u>OPINION AND ORDER</u>

[Commerce's <u>Remand Results</u> are sustained.]

Dated: <u>October 6, 2025</u>

<u>David L. Simon</u>, Law Office of David L. Simon, PLLC, of Washington, D.C., argued for Plaintiff Kaptan Demir Celik Endustrisi ve Ticaret A.S.

<u>Leah N. Scarpelli</u> and <u>Matthew M. Nolan</u>, ArentFox Schiff LLP, of Washington, D.C., for Plaintiff-Intervenor Icdas Celik Enerji Tersane ve Ulasim Sanayi, A.S.

<u>Collin T. Mathias</u>, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., argued for Defendant the United States. With him on the briefs were <u>Brett A. Shumate</u>, Assistant Attorney General, <u>Yaakov M. Roth</u>, Acting Assistant Attorney General, <u>Patricia M. McCarthy</u>, Director, <u>Franklin E. White Jr.</u>, Assistant Director. Of counsel on the briefs were <u>W. Mitch Purdy</u>, Senior Attorney and <u>Heather A. Holman</u>, Senior Attorney, Office

of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, D.C.

Maureen E. Thorson, Wiley Rein, LLP, of Washington, D.C., argued for Defendant-Intervenor Rebar Trade Action Coalition. With her on the brief were Alan H. Price, John R. Shane, Stephanie M. Bell, and Stephan A. Morrison.

Katzmann, Judge: In an odyssey filled with twists and turns, Plaintiff Kaptan Demir Celik Endustrisi ve Ticaret A.S. ("Kaptan") and Defendant the United States (the "Government") have differed in a series of proceedings about countervailing duties imposed on Turkish rebar.[1] This chapter of the epic involves the U.S. Department of Commerce's ("Commerce") 2023 administrative review of the 2020 countervailing duty order. See Steel Concrete Reinforcing Bar From the Republic of Turkey: Final Results of Countervailing Duty Administrative Review and Rescission, in Part; 2020, 88 Fed. Reg. 34129 (Dep't Com. May 26, 2023), P.R. 156 ("Final 2020 Order"). In the Final 2020 Order, Commerce determined that an exemption from Turkey's Banking and Insurance Transactions Tax ("BITT") on foreign exchange transactions was a countervailable subsidy because the BITT exemption was specific as a matter of law. See Mem. from J. Maeder to L. Wang, re: Issues and Decision Memorandum for the Final Results of the Countervailing Duty Administrative Review of Steel Concrete Reinforcing Bar from the Republic of Turkey; 2020, at 11, (Dep't Com. May 22, 2023), P.R. 152 ("2020 IDM"). It also identified a report prepared by Colliers International ("Colliers") as a more appropriate benchmark to value rent-free lease of land than a competing report prepared by Cushman & Wakefield ("C&W"). Id. at 10.

---

[1] Rebar is a steel rod that is embedded into concrete to strengthen a concrete structure. Kaptan Demir Celik Endustrisi ve Ticaret A.S. v. United States, 47 CIT __, __ n.1, 666 F. Supp. 3d 1334, 1336 n.1 (2023).

The court remanded these determinations to Commerce for further explanation in <u>Kaptan Demir Celik Endustrisi ve Ticaret A.S. v. United States</u>, 48 CIT __, 736 F. Supp. 3d 1318 (Oct. 21, 2024) ("<u>Remand Order</u>").  In the <u>Remand Order</u>, the court found Commerce's explanation for its finding of specificity to be inconsistent with the requirements of de jure specificity and remanded to Commerce for further explanation, inviting Commerce to evaluate whether the exemption met the requirements for de facto specificity instead.  <u>Id.</u> at 1329.  The court also remanded to Commerce the choice of the Colliers report to value the rent-free lease of Kaptan's affiliate Nur to "fully address the arguments presented by Kaptan regarding possible deficiencies in the Colliers report and, if appropriate, to reconsider its selection of the Colliers report over the C&W report as a benchmark."  <u>Id.</u> at 1333.

On January 21, 2025, Commerce filed its redetermination of the <u>Final 2020 Order</u>.  <u>See Final Results of Remand Redetermination Pursuant to Court Remand</u>, Jan. 21, 2025, ECF No. 53 ("<u>Remand Results</u>").  In the <u>Remand Results,</u> Commerce determined that the BITT exemption was not a countervailable subsidy because the BITT exemption was not specific, and Commerce further explained the decision to use the Colliers report instead of the C&W report to value the Nur lease.  <u>See id.</u> at 11–12.  Now Defendant-Intervenor Rebar Trade Action Coalition ("RTAC") challenges Commerce's redetermination that the BITT exemption is not specific.  <u>See</u> Def.-Inter.'s Cmts. in Opp'n to Remand Redetermination, Feb. 20, 2025, ECF No. 59 ("Def.-Inter.'s Cmts.").  Plaintiff Kaptan continues to challenge the adequacy of Commerce's explanation of its decision to use the Colliers report to value the Nur lease.  <u>See</u> Kaptan's Cmts. on Redetermination on Remand, Feb. 20, 2025, ECF No. 58 ("Pl.'s Cmts.").

The court sustains both of Commerce's determinations in the <u>Remand Results</u>.

## BACKGROUND

### I.    *Legal and Regulatory Framework*

The Tariff Act of 1930 provides a mechanism to level the playing field in international trade by empowering Commerce to impose remedies that combat unfair trade practices.  See LA Molisana S.p.A v. United States, 138 F.4th 1353, 1355 (Fed. Cir. 2025).  One remedy that Commerce may impose to offset the effects of countervailable foreign subsidies—one such unfair trading practice—is a countervailing duty.  19 U.S.C. § 1671.  In order to impose a countervailing duty on merchandise, Commerce must determine that the foreign government provides "a countervailable subsidy with respect to the manufacture, production, or export of a class or kind of merchandise imported . . . ."  Id. § 1671(a)(1).  Such subsidies may take the form of a foreign government's provision of "goods or services [that] are provided for less than adequate remuneration" or "foregoing or not collecting revenue that is otherwise due, such as granting tax credits or deductions from taxable income."  Id. § 1677(5)(D)(ii), (E)(iv).  In articulating the requirements for countervailability, the Tariff Act of 1930 requires that Commerce find a subsidy to be "specific" before imposing a countervailing duty on imports to offset the subsidy.  Id. § 1677(5)(A), (5A).  A subsidy may be specific either in law (de jure) or in fact (de facto).  Id. § 1677(5A)(D).  As the U.S. Court of Appeals for the Federal Circuit ("Federal Circuit") recently explained, "[t]he de jure specificity inquiry is separate from the de facto inquiry and the two are based on different factors."  Gov't of Quebec v. United States, 105 F.4th 1359, 1374 (Fed. Cir. 2024).

Commerce's regulations provide a detailed framework for assessing "adequate remuneration":

The Secretary will normally seek to measure the adequacy of remuneration by comparing the government price to a market-determined price for the good or service resulting from actual transactions in the country in question. Such a price could include prices stemming from actual transactions between private parties or actual imports. In choosing such transactions or sales, the Secretary will consider product similarity; quantities sold or imported; and other factors affecting comparability.

19 C.F.R. § 351.511(a)(2)(i).

## II.    History of Relevant Administrative Proceedings

The current remand is just one chapter in Kaptan's challenges to Commerce's Turkish rebar countervailing duties orders.  Commerce first issued a countervailing duty order on rebar from Turkey in 2014, see Steel Concrete Reinforcing Bar From the Republic of Turkey: Countervailing Duty Order, 79 Fed. Reg. 65926 (Dep't Com. Nov. 6, 2014) ("Original Order"), and Commerce ordered the assessment of countervailing duties on Kaptan's U.S. imports of rebar following its 2018, 2019, 2020, and 2021 administrative reviews of the Original Order.  See Steel Concrete Reinforcing Bar From the Republic of Turkey: Final Results of Countervailing Duty Administrative Review and Rescission, in Part; 2018, 86 Fed. Reg. 53279 (Dep't Com. Sept. 27, 2021) ("Final 2018 Review"); Steel Concrete Reinforcing Bar From the Republic of Turkey: Final Results of Countervailing Duty Administrative Review and Rescission, in Part; 2019, 87 Fed. Reg. 21,640 (Dep't Com. Apr. 12, 2022) ("Final 2019 Review"); Final 2020 Order; Steel Concrete Reinforcing Bar From the Republic of Türkiye: Final Results of Countervailing Duty Administrative Review; 2021, 89 Fed. Reg. 35,071 (Dep't Com. May 1, 2024) ("Final 2021 Review").  Kaptan has challenged each of these administrative review determinations in separate actions.

In response to the Final 2018 Review, Kaptan challenged Commerce's decision to treat Nur—a shipbuilding company that provided scrap metal for Kaptan's operations—as a

cross-owned input supplier for Kaptan, and the court remanded that determination to Commerce in Kaptan Demir Celik Endustrisi ve Ticaret A.S. v. United States, 47 CIT __, 633 F. Supp. 3d 1276 (2023) ("Kaptan I").  The court subsequently entered judgment sustaining Commerce's determination on remand that subsidies conveyed to Nur were not properly classified as indirect subsidies to Kaptan.  Kaptan Demir Celik Endustrisi ve Ticaret A.S. v. United States, 47 CIT __, 666 F. Supp. 3d 1334, 1336 ("Kaptan I Remand").  RTAC filed an appeal of that decision in the Federal Circuit.  See Kaptan Demir Celik Endustrisi ve Ticaret A.S. v. United States, appeal docketed, No. 24-1431 (Feb. 2, 2024).

Subsequently, Kaptan challenged Commerce's Final 2019 Review on grounds similar to those at issue in Kaptan I, and the court stayed that proceeding pending resolution of Kaptan I. See Order Staying Case, Kaptan Demir Celik Endustrisi ve Ticaret A.S. v. United States, No. 22-00149 (Ct. Int'l Trade July 17, 2024), ECF No. 63 ("Kaptan II").

In the instant case, Kaptan challenged Commerce's Final 2020 Order, and the court remanded both challenged aspects of the review to Commerce for further explanation.  See Remand Order, 736 F. Supp. 3d at 1321–22.  Kaptan separately challenged Commerce's Final 2021 Order in a case that is pending before this court.  See Kaptan Demir Celik Endustrisi ve Ticaret A.S. v. United States, No. 24-00096 ("Kaptan IV").

### III.    *Factual Background*

The court presumes familiarity with the factual history of the administrative proceeding leading up to the Remand Order.  Commerce released its draft remand redetermination on December 16, 2024, and received comments from interested parties on December 27, 2024. Remand Results at 20.  Pursuant to the court's remand order, and without requesting an extension, Commerce published the Remand Results on January 21, 2025.  Remand Results.  In the Remand

Results, Commerce found under protest that the BITT exemption was not specific, and it offered

further explanation for its decision to use one land valuation report over another to value the free

rent subsidy that Nur received.  Id. at 2.

### IV.    *Procedural History*

On February 20, 2025, Kaptan filed its comments on the Remand Results, challenging the

adequacy of Commerce's explanation of its decision to use one report over the other.  See Pl.'s

Cmts.    Plaintiff-Intervenor Icdas Celik Enerji Tersane ve Ulasim Sanayi A.S. ("Icdas")[2]

incorporated Kaptan's arguments.  See Pl.-Inter.'s Cmts. in Opp'n to Remand Results, Feb. 20,

2025, ECF No. 61.  RTAC filed its comments on the Remand Results on February 20, contesting

Commerce's under-protest determination that the BITT exemption was not specific.  See

Def.-Inter.'s Cmts.  In early April, the Government filed a response to Kaptan's and RTAC's

comments.  See Def,'s Resp. to Cmts. on Remand Results, Apr. 7, 2025, ECF No. 65 ("Gov't

Resp.").  On April 5, 2025, Kaptan filed comments in support of Commerce's determination in the

remand that the BITT exemption was not specific.  See Pl.'s Reply Cmts. on Remand Results, Apr.

5, 2025, ECF No. 64.  On April 7, 2025, RTAC filed comments in support of Commerce's decision

in choosing which land valuation report to use.  See Def-Inter.'s Reply Cmts., Apr. 7, 2025, ECF

No. 66.  On June 24, 2025, the court posed a set of initial questions to Kaptan, RTAC, and the

Government.  See Letter re: Qs. for Oral Arg., June 24, 2025, ECF No. 71.  All parties submitted

responses to the questions on July 1, 2025, and the court held oral argument on July 8, 2025.  See

Def.'s Resp. to Court's Qs. for Oral Arg., July, 1, 2025, ECF No. 72 ("Gov't OAQ Resp."); Pl.'s

Resp. to Court's Qs. for Oral Arg., July, 1, 2025, ECF No. 73 ("Pl.'s OAQ Resp."); Def.-Inter.'s

---

[2] Icdas is also a Turkish producer-importer of rebar that is subject to countervailing duties pursuant
to the Final 2020 Review.  Remand Order, 736 F. Supp. 3d at 1321 n.2.

Court No. 23-00131                                                        Page 8

Resp. to Court's Qs. for Oral Arg., July, 1, 2025, ECF No. 74 ("Def-Inter.'s OAQ Resp."). The

court invited the parties to submit supplemental comments following oral argument, and Kaptan

filed a brief on July 21, 2025. See Pl.'s Post-Arg. Br., July 21, 2025, ECF No. 76.

## JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction over this action pursuant to 28 U.S.C. § 1581(c) and 19 U.S.C.

§ 1516a(a)(2). The standard of review in this action is set forth in 19 U.S.C. § 1516a(b)(l)(B)(i):

"[t]he court shall hold unlawful any determination, finding, or conclusion found . . . to be

unsupported by substantial evidence on the record, or otherwise not in accordance with law . . . ."

"The court will sustain Commerce's redetermination on remand if it is supported by substantial

evidence on the record and is otherwise in accordance with law . . . , which includes compliance

with the court's remand order." SMA Surfaces, Inc. v. United States, 47 CIT __, __, 658 F. Supp.

3d 1325, 1328 (2023) (internal citation omitted).

In making any determination, Commerce is required to provide "an explanation of the basis

for its determination that addresses relevant arguments, made by interested parties who are parties

to the investigation or review . . . ." 19 U.S.C. § 1677f(i)(3)(A). Commerce's explanation should

account for "contradictory evidence or evidence from which conflicting inferences could be

drawn." Suramerica de Aleaciones Laminadas, C.A. v. United States, 44 F.3d 978, 985 (Fed. Cir.

1994) (internal quotation marks and citation omitted).

## DISCUSSION

RTAC challenges the Remand Results on the issue of specificity, contending (1) that

Commerce's redetermination that the BITT exemption did not constitute a de jure specific subsidy

lacked substantial evidence, (2) that Commerce erred in declining to conduct a more thorough

investigation to determine whether the BITT exemption was de facto specific, and (3) that

Commerce failed to provide substantial evidence to support its decision not to apply adverse inferences.  See Def-Inter.'s Cmts. at 4–10.  Kaptan challenges the Remand Results on the issue of the selection of the land valuation report benchmark, contending: (1) that Commerce's decision to use the Colliers report instead of the C&W report was not grounded in substantial evidence, and (2) that Commerce failed to address relevant comments Kaptan raised about the adequacy of the Colliers report.  See Pl.'s Cmts. at 6–27.

> **I.**    ***Commerce Offered Substantial Evidence to Support Its Finding that the BITT Exemption Did Not Constitute a Specific Subsidy***

Recall that a subsidy must be specific to be countervailable.  A subsidy may be specific as a matter of law, "[w]here the authority providing the subsidy, or the legislation pursuant to which the authority operates, expressly limits access to the subsidy to an enterprise," 19 U.S.C. § 1677(5A)(D)(i), or as a matter of fact, where one of the following four factors is met:

> (I) The actual recipients of the subsidy, whether considered on an enterprise or industry basis, are limited in number.   (II) An enterprise or industry is a predominant user of the subsidy.   (III) An enterprise or industry receives a disproportionately large amount of the subsidy.   (IV) The manner in which the authority providing the subsidy has exercised discretion in the decision to grant the subsidy indicates that an enterprise or industry is favored over others.

Id. § 1677(5A)(D)(iii).

In the Final 2020 Order, Commerce found that Kaptan's exemption from the BITT was a countervailable subsidy because it viewed the law providing the exemption as de jure specific. Under Turkish Law 6802, five types of transactions are eligible for an exemption from the BITT:

> (1) foreign exchange sales between banks and authorized institutions or among each other; (2) foreign currency sales that are made to the Ministry of Treasury and Finance; (3) foreign currency sales made to corporate borrowers having foreign currency loan payables; (4) foreign exchange sales to enterprises having an industrial registry certificate; and, (5) foreign exchange sales to exporters which are members of Exporters' Associations.

<u>Remand Results</u> at 3 (citing Letter from Republic of Turkiye, Ministry of Trade to Sec'y of Com., re: Resp. to Sec. II of the Questionnaire in 2020 Administrative Review of the Countervailing Duty Order on Steel Concrete Reinforcing Bar from Turkiye at 76–77, (May 16, 2022), P.R. 49).[3]

Commerce, in the <u>Final 2020 Order,</u> found that the exemption was de jure specific because the exemption was limited to "a cross-section of companies that fulfill one of the five requirements and make foreign exchange transactions." <u>Remand Results</u> at 8–9 (citing Mem. from J. Maeder to L. Wang, re: Issues and Decision Memorandum for the Final Results of the Countervailing Duty Administrative Review of Steel Concrete Reinforcing Bar from the Republic of Turkey; 2020 at 12, (Dep't Com. May 22, 2023), P.R. 152 ("2020 IDM")).  Notably, many industries appear to be required to possess industrial registry certificates—the fourth category for BITT exemption qualifications.  <u>Remand Order</u>, 736 F. Supp. 3d at 1327–28.  Yet Commerce concluded that the number of companies that fulfilled one of the requirements for the exemption in practice was limited, as only a handful of industries actually possessed industrial registry certificates.  <u>Id.</u> at 1329 (citing 2020 IDM at 12).  Thus, in the <u>Final 2020 Order</u> Commerce found the BITT exemption to be de jure specific.  <u>Id</u>.

However, the court held in its <u>Remand Order</u> that to support a finding of de jure specificity with substantial evidence:

> the record must demonstrate that Turkish law 'expressly limits' the BITT Exemption 'to an enterprise or industry' . . . . The provisions of Turkish law in the record, on which Commerce relied, do not appear to expressly limit the BITT Exemption to an 'enterprise or industry.' . . . Their express terms instead appear to support a conclusion of broad, economy-wide eligibility for the subsidy.

<u>Remand Order</u>, 736 F. Supp. 3d at 1327 (quoting 19 U.S.C. § 1677(5A)(D)(i)).  The court thus

---

[3] "P.R" refers to the index numbers of public documents in the joint appendix for the <u>Remand Order</u> case.

remanded the issue to Commerce for further explanation, inviting Commerce to consider whether the exemption may have been de facto specific instead. Id. at 1330. In the Remand Results, Commerce determined, under protest, that the BITT exemption did not constitute a de jure specific subsidy. Remand Results at 9.

During the remand proceeding, Commerce issued additional questionnaires to the Government of Turkey to investigate whether the BITT exemption was specific as a matter of fact. The Government of Turkey did not respond to many of the questions, stating that it lacked information or that the questions were irrelevant. Id. at 10–11; Def-Inter.'s Br. at 2. In such instances where "necessary information is not available on the record, or an interested party or any other person withholds information that has been requested" by Commerce, the agency "shall . . . use the facts otherwise available in reaching the applicable determination . . . ." 19 U.S.C. § 1677e(a). To fill the gaps, Commerce "may use an inference that is adverse to the interests of that party in selecting from among the facts otherwise available." Id. § 1677e(a)–(b). Using the limited information it had available and deciding not to apply adverse inferences for the information that the Government of Turkey failed to provide, Commerce found that the BITT exemption was not de facto specific. Remand Results at 11–12.

RTAC challenges Commerce's determinations that the BITT exemption is neither a de jure nor de facto specific subsidy.

### A.    De Jure Specificity

RTAC challenges Commerce's redetermination on remand that the BITT exemption is not de jure specific because "Turkish law explicitly limits exemptions from the BITT to firms that conduct foreign operations requiring legitimate, non-speculative foreign currency transactions," and the facts available indicate that the industrial registry certificate is not widely available,

suggesting that the BITT exemption itself is not widely available.  Def-Inter.'s Br. at 4.  RTAC

argues that Commerce has failed to "address relevant arguments," including those "material to the

agency's determination," and requests that the court remand this issue to Commerce.  Id. at 6

(citing Timken U.S. Corp. v. United States, 421 F.3d 1350, 1354 (Fed. Cir. 2005)).  Because

RTAC's arguments that the BITT exemption is de jure specific reflect reasoning that the court

already rejected in the Remand Order, the court sustains Commerce's determination as to de jure

specificity.

         RTAC argues that the BITT exemption is de jure specific because eligibility criteria for the

exemption—notably, the exemption via industrial registry certificate—is, in practice, limited to a

small number of industries.  Def-Inter.'s OAQ Resp. at 6.  RTAC claims that, "the record evidence

regarding other aspects of the five criteria [to receive the BITT exemption]—most critically, record

evidence regarding the availability of the BITT exemption to companies possessing an industrial

registry certificate . . . supported the conclusion that the BITT exemption program was de jure

specific, in that it demonstrated that industrial registry certificates were only available to, and held

by, a limited group of Turkish entities."  Id.

         However, the court already evaluated a virtually identical argument in the Remand Order.

Faced with the questions of whether industrial registry certificates were available to only a narrow

range of industries and whether narrow availability would warrant a finding of de jure specificity

the court held as follows:

> It instead appears that under the provisions of Turkish law in the record, virtually
> every company of a certain size must possess an industrial registry certificate.  And
> because every company that complies with the legal requirement to possess an
> industrial registry certificate is eligible for the BITT Exemption, see Turkish Law
> 6802, legal eligibility for the BITT Exemption appears to be broad and
> non-enterprise-or industry-specific.

Court No. 23-00131                                                    Page 13

Remand Order, 736 F. Supp. 3d at 1328.

Thus, contrary to RTAC's contention, the court has already held that the broad availability of the industrial registry certificate under Turkish law undercuts a determination that the BITT exemption is specific as a matter of law. In addition, the court observed that while Commerce "premised its specificity determination on the notion that even if Turkish law establishes broad eligibility for the BITT exemption . . . [t]his type of analysis, however, is out of place in a determination of whether a subsidy is specific as a matter of law." Id. at 1329. The only relevant questions to determine de jure specificity are those about whether the record shows the law "expressly limit[s] access to the subsidy to an enterprise or industry,' " and "not whether the implementation of that law results in the subsidy's distribution to a limited number of recipients." Id. (quoting 19 U.S.C. § 1677(5A)(D)(i)).

Because RTAC's arguments that the BITT exemption is specific as a matter of law echo arguments the court already rejected, Commerce did not err in rejecting those arguments in the Remand Results, and the court sustains Commerce's Remand Results with regard to the de jure specificity finding.

## B.    *De Facto Specificity*

RTAC argues that Commerce erred in its determination that the BITT exemption is not de facto specific because (1) Commerce had a statutory obligation to conduct further investigation into the de facto specificity of the BITT exemption after the Government of Turkey failed to provide certain information and (2) Commerce failed to sufficiently explain its decision not to apply adverse inferences to the gaps in the record created by the Government of Turkey's failure to provide that information. Def-Inter.'s Br. at 6–9. However, the Tariff Act grants Commerce "broad discretion in executing the [antidumping and countervailing duties] law[s]." Smith-Corona

Court No. 23-00131                                                                    Page 14

Grp. v. United States, 713 F.2d 1568, 1571 (Fed. Cir. 1983). This includes discretion to decline to conduct further investigation or to decline to apply adverse inferences. See Micron Tech., Inc. v. United States, 117 F.3d 1386, 1395 (Fed. Cir. 1997) ("Commerce has the discretionary authority to determine the extent of investigation and information it needs." (internal quotation marks omitted)); Timken Co. v. United States, 354 F.3d 1334, 1346 (Fed. Cir. 2004) ("Commerce has discretion to apply adverse inferences."). See generally Borusan Mannesmann Boru Sanayi Ve Ticaret A.S. v. Am. Cast Iron Pipe Co., 5 F.4th 1367 (Fed. Cir. 2021) (affirming a determination of Commerce regarding post-sale price adjustment, including the decision not to apply an adverse inference).

Commerce's discretion is bounded, as "Commerce may not act arbitrarily or unreasonably, and may not abuse the discretion Congress has granted." Melamine Chemicals, Inc. v. United States, 732 F.2d 924, 930 (Fed. Cir. 1984); see also Goodluck India Ltd. v. United States, 11 F.4th 1335, 1342 (Fed. Cir. 2021) ("Commerce abuses its discretion, for instance, if it departs from a consistent practice without reasonable explanation."); F.lli De Cecco Di Filippo Fara S. Martino S.p.A. v. United States, 216 F.3d 1027, 1032 (Fed. Cir. 2000) (concluding it would be abuse of discretion for Commerce to "select unreasonably high rates with no relationship to the respondent's actual dumping margin"). Here RTAC has failed to show that Commerce acted unreasonably or exceeded its discretion in declining to conduct further investigation or apply adverse inferences.

Although Commerce has a statutory duty to assess whether the BITT exemption was de facto specific under 19 U.S.C. § 1677(5A)(D)(iii), the statute anticipates that there will be instances in which Commerce does not have sufficient information in the record to make a

determination.  In such instances, Commerce "shall … use the facts otherwise available in reaching the applicable determination. . . ."  Id. § 1677e(a).  Commerce has broad discretion to decline to conduct further investigation in antidumping and countervailing duty investigations, and the plaintiff bears the burden of showing that Commerce abused its discretion in declining to conduct further investigation.  See Micron Tech., 117 F.3d at 1395; Wuhu Fenglian Co. v.  United States, 36 CIT 642, 836 F. Supp. 2d 1398, 1405 (2012) ("Plaintiffs' . . . argument that Commerce abused its discretion in declining to issue each and every supplemental questionnaire that Plaintiffs had requested is without merit."); Emerson Power Transmission Corp. v. United States, 19 CIT 1154, 1160, 903 F. Supp. 48, 54 (1995) ("While [the plaintiff] is correct to assert that Commerce may request additional information, . . . [the plaintiff's] argument that Commerce should have requested the information is inconsistent with Commerce's broad discretion under the antidumping laws.").

Here, RTAC has failed to demonstrate that Commerce's decision to not conduct further investigation was unreasonable.  RTAC asserts that "Commerce simply declined to conduct the analysis required by the statute, citing a lack of record evidence that was at least partially of its own making," Def-Inter.'s Br. at 7, even though the statute clearly authorizes Commerce to rely on "the facts otherwise available in reaching the applicable determination" when the record is incomplete.  19 U.S.C. § 1677e(a).  RTAC does not offer an argument suggesting that Commerce abused its discretion in declining to conduct further investigation.  See PPG Indus., Inc. v. United States, 978 F.2d 1232, 1238 (Fed.Cir.1992).

Commerce justified its decision not to conduct further investigation into the de facto specificity of the BITT exemption on the grounds that:

given the nature of the BITT program, which exempts certain entities from taxes on <u>foreign exchange transactions</u>, there may be additional bases to analyze whether the BITT program is <u>de facto</u> specific, for example whether the traded goods sector is a predominant or disproportionate user of the program pursuant to 19 CFR 351.502(c). As explained below, however, there is insufficient time to conduct a full analysis of this approach in this remand determination . . . . Going forward, Commerce intends to further examine whether this program is specific in subsequent proceedings, when Commerce has additional time to issue questionnaires and review subsequent responses on a more extensive record. For example, under 19 CFR 351.502(c), Commerce may consider whether the traded goods sector is a predominant or disproportionate user of the program. However, as explained above, for purposes of this remand, Commerce does not have the time to gather such information and do a thorough analysis in that regard, so instead is making its specificity determination based on facts otherwise available.

<u>Remand Results</u> at 12 (emphasis in original).

This explanation offered ample justification for Commerce's decision not to conduct further investigation. While there could be an endless number of ways in which a subsidy operates as specific in fact, Commerce inevitably has limited time to investigate specificity and cannot entirely exhaust each and every avenue of investigation—especially when the investigation hinges upon answers provided by a foreign government. Commerce declined to investigate the other "bases" on which the BITT exemption could be de facto specific in an effort to comply with the court's <u>Remand Order</u>, which gave agency ninety day to file its remand determination. <u>See</u> <u>Remand Results</u> at 12; <u>Remand Order</u>, 736 F. Supp. 3d at 1334.

RTAC offers no evidence to suggest that Commerce shirked its obligation to comply with the <u>Remand Order</u>. For example, RTAC does not allege that Commerce dragged its heels or that its investigation was not thorough. RTAC merely suggests that Commerce should have "request[ed] more time for the remand proceedings." Def-Inter.'s Br. at 7. Commerce, however, had no obligation here to request more time from the court so that the agency could conduct a more thorough investigation into de facto specificity.

In sum, it was not an abuse of discretion for Commerce to conduct an investigation in accordance with the timeframe the court initially gave the agency in the Remand Order.  See PPG Indus., Inc., 978 F.2d at 1238; ArcelorMittal USA LLC v. United States, 43 CIT __, __, 399 F. Supp. 3d 1271, 1279–1281 (2019) ("This court has recognized that Commerce's broad discretion to set and enforce deadlines applies to remand proceedings").  This explanation sufficiently justified Commerce's decision not to conduct further investigation and to use the facts available in an incomplete record as 19 U.S.C. § 1677e(a) permits.

Likewise, the Tariff Act of 1930 grants Commerce discretion to determine whether to apply adverse inferences.  See 19 U.S.C. § 1677e(b) (Commerce "may use an inference that is adverse to the interests of [a party that has failed to cooperate] in selecting from among the facts otherwise available"); see also Timken, 354 F.3d at 1346.  The use of the word "may" in the statute indicates that Commerce has discretion to determine whether to apply adverse inferences or not.  See Doe v. United States, 463 F.3d 1314, 1324 (Fed. Cir. 2006) ("There is a presumption that the use of the word 'may' in a statute creates discretion.").  Pragmatically, it makes senses that Commerce has discretion to determine whether to apply adverse inferences, as the agency is in the best position to decide whether a party has complied to its best ability with requests and to ascertain whether adverse inferences will likely yield the most accurate results.  See F.lli De Cecco Di Filippo Fara S. Martino, 216 F.3d at 1032 ("Commerce is in the best position, based on its expert knowledge of the market and the individual respondent, to select adverse facts that will create the proper deterrent to non-cooperation with its investigations and assure a reasonable margin.").

RTAC correctly notes that Commerce's "discretion is not unbounded."  Def-Inter.'s OAQ Resp. at 2.  The court reviews Commerce's determinations to ensure the agency offered substantial

evidence to explain its decision.  19 U.S.C. § 1516a(b)(l)(B)(i).  Here, RTAC alleges that "[t]he agency's decision not to apply adverse facts available to the Government of Turkey is also inadequately explained and supported."  Def-Inter.'s Br. at 7.

However, Commerce offered sufficient explanation for its decision not to apply adverse inferences.  In the Remand Results, it identified "no reasonable basis to conclude that the Government of Turkey withheld information that has been requested by Commerce" and therefore chose not to apply adverse inferences.  Remand Results at 11.  RTAC, in turn, contends that there was reasonable basis to conclude Government of Turkey withheld information because the Government of Turkey responded "not applicable" to some questions (rather than stating that the Government of Turkey did not have that information to those questions) and the Government of Turkey failed to show that it had attempted to request those pieces of information as indications that the Government of Turkey withheld information.  Def-Inter.'s Br. at 8–9.  However, these pieces of evidence merely point to the Government of Turkey's failure to demonstrate that it exhausted its ability to meet the request, rather than affirmatively showing a reasonable basis to conclude that the Government of Turkey withheld information.  RTAC has not demonstrated that Commerce's decision to not apply adverse inferences was unreasonable.  Absent an affirmative case that the record demonstrated that Commerce ought to have applied adverse inferences, Commerce's decision not to apply adverse inferences fell within its discretion.

Because RTAC has failed to demonstrate that Commerce abused its discretion in declining to conduct further investigation or apply adverse inferences in the de facto specificity analysis, the court sustains Commerce's Remand Results with regard to the de facto specificity finding.

    **II.**   ***Commerce Offered Substantial Evidence to Support Its Decision to Use the Colliers Report Benchmark***

Kaptan alleges that Commerce's decision to use the Colliers report instead of the C&W report is not grounded in substantial evidence because Commerce failed to address Kaptan's comments in the record about factors detracting from the reliability of the Cerkezkoy benchmark in the Colliers report and thus did not apply an even-handed approach to evaluating the two reports. See Pl.'s Cmts. at 12–13.  However, in the Remand Results Commerce rectified its initial failure to address Kaptan's concerns about the Colliers report.  By providing reasoned disagreement to Kaptan's concerns about the adequacy of the benchmark, Commerce addressed the court's key concern with the report selection in the Final 2020 Order.  See Remand Results at 32–36.

The court previously remanded Commerce's decision to use benchmark data from Cerkezkoy from the Colliers report, instead of data from the C&W report, to value Nur's leasehold. Remand Order, 736 F. Supp.3d at 1333.  Commerce had failed to provide adequate explanation in the Final 2020 Order because it did not address Kaptan's arguments that the Cerkezkoy data was not reflective of the rental values in Trabzon, the location of the lease in question.  Id. at 1332. Faced with comments from Kaptan that Cerkezkoy differed from Trabzon in GDP, industrial development, distance from Surmene, and the value of foreign trade, Commerce did not address concerns that the "the estimated value of foregone rent for Nur's use of the Trabzon land could be inaccurately high if based on a nonrepresentative sample of higher-priced land rentals in a different area of Turkey."  Id.  Because Commerce's explanation in the Final 2020 Order failed to address "a colorable claim that the data that Commerce is considering is aberrational," Commerce was required to explain why it nevertheless chose the Cerkezkoy data.  Id.

Commerce offered adequate explanation for its determination on this issue in the Remand

Results.  It explained that Kaptan did not place adequate information in the record to suggest that

the factors it raised—like GDP, industrial development, distance from Surmene, and value of

foreign trade—detracted from the validity of the Cerkezkoy benchmark.  As Commerce noted:

> [W]hile Kaptan Demir raises concerns regarding a variety of such factors, including
> distance from Sürmene, GDP, value of foreign trade, and the stage of development
> of the land, there is no record evidence demonstrating that these differences
> between the C&W report and the Colliers report have a specific effect, such as data
> showing a consistent increase in land values in more distant provinces, provinces
> with higher GDPs, provinces with high trade levels, or in areas with more
> developed land.  Unless such factors are adequately substantiated, Commerce
> cannot determine their relevance, and Kaptan Demir has not demonstrated their
> proportional effect; it just supplied data indicating that there are internal differences
> in the Turkish economy.

Remand Results at 35.

Kaptan, as an interested party, bears the burden of demonstrating the impact of the factors

it raises.  See QVD Food Co. v. United States, 658 F.3d 1318, 1324 (Fed. Cir. 2011) ("[T]he

burden of creating an adequate record lies with interested parties and not with Commerce.").

Otherwise, interested parties could flood the record, pointing out numerous differences between

benchmarks that have little to no bearing on valuation, and force Commerce to thoughtfully

consider and evaluate these factors in its ultimate order, limiting its efficacy.  In other words,

without the requirement that parties demonstrate the relevance of the factors they raise in

comments, Commerce would be trapped—or at the very least, slowed—by spaghetti thrown at the

wall.

Where Commerce must choose between two imperfect valuation reports, it had discretion

to evaluate which report is generally more accurate, so long as its judgement is reasonable.  See

Timken Co. v. United States, 788 F. Supp. 1216, 1220 (1992) ("When Commerce is faced with

the decision to choose between two alternatives and one alternative is favored over the other in

[its] eyes, then [it has] the discretion to choose accordingly if [its] selection is reasonable.")
(internal quotation marks and citation omitted).  See generally Borusan Mannesmann Boru Sanayi
Ve Ticaret A.S., 5 F.4th at 1375 ("Factual determinations . . . [are] best left to the agency's
expertise." (internal quotation marks and citation omitted)).  For a selection to be reasonable,
Commerce must respond to relevant, but not irrelevant points.  19 U.S.C. § 1677f(i)(3)(A); see
also NMB Singapore Ltd. v. United States, 557 F.3d 1316, 1320 (Fed. Cir. 2009); Özdemir Boru
San. ve Tic. Ltd. Sti. v. United States, 273 F. Supp. 3d 1225, 1252 (2017) ("Commerce must
consider relevant record evidence in determining the comparability of land parcels it uses in
creating a reasonable benchmark that lacks distortive pricing").  Here, even though Kaptan's
comments may have presented "colorable" concerns about mis-valuation, Commerce adequately
addressed those concerns by showing that the record failed to make them relevant.

    Given Commerce's handling of Kaptan's comments about the adequacy of the Cerezkoy
benchmark, the Remand Results provided substantial evidence to justify Commerce decision to
use the Colliers report rather than the C&W report to value the land.  In the Remand Order, the
court found that "rather than 'provide an explanation of the basis for its determination that
addresses relevant arguments, made by interested parties who are parties to the investigation or
review,' Commerce resorted to a process of elimination in which it struck the C&W report and
then selected the Colliers report by default."  Remand Order, 736 F. Supp. 3d at 1332.  However,
upon remand Commerce noted that it chose to use the Colliers report because "contemporaneous
original research from an independent, third-party source is a strict preference in comparing
benchmarks."  Remand Results at 13.  Analyzing both reports, Commerce found that the C&W
report bore higher risk of litigation-inspired fabrication because it was commissioned by Kaptan

shortly before these proceedings, and Commerce found that the Colliers report data was more contemporaneous with the period in which Nur acquired the lease, and thus likely more reliable. Id. at 13–17.  In explaining that these two factors were crucial in differentiating the reports, and in showing that Commerce has historically preferred to choose reports that were more contemporaneous and more independent, Commerce acted reasonably in choosing the Colliers report.[4]

Because Commerce offered an affirmative explanation for its decision to choose the Colliers report and adequately addressed concerns Kaptan raised about the Colliers report, the court sustains Commerce's Remand Results with regards to the choice of land valuation benchmark.

## CONCLUSION

In its Remand Results, Commerce offered substantial evidence to explain its determination that the BITT exemption was not specific, and it sufficiently justified its decision to use the Cerkezkoy benchmark from the Colliers report to value Nur's land.  Commerce's Remand Results are sustained.

---

[4] Kaptan alleges that Commerce's noted preference for contemporaneous, original research from an independent source is novel.  Pl.'s Cmts. at 6.  However, the Government points to previous agency practice preferring contemporaneity in land valuation reports, such as Final Results of Redetermination Pursuant to Court Remand, Risen Energy Co., v. United States, Consol. Court No. 20-03912, Slip Op. 23-48, at 9 (Ct. Int'l Trade April 11, 2023).  See Gov't Resp. at 20. Furthermore, the Government offers numerous examples of instances in which it looked unfavorably upon reports created for the purpose of litigation, such as Coated Free Sheet Paper from Indonesia: Final Affirmative Countervailing Duty Determination, 72 Fed. Reg. 60642 (Dep't Com. Oct. 25, 2007) and Certain Softwood Lumber Products from Canada: Final Affirmative Countervailing Duty Determination, and Final Negative Determination of Critical Circumstances, 82 Fed. Reg. 51814 (Dep't Com. Nov. 8, 2017).  See Gov't Resp. at 13–14.  Evaluating both the Colliers and C&W reports against this preference, Commerce offered substantial evidence to explain its choice of the Colliers report.

Court No. 23-00131                                                                 Page 23

                                                /s/        *Gary S. Katzmann*
                                                Gary S. Katzmann, Judge

Dated:  October 6, 2025
            New York, New York